UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stroitelstvo Bulgaria Ltd. :
A Bulgarian Corporation :
Triaditsa Municipality :
16 A - Complex Bokar :
Sofia, Bulgaria 1000 :
Sofia 1000, Bulgaria :
 :
     Plaintiff, :
 :
 :
vs. : Case No.
 :
The Bulgarian-American Enterprise Fund :
A Not-for-Profit Corporation established :
pursuant to 22 U.S.C. §§ 5402, 5421 :
333 West Wacker Drive :
Chicago, Illinois :
 :
and :
 :
The Bulgarian-American Credit Bank :
a Bulgarian Joint Stock Company :
16 Krakra Str., Sofia, Bulgaria :
 :
     Defendants. :

## COMPLAINT

COMES NOW Plaintiff, Stroitelstvo Bulgaria Ltd. (hereinafter "Stroitelstvo" or "Plaintiff"), by and through undersigned counsel, and, pursuant to Federal Rule of Civil Procedure 7, for a demand states and avers as follows:

### JURISDICTION AND VENUE

1. Subject Matter Jurisdiction is founded on 28 USC §§ 1331 and 1332(a) (1) and (2), 18 U.S.C. § 1964 (a) and (c). The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Personal Jurisdiction is founded on 18 U.S.C. § 1965(b) and (d). Venue is proper pursuant to 28 USC § 1391(b), (c), and (d) and 18 U.S.C. § 1965 (b).

## NATURE OF THE CLAIM

2. Plaintiff – a Bulgarian business -- seeks recovery of damages arising from injury to its business and property caused by the Bulgarian American Enterprise Fund ("BAEF")and the Bulgarian American Credit Bank ( the "Bank," collectively with BAEF the "Defendants"). The Defendants, with funds made available through an American initiative to support private sector development in Bulgaria and elsewhere in Eastern Europe, used wrongful and predatory lending and other practices to achieve improper commercial goals for themselves, including the stripping of Plaintiff's equity and its control over its own assets, and caused serious financial injury to Plaintiff.

3. Defendants' conduct violated the provisions of civil RICO.

4. In addition, Defendants' conduct constituted common law violations including breach of contract, intentional interference with contract, intentional interference with prospective advantage, breach of fiduciary duty, and abuse of process.

**The Parties**

5. Plaintiff is a for profit corporation organized under the laws of the Republic of Bulgaria.

6. Defendant BAEF is a not-for-profit corporation established pursuant to the Support for East European Democracy Act, 22 U.S.C. §§ 5402, 5421 ( the "SEED Act"). Its ostensible purpose is and was the promotion of private sector development and entrepreneurship in Bulgaria through, among other things, grants, loans, and equity investments.

BAEF commenced its operations in 1992, with fifty eight million dollars ($58,000,000.00) in funding from the American government, and has at all times been based in Chicago, Illinois.

As of the end of fiscal year 2004, BAEF was owner of a 68% interest in BM Leasing ("BML"). BML was established in 2003 as a joint venture with a small Bulgarian leasing firm.

At all times pertinent to the averments of the Complaint BAEF was the parent company of Bulgarian American Property Management EOOD ("BAPM"), which conducts the Fund's property management operations.

7. Defendant Bank was registered as a Bulgarian joint stock company under the requirements of the Bulgarian Trade Act on 3 December 1996.

The Bank was, at all times pertinent to the averments of the Complaint, a wholly-owned subsidiary of BAEF. At times pertinent to the averments of the Complaint, the main shareholders of the Bank were BAEF and BAPM, which held 99.99% and 0.01% of the shares, respectively. BAEF described the Bank as its major operational subsidiary.

The Bank was established as a limited-purpose bank whose operations were an extension of the activities of BAEF, namely lending to small and medium size enterprises in Bulgaria. The Bank commenced banking operations in May 1997.

The Bank expanded its range of banking operations and on 30 December 1998, the Bank received a full banking license to operate both locally and abroad in local and foreign currency.

The Bank operated primarily as an investing bank in the areas of small and medium size enterprises (SME) lending, construction lending and home mortgage lending. The Bank began attracting deposits in the year 2000 primarily from banks and other institutional investors. In 2002 the Bank expanded its operations and began to offer other banking services.

### FACTS COMMON TO ALL COUNTS

8. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through seven of the Complaint.

### The Lending Contract Between Plaintiff and the Bank

9. Plaintiff entered into a relationship with the Bank pursuant to a Loan Agreement with the Bank dated March 24, 2005, ( the "Contract"). The Contract obligated the Bank to provide funds to Plaintiff on specified terms and conditions.

10. On March 24, 2005, Plaintiff executed and delivered a Promissory Note ( the "Note"), in the amount of two million six hundred fifty nine thousand seven hundred and four Euro (2 659 704 EUR) ( the "Total Note Amount"), due and payable according to its terms in 28 months.

11. As set out in the Contract, the Total Note Amount was comprised of the following:

   a) One million eight hundred sixty four thousand one hundred thirty six Euro (1 864 136 EUR) - for drawdown pursuant to application;

   b) Five hundred thirty three thousand one hundred forty three Euro (533 143 EUR)- the interest for the total amount of the credit for the entire term of the Note ("Total Note Interest");

   c) Seventy seven thousand five hundred eleven Euro (77 511 EUR) - a one time management fee calculated at 3% per year of the Total Note Amount over the term of the Note ("Management Fee"); and

   d) One hundred eighty six four hundred fourteen Euro (186 414 EUR) - a special-purpose reserve ( the "Reserve Amount").

### Performance and Breach by the Bank

12. Pursuant to the terms of the Contract, Plaintiff applied for and the Bank disbursed three hundred sixty one thousand Euro (361 000 EUR) to Plaintiff as part of the draw down amount.

13. Disbursement Number One provided for distribution of the Total Note Interest, the Management Fee, and the Reserve Amount.

14. Additional requests included: An Advance Request in the amount of 65,583.30 EUR; Disbursement Number Three in the amount of 78,967.26 EUR; and Disbursement Number Four in the amount of 33,320.25 EUR.

4

15. On November 11, 2005, the bank wrongfully and without cause suspended credit and asserted an event of default and the right to recover 970 438 EUR, comprised of: a) the drawdown amount of 361 000 EUR; b) the Total Note Interest of 553 143 EUR; and c) the entire Management Fee of 77 511 EUR. The Bank thereupon refused to disburse the remaining funds required by the Contract.

16. The alleged event of default was based on the purported failure of Plaintiff to obtain prior consent of the Bank for certain preliminary contracts, and on Plaintiff's failure to transfer certain advanced payments from the buyers.

17. The alleged breach was groundless and pre-textual.

18. Bank knew that the alleged breach was goundless and pretextual.

**The Consequences of the Bank's Improper Suspension of Credit**

19. On November 15, 2005, the Bank, through BAPM, proposed to purchase from Plaintiff "all available units" for 100,000 EUR plus assumption of the debt.

20. On November 15, 2005, Plaintiff, in response to the Bank's wrongful action, undertook to secure alternative funding, including funds from preliminary contracts for sale of apartments.

21. On December 12, 2005, the Bank, proceeding *ex parte*, pursuant to an Application apparently filed on or about December 6, 2005, wrongly obtained a decree of execution in the amount of 970,438,41 EUR.

22. The Bank utilized that improper ruling to attach and freeze the assets of Plaintiff.

23. However, under the duress created by the improper suspension of credit and the enforcement of the improper judgment, Plaintiff was forced to enter into an Agreement with the Bank (the "Agreement") on or about May 9, 2006.

24. The Agreement required Plaintiff to take on credit from Investbank in the amount of 563 000 EUR and pay the alleged debt to the Bank. As a consequence of its wrongful conduct the Bank improperly extracted 170 000 EUR more than the actual debt.

25. These actions by the Bank amount to extortion, blackmail, bank fraud and predatory lending practices as defined under the applicable criminal statutes, and constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961 (1).

26. To save its business from the Bank's predatory conduct, Plaintiff borrowed from Investbank at an annual interest materially, in excess of the standard bank rate.

27. Plaintiff suffered consequential damages as a result of the Bank's improper suspension of disbursements in the amount of 950 000 EUR, as follows: penalties for delayed construction; the difference in the labor costs and the cost of the materials; and the increased cost of borrowing.

28. The conduct of the Bank as alleged in the Complaint conforms with the Bank's pattern and practice, and is part of the Bank's overall scheme to strip assets and equity from its borrowers.

29. On at least four other occasions, involving four other small businesses, the Bank has utilized the same pattern of wrongful conduct in an attempt to strip the equity and the assets from those businesses.

**The Relationship Between the Bank's Conduct and BAEF**

30. The conduct of the Bank as alleged in the Complaint constitutes the conduct of BAEF.

31. At all times pertinent to the averments of the Complaint, the Bank acted as and held itself out as a department of BAEF.

32. The Bank's actions and decisions were subject to the control and the direction of BAEF.

33. The Bank's actions and decisions were subject to the supervision of BAEF.

34. The Bank's actions and decisions were subject to the policies and the demands of BAEF.

35. BAEF ratified and affirmed the conduct of the Bank as alleged in the Complaint.

## COUNT ONE
## (VIOLATION OF 18 USC § 1661(c))
## (CIVIL RICO)

36. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through 35 of the Complaint.

37. Plaintiff is a "person" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1964(c) and brings this action pursuant to 18 U.S.C. § 1964(c).

38.    Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

39. Defendants BAEF, the Bank, and BAPM (and any individuals who aided and abetted or otherwise participated in their unlawful activities) are an "enterprise" within the meaning of 18 U.S.C. § 1961(4), ( the "Enterprise") in that they are associated in fact with the common and shared purpose of extorting funds and stripping equity and property from Plaintiff and other small businesses, blackmailing Plaintiff and other small businesses, engaging in predatory and unlawful loan practices and bank fraud, investing the unlawfully gained capital and advantage in other banking activities with the intent to permanently deprive Plaintiff and others of its monies and business. At all times relevant to the allegations in the Complaint, the Enterprise engaged in, or its activities affected, interstate and/or foreign commerce.

40. At all times relevant to the allegations of the Complaint, Defendants were associated with the Enterprise .

41. At all times relevant to the allegations of the Complaint, Defendants conducted and participated, directly and indirectly, of the racketeering activity complained herein.

42. The said racketeering activity consisted of two or more incidents of racketeering activity

7

committed by the Defendants. The predicate acts were committed within 10 years of each other, had continuity, and were related pursuant to 18 U.S.C. § 1961(5).

43. The racketeering activity, as described in 18 U.S.C. § 1961(1), includes but is not limited to:

     a. Repeated acts of bank fraud within the meaning of 18 U.S.C. § 1344;
     b. Repeated acts of extortion within the meaning of 18 U.S.C. § 1951;
     c. Repeated acts of extortionate credit transactions within the meaning of 18 U.S.C. §§ 891-894;
     d. Repeated acts of racketeering within the meaning of 18 U.S.C. § 1952.
     e. Repeated acts of extortion and blackmail within the meaning of the applicable state law.

44. These acts of racketeering constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and were interrelated by distinguishing characteristics, in that they had the same purpose, results, participants, victim, and methods of commission, and in part were directed at the same victim or victims.

45. This racketeering activity was a regular way of conducting the Enterprise and their participation in the Enterprise.

46. Plaintiff was injured in its business or property by reason of this violation of 18 USC § 1962(c), in that, as a direct and proximate cause of Defendants' acts, Plaintiff suffered damages, including the loss of the benefit of its bargain, increased costs, expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships.

47. By reason of the Defendants' violations of 18 USC § 1962(c), Plaintiff is entitled to treble the amount of damages proven at trial, plus interest, and reasonable attorneys fees.

## COUNT TWO
## (BREACH OF CONTRACT)

48. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through 47 of the Complaint.

49. The terms of the Contract required the Bank to extend to Plaintiff as a loan the sums set forth therein.

50. The terms of the Contract, and the obligations of Defendants, and each of them, were subject to the provisions of the Seed Act, and such understandings, and directions issued pursuant to the SEED Act.

51. There is an implied duty of good faith in the performance of the Contract.

52. The Bank failed and refused to meet its obligations under the Contract, and breached the Contract, by failing to extend or deliver to Plaintiff the loan funds required by the Contract, and by wrongfully suspending credit.

53. The Bank failed and refused to meet its obligations under the Contract, and breached the Contract, as defined by the SEED Act and such understandings and directions issued pursuant to the SEED Act, by failing to extend or deliver to Plaintiff the loan funds required by the Contract, and by wrongfully suspending credit, and by taking such steps, including the freezing and the attachment of assets, which interfered with Plaintiff's ability to perform under the Contract and which interfered with Plaintiff's ability to use the funds for the commercial purpose for which they were intended.

54. The Bank failed and refused to meet its obligations of good faith under the Contract, and breached its obligation of good faith under the Contract, by failing to extend or deliver to Plaintiff the loan funds required by the Contract, and by wrongfully suspending credit, and by taking such steps, including the freezing and the attachment of assets, which interfered with Plaintiff's ability to perform under the Contract and which interfered with Plaintiff's ability to use the funds for the commercial purpose for which they were intended.

55. Those breaches were material.

56. As a direct and foreseeable and consequential result of those breaches, Plaintiff sustained injury and damage, including the loss of the benefit of its bargain, increased costs, expenses and fees, and loss of profits.

57. Bulgarian Courats are not available to Plaintiffs for the redress of the claims herein.

## COUNT THREE
### (Intentional Interference With Contract)

58. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through 57 of the Complaint.

59. Defendants knew that the purpose of the Contract was the provision of funds sufficient to enable Plaintiff to design, construct and sell residential housing in Bulgaria.

60. Defendants knew that Plaintiff had entered into contracts with suppliers, vendors, tradesmen and others for the design and construction of residential housing in Bulgaria.

61. Defendants knew that Plaintiff had entered into contracts of sale for the purchase of residential housing in Bulgaria.

62. Defendants knew that Plaintiff required the loan funds from the Contract in order to perform under the terms of the contracts described in paragraphs 60 and 61, and to receive the benefits of such contracts.

63. Defendants deliberately, and in bad faith, and in order to strip Plaintiff's assets, including but not limited to its interests in the contracts described in paragraphs 60 and 61, and in order to interfere with those contracts, failed and refused to provided the funds required by the Contract to Plaintiff, and wrongfully suspended credit, and wrongfully froze and attached and interfered with Plaintiff's assets.

64. Such wrongful conduct was a willful and intentional interference with Plaintiff's contracts, and violated the provisions of and the policies of the SEED Act, and the understandings and the directions issued pursuant to the SEED Act.

65. As a direct, foreseeable and consequential result of that wrongful conduct, Plaintiff sustained injury and damage, including the loss of the benefit of its bargain, increased costs,

expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships.

## COUNT FOUR
### (Intentional Interference With Prospective Advantage)

66. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through 65 of the Complaint.

67. Defendants knew that the purpose of the Contract was the provision of funds sufficient to enable Plaintiff to design, construct and sell residential housing in Bulgaria.

68. Defendants knew that Plaintiff had developed a business plan and a business model for such construction through the use of the funds required by the Contract, and that the business plan and the business model constituted a prospective commercial advantage for Plaintiff (the "Prospective Advantage").

69. Defendants knew that Plaintiff required the loan funds from the Contract in order to obtain the Prospective Advantage.

70. Defendants deliberately, and in bad faith, and in order to strip Plaintiff's assets, including but not limited to the Prospective Advantage, failed and refused to provided the funds required by the Contract to Plaintiff, and wrongfully suspended credit, and wrongfully froze and attached and interfered with Plaintiff's assets.

71. Such wrongful conduct was a willful and intentional interference with Plaintiff's Prospective Advantage, and violated the provisions of and the policies of the SEED Act, and the understandings and the directions issued pursuant to the SEED Act.

72. As a direct, foreseeable and consequential result of that wrongful conduct, Plaintiff sustained injury and damage, including the loss of the benefit of its bargain, increased costs, expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships.

## COUNT FIVE
### (Breach of Fiduciary Duty)

73. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through 72 of the Complaint.

74. Defendants and each of them owed a fiduciary duty to Plaintiff. That fiduciary duty arose out of the terms, conditions, policies, understandings and instructions which resulted from their acceptance of funds under the SEED Act.

75. Plaintiff had a special relationship with Bank.

76. Defendants and each of them owed to Plaintiff a duty of good faith, diligence, and fair dealing, and were precluded from self-dealing.

77. Defendants and each of them failed to act in good faith or with diligence, and failed to deal fairly with Plaintiff, and engaged in self-dealing, by: failing and refusing to deliver the loaned funds, suspending credit, interfering with and freezing plaintiff's assets, and attempting to strip Plaintiff's assets.

78. As a direct and foreseeable and consequential result of that wrongful conduct, Plaintiff sustained injury and damage, including the loss of the benefit of its bargain, increased costs, expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships.

## COUNT SIX
### (Abuse of Process)

79. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through 78 of the Complaint.

80. The Bank proceeded ex parte and otherwise to attach and freeze Plaintiff's assets by falsely alleging the amount of the debt.

82. The Bank's purpose in initiating the litigation to freeze Plaintiff's assets was to strip Plaintiff of those assets at a forced sale price.

12

83. The Bank's conduct was wrongful and its intent was wrongful.

84. As a direct and foreseeable and consequential result of that wrongful conduct, Plaintiff sustained injury and damage, including the loss of the benefit of its bargain, increased costs, expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships.

## COUNT SEVEN
### (Civil Conspiracy)

85. Plaintiff adopts and incorporates herein by reference as if specifically set forth herein the averments of paragraphs one through 84 of the Complaint.

86. BAEF and the Bank agreed to undertake the wrongful conduct described herein, including the breaches described herein.

87. Such conduct was overt and unlawful, and included lawful conduct performed in an unlawful manner.

88. Such conduct caused injury to Plaintiff including the loss of the benefit of its bargain, increased costs, expenses and fees, loss of profits, loss of business opportunity and loss of business reputation and relationships, pursuant to and in furtherance of the common scheme and agreement of Defendants.

WHEREFORE, by all these presents, counsel for Plaintiff demands:

1. Judgment in the amount of US$10,000,000.00 or such other amount as may be proven at trial in favor of Plaintiff and against Defendants, jointly and severally, plus an award of attorneys fees, interest and costs;

2. Treble damages, attorney's fees, and the costs of this action pursuant to 18 U.S.C. § 1961(1) *et seq.* and 18 U.S.C. 1964(c).

3. As to Counts three, four, five, six and seven, an award of punitive damages against Defendants, and each of them, in an amount to be determined at trial.

4.  Prejudgment interest and costs; and

5.  Such other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Philip M. Musolino, Esq. # 294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice:* (202) 466-3883
*Fax:* (202) 775-7477
*Email:* pmusolino@musolinoanddessel.com

SJRb
Sylvia J. Rolinski, Esq. # 430573
Danielle M. Espinet, Esq. 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice:* (240) 632-0903
*Fax:* (240) 632-0906
*Email:* srolinski@rolinski.com
*Email:* despinet@rolinski.com

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

### I (a) PLAINTIFFS
Stroitelstvo Bulgaria Ltd.

### DEFENDANTS
The Bulgarian-American Enterprise Fund et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Bulgaria__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Philip Musolino
Musolino & Dessel
1615 L St., NW #440
Washington, DC 20036
(202) 466-3883

Sylvia Rolinski
Danielle Espinet
Rolinski & Suarez, LLC
Potomac, MD 20854
(240) 632-0903

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
● 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ● 5 |
| Citizen or Subject of a Foreign Country | ● 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*
☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*
☐ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

● **E.** *General Civil (Other)* OR ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☒ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☒ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 10,000,000.00   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE April 4, 2007    SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.