UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stroitelstvo Bulgaria Ltd.         :
                                    :
         Plaintiff,                 :
                                    :
                                    :
v.                                  :    Case No. 07cv00634 RMC
                                    :
The Bulgarian-American Enterprise Fund, *et al.*   :
                                    :
         Defendants.                :

### PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER THE ACTION TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C.§ 1404(a)

COMES NOW plaintiff Stroitelstvo Bulgaria Ltd. (hereinafter "plaintiff"), by and through undersigned counsel, and, pursuant to LCvR 7 and this court's order entered August 20, 2007, opposes defendant Bulgarian American Enterprise Fund's Motion to Transfer the Action to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404(a) and in opposition thereto respectfully refers this Honorable Court to the annexed memorandum of points and authorities.

WHEREFORE, by all these present, counsel for plaintiff prays that the instant motion be denied.

Respectfully submitted,

*[signature]*

Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:   (240) 632-0906
*Email*: srolinski@rolinski.com

*[signature]*

Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*:  (202) 466-3883
*Fax*:    (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

## CERTIFICATE OF SERVICE

I certify that I caused a true copy of this motion to be served by electronic mail this 17th day of September 2007 to the following:

Eunnice H. Eun
KIRKLAND & ELLIS L.L.P.
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Stephanie A. Brennan
KIRKLAND & ELLIS L.L.P.
200 East Randolph Drive
Chicago, Illinois 60601

*[signature]*

Philip M. Musolino

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stroitelstvo Bulgaria Ltd.                      :
                                                :
       Plaintiff,                               :
                                                :
                                                :
v.                                              :     Case No. 07cv00634 RMC
                                                :
The Bulgarian-American Enterprise Fund, *et al.* :
                                                :
       Defendants.                              :

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER THE ACTION TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C.§ 1404(a)

### I. STATEMENT OF PROCEEDINGS

Plaintiff Stroitelstvo Bulgaria Ltd. (hereinafter "Plaintiff") filed the instant complaint (the "Compl.") against defendant Bulgarian American Enterprise Fund ("BAEF") and defendant the Bulgarian American Credit Bank[1] (the "Bank," collectively with BAEF the "Defendants") on April 4, 2004. The Complaint asserted: Violations of the Racketeer Influenced Corrupt Organizations Act ("Civil RICO," at Count One); Breach of Contract (Count Two); Intentional Interference with Contract (Count Three); Intentional Interference With Prospective Advantage (Count Four); Breach of Fiduciary Duty (Count Five); and Abuse of Process (Count Six). The Complaint also asserted Civil Conspiracy in Count Seven.

BAEF filed three motions on August 8, 2007: its Motion to Transfer the Action to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404(a) ( the "BAEF Motion to Transfer"), Docket Number 12; a Motion to Dismiss Plaintiff's Complaint Pursuant to

---

[1] Service on the Bank was effected on July 4, 2007 by delivery to the Ministry of Justice of Bulgaria pursuant to the Hague Convention On The Service Abroad Of Judicial And Extra-Judicial Documents In Civil And Commercial Matters. *See* Amended Praecipe Regarding Service, Docket Number 13.

Federal Rules 12(b)(2) and 12(b)(3), or Alternatively Based on the Doctrine of *Forum Non Conveniens*, Docket Number 10; the ("BAEF Jurisdiction/Venue Motion"); and, a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules 9(b) and 12(b)(6), Docket Number 11 ( the "BAEF Pleadings Motion"). [2]

## II. THE FACTS ASSERTED BY PLAINTIFF AND BY BAEF

### A. The Allegations of the Complaint

Plaintiff – a Bulgarian business – alleges that the defendants, with funds made available through an American initiative to support private sector development in Bulgaria and elsewhere in Eastern Europe, used wrongful and predatory lending and other practices to achieve improper commercial goals for themselves, including the stripping of Plaintiff's equity and assets. Compl., at ¶ 2. The Complaint specifically alleges that:

#### 1. The Defendants and Their Affiliated Companies

BAEF is a not-for-profit corporation established pursuant to the Support for East European Democracy Act, 22 U.S.C. §§ 5402, 5421 ( the "SEED Act"). Its ostensible purpose is and was the promotion of private sector development and entrepreneurship in Bulgaria through, among other things, grants, loans, and equity investments. Compl., at ¶ 6. BAEF commenced its operations in 1992, with fifty eight million dollars ($58,000,000.00) in funding from the American government. Compl., at ¶ 6.

As of the end of fiscal year 2004, BAEF was owner of a 68% interest in BM Leasing ("BML"). Compl., at ¶ 6. BAEF was also the parent company of Bulgarian

---

[2] The BAEF Jurisdiction/Venue Motion, and the BAEF Pleadings Motion are addressed in separate filings. And *see* discussion in subsection II.A below on the sequencing by the trial court of non-merits motions.

4

American Property Management EOOD ("BAPM"), which conducts BAEF's property management operations. Compl., at ¶ 6.

The Bank commenced banking operations in May 1997. Compl., at ¶ 7. The Bank was a wholly-owned subsidiary of BAEF. The main shareholders of the Bank were BAEF and BAPM, which held 99.99% and 0.01% of the shares, respectively. BAEF described the Bank as its major operational subsidiary. Compl., at ¶ 7. The Bank operated primarily as an investing bank in the areas of small and medium size enterprises (SME) lending, construction lending and home mortgage lending. Compl., at ¶ 7.

### 2. The Lending Contract Between Plaintiff and the Bank

Plaintiff entered into a Loan Agreement with the Bank on or about March 24, 2005, (the "Contract," a copy of which is appended as defendant BAEF's Exhibit A ("DX A") to the BAEF Jurisdiction/Venue Motion).[3] Compl., at ¶ 8. The Contract obligated the Bank to provide funds to Plaintiff on specified terms and conditions. Compl., at ¶ 9. On March 24, 2005, Plaintiff executed and delivered a Promissory Note ( the "Note"), in the amount of two million six hundred fifty nine thousand seven hundred and four Euro (2,659,704 EUR) (the "Total Note Amount"), due and payable according to its terms in 28 months. Compl., at ¶ 10.

   As set out in the Contract, the Total Note Amount was comprised of the following:

   a) One million eight hundred sixty four thousand one hundred thirty six Euro (1,864,136 EUR) - for drawdown pursuant to application;

   b) Five hundred thirty three thousand one hundred forty three Euro (533,143 EUR)- the interest for the total amount of the credit for the entire term of the Note ("Total Note Interest");

---

[3] BAEF adopts for its Motion to Transfer each of the exhibits appended to its Jurisdiction/Venue Motion. Motion to Transfer, at p.2, n.2.

c) Seventy seven thousand five hundred eleven Euro (77,511 EUR) - a one time management fee calculated at 3% per year of the Total Note Amount over the term of the Note ("Management Fee"); and

d) One hundred eighty six four hundred fourteen Euro (186,414 EUR) - a special- purpose reserve ( the "Reserve Amount"). Compl., at ¶ 11.

### 3. Performance and Breach by the Bank

Pursuant to the terms of the Contract, Plaintiff applied for and the Bank disbursed three hundred sixty one thousand Euro (361,000 EUR) to Plaintiff as part of the draw down amount. Compl., at ¶ 12. Disbursement Number One provided for distribution of the Total Note Interest, the Management Fee, and the Reserve Amount. Compl., at ¶ 13.

On November 11, 2005, the bank wrongfully and without cause suspended credit and asserted an event of default and the right to recover 970,438 EUR, comprised of: a) the drawdown amount of 361,000 EUR; b) the Total Note Interest of 553,143 EUR; and c) the entire Management Fee of 77,511 EUR. The Bank refused to disburse the remaining funds required by the Contract. Compl., at ¶ 15.

The alleged event of default was based on the purported failure of Plaintiff to obtain prior consent of the Bank for certain preliminary contracts, and on Plaintiff's failure to transfer certain advanced payments from the buyers. Compl., at ¶ 16. The alleged breach was groundless and pre-textual. Compl., at ¶ 17. Bank knew that the alleged breach was groundless and pretextual. Compl., at ¶ 18.

The Bank, and thus BAEF, knew that the purpose of the Contract was the provision of funds sufficient to enable Plaintiff to design, construct and sell residential housing in Bulgaria. Compl., at ¶ 59. The Bank, and thus BAEF, knew that Plaintiff had entered into contracts with suppliers, vendors, tradesmen and others for the design and construction of residential housing in Bulgaria. Compl., at ¶ 60. The Bank, and thus

BAEF, knew that Plaintiff had entered into contracts of sale for the purchase of residential housing in Bulgaria. Compl., at ¶ 61.

The Bank, and thus BAEF, knew that Plaintiff required the loan funds from the Contract in order to perform under the terms of those contracts, and to receive the benefits of such contracts. Compl., at ¶ 62.

The Bank deliberately, and in bad faith, and in order to strip Plaintiff's assets, including but not limited to its interests in the contracts described above, and in order to interfere with those contracts, failed and refused to provided the funds required by the Contract to Plaintiff,[4] and wrongfully suspended credit, and wrongfully froze and attached and interfered with Plaintiff's assets. Compl., at ¶ 63.

Instead of meeting its obligations under the Contract, on November 15, 2005, the Bank, through BAPM, proposed to purchase from Plaintiff "all available units" for 100,000 EUR plus assumption of the debt. Compl., at ¶ 194.

### 4. The Consequences of the Bank's Improper Suspension of Credit

On November 15, 2005, Plaintiff, in response to the Bank's wrongful action, undertook to secure alternative funding, including funds from preliminary contracts for sale of apartments. Compl., at ¶ 20.

But on December 12, 2005, the Bank, proceeding *ex parte*, pursuant to an Application apparently filed on or about December 6, 2005, wrongly obtained a decree of execution in the amount of 970,438,41 EUR. Compl., at ¶ 21. The Bank utilized that improper ruling to attach and freeze the assets of Plaintiff. Compl., at ¶ 22. The Bank's purpose in initiating the litigation to freeze Plaintiff's assets was to strip Plaintiff of those assets at a forced sale price. Compl., at ¶ 82.

---

[4] Plaintiff does not contend that BAEF was a party to, or had any obligations under, the Contract.

Under the duress created by the improper suspension of credit and the enforcement of the improper judgment, Plaintiff was forced to enter into an Agreement with the Bank (the "Agreement," appended by BAEF as DX B) on or about May 9, 2006. Compl., at ¶ 23. The Agreement required Plaintiff to take on credit from Investbank in the amount of 563,000 EUR and pay the alleged debt to the Bank. As a consequence of its wrongful conduct the Bank improperly extracted 170,000 EUR more than the actual debt. Compl., at ¶ 24. To save its business from the Bank's predatory conduct, Plaintiff borrowed from Investbank at an annual interest materially in excess of the standard bank rate. Compl., at ¶ 26.

### 5. The Bank Utilized the Same Equity Stripping Scheme With Other Borrowers

The wrongful conduct of the Bank as alleged in the Complaint conforms with the Bank's pattern and practice, and is part of the Bank's overall scheme to strip assets and equity from its borrowers. Compl., at ¶ 28. On at least four other occasions, involving four other small businesses, the Bank has utilized the same pattern of wrongful conduct in an attempt to strip the equity and the assets from those businesses. Compl., at ¶ 29.

Defendants BAEF, the Bank, and BAPM (and any individuals who aided and abetted or otherwise participated in their unlawful activities) are an "enterprise" within the meaning of 18 U.S.C. § 1961(4), (the "Enterprise") in that they are associated in fact with the common and shared purpose of extorting funds and stripping equity and property from Plaintiff and other small businesses, blackmailing Plaintiff and other small businesses, engaging in predatory and unlawful loan practices and bank fraud, and investing the unlawfully gained capital and advantage in other banking activities with the intent to permanently deprive Plaintiff and others of its monies and business. Compl., at ¶ 39. This

racketeering activity was a regular way of conducting the Enterprise and their participation in the Enterprise. Compl., at ¶ 45.

### B. The Fact Averments Made By BAEF In Its Three Motions

BAEF concedes that the Bank commenced foreclosure proceedings on an alleged claim of 970,000 EUR, and that Plaintiff obtained a partial suspension of that foreclosure. Motion to Transfer, at 5. BAEF also states that the Bank "appealed that decision…," and that, "(i)n the meantime, the Bank and Stroitelstvo entered into a settlement agreement to resolve their disputes (and) agreed to waive further claims and appeals based on the Loan Agreement." *Id.* [5]

BAEF avers that it is a Delaware corporation, with its only U.S. office in Chicago, Illinois, but that it has "semi-annual reporting obligations to the U.S. Agency for International Development ("USAID")[6] as a condition of the original grant agreement between USAID and BAEF." [7]

## II. THE PROCEDURES AND THE STANDARDS APPLICABLE TO MOTIONS TO TRANSFER

### A. The Sequencing of Non-Merits Motions

The Supreme Court has recently clarified the leeway accorded to a trial court in its sequencing of non-merits motions to deny consideration of a complaint. In *Sinochem*

---

[5] BAEF's proffered expert on "Bulgarian law and the Bulgarian legal system" DX D at ¶ ¶ 1, 2, avers that after the settlement agreement a Bulgarian court nonetheless proceeded with the Bank's appeal. *Id.*, at ¶ 27. BAEF does not contend in any of its motions that the Complaint should be dismissed on the basis of the alleged settlement agreement, nor would the disposition of such an affirmative defense be appropriate on a motion filed under Fed.R.Civ.P. 12. *See, e.g., Perkins ex rel Estate of Perkins v. Ottershaw Investments Ltd.*, 2005 WL 3273747*3 (S.D.Fla. 2005)( release defense should be disposed of in a motion for summary judgment, rather than a motion to dismiss).

The Complaint avers that"Bulgarian Courts are not available to Plaintiffs for the redress of the claims herein." Compl., at ¶ 57. That issue is addressed in plaintiff's opposition to BAEF's Jurisdiction/Venue Motion.

[6] USAID is headquartered in the District of Columbia.

[7] *See* declaration of BAEF Managing Director Nancy L Schiller , DX C.

*Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, 1186-87, 167 L.Ed. 2d 15 (2007), the Supreme Court ruled that:

> Although a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause (subject-matter jurisdiction) and the parties (personal jurisdiction) ... there is no mandatory sequencing of nonmerits issues ... A court has leeway to choose among threshold grounds for denying audience to a case on the merits....
>
> *Forum non conveniens* is a nonmerits ground for dismissal.... A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant. *Forum non conveniens,* like other threshold issues, may involve a brush with factual and legal issues of the underlying dispute.... But the critical point, rendering a *forum non conveniens* determination a nonmerits issue that can be determined before taking up jurisdictional inquiries is this: Resolving a *forum non conveniens* motion does not entail any assumption by the court of substantive law-declaring power (internal citations, quotation marks omitted).

Thus, this court has the discretion to dispose of the transfer motion prior to disposing of either the BAEF Jurisdiction/Venue Motion, or the BAEF Pleadings Motion.

The court may permit discovery to assist in the fact-finding analysis necessary for resolution of a transfer motion. *See, e.g., Kron Medical Corp. v. Groth,* 119 F.R.D. 636, 638 (M.D.N.C.1988) ("prior to ruling on the motion to transfer, discovery may be required in order to identify and refine the issues pertinent to the transfer issue"). [8]

### B. The Standards Applicable to a Motion to Transfer

The *Sinochem* court reiterated the broad standards applicable to motions to transfer, stating:

> A federal court has discretion to dismiss on *forum non conveniens* grounds when an alternative forum has jurisdiction to hear the case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a

---

[8] Plaintiff will shortly file a motion for limited discovery on both the Transfer Motion and the BAEF Jurisdiction/Venue Motion.

defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems. ...Such a dismissal reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality. A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is then less reasonable (Internal citation, brackets and quotation marks omitted). *Id.* at 1186.

This court set out in *FC Investment Group LC v. Lichtenstein* 441 F.Supp. 2d 3 (D.D.C.,2006) the standards applicable to disposition of a transfer motion, stating:

Motions to change venue are governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." [9] The D.C. Circuit ... has said that it is perhaps impossible to develop any fixed general rules on when cases should be transferred.... Thus, the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness....

Section 1404(a) is rooted in the earlier doctrine of *forum non conveniens*.... Although courts have " more discretion to transfer under § 1404(a) than they ha[ve] to dismiss on grounds of *forum non conveniens,"* ..., they are guided by similar factors in both contexts-namely, the private and public interests at stake..... Accordingly, the defendant must make two showings to justify transfer. First, a defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district....Second, the defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that court.....

The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ..., but only to the extent that the witnesses may actually be

---

[9] BAEF contends that this action could have been brought in the Northern District of Illinois under 28 U.S.C. § 1391(a)(3). Motion to Transfer, at 6-7. But that is correct only if BAEF's participation in the SEED Act, and that participation's relationship to the claims in this case, do not constitute " a substantial part of the events or omissions giving rise to the claims." 28 U.S.C. § 1391(b)(2). Plaintiff addresses that issue in its accompanying opposition to the BAEF Jurisdiction/Venue Motion.

11

unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home....

The party seeking transfer generally bears the burden of demonstrating that the balance of convenience of the parties and witnesses and the interest of justice are in its favor....(internal citations omitted).

### III. BAEF HAS FAILED TO MEET ITS BURDEN OF PROOF

BAEF does not and cannot contend that its request to transfer the case satisfies the Supreme Court's broadly stated insistence on proof of "...oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem, supra*, at 1186. Nor do the private interest considerations or the public interest considerations support transfer.

#### A. BAEF Has Failed to Meet Its Burden of Proof With Regard to the Private Interest Considerations

##### 1. The Plaintiffs' Choice Of Forum

Without reference to *Sinochem, supra*, BAEF relies on the Supreme Court's decision in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981) for the disparate contentions that "(p)laintiff's choice of forum is not entitled to any deference," Motion to Transfer, at 8, and that "plaintiff's choice of forum will not be afforded the normal deference." *Id.*

The "normal deference," as characterized by *Piper*, is a "a strong presumption in favor of the plaintiff's choice of forum," at 265-66, and where, as here, plaintiff is a non-resident of the forum, "the presumption applies with less force." *Id.*, at 266. BAEF's insistence that, under *Piper*, plaintiff's choice of forum is entitled to no deference is thus wrong.

BAEF also errs when it urges an inference that plaintiff filed in the District of Columbia "simply to take advantage of more favorable law or to harass the defendant." Motion to Transfer, at 8. Nothing in BAEF's *Piper* citation supports that proposed inference.

Notably, BAEF does not identify any law applicable in the District of Columbia which would be more favorable to plaintiff than law which would be applied if plaintiff had filed this action in the Northern District of Illinois.[10] Nor can BAEF credibly contend that it is being harassed because it is required to litigate a case in the District of Columbia, where BAEF freely devoted – and continues to devote – time and energy in its successful pursuit of ($58,000,000.00) in funding from the American government. Compl., at ¶ 6.

The District of Columbia was chosen by plaintiff because it is convenient to plaintiff, and because jurisdiction and venue lie here, and because plaintiff's counsel are located here[11] and practice here, and because the courts of the District of Columbia are uniquely suited to the resolution of claims with both American legislative and international components.

---

[10] Indeed, BAEF argues that "Bulgarian law" will apply to the claims in this case. Motion to Transfer, at 9.

[11] None of the attorneys in the two firms retained by plaintiff is admitted to practice in Illinois. Mr. Musolino was admitted to the Supreme Court of Illinois in 1980, but never practiced in Illinois and, as a consequence, is not currently an active or inactive member of the Illinois bar. While the convenience of counsel in and of itself may not be a significant factor in a *forum non conveniens* analysis, *see* discussion in Wright, Miller & Cooper, 15 Fed. Prac. & Proc. Juris.3d § 3850, and *see Pfizer, Inc. v. Lord*, 447 F.2d 122, 124 (2d Cir. 1971) (Court considered "(t)he fact that each of the defendants had already retained experienced counsel in Minnesota who had been active in the pretrial preparation of these cases."), Plaintiff offers the information to address any concern that the District of Columbia was selected to harass BAEF.

### 2. The Defendants' Choice Of Forum

Defendant's choice of forum is relevant only to the extent that the case could have been brought in that forum. *See* note 9, above. No court suggests that defendant's choice of forums is entitled to the same weight as plaintiff's choice.

### 3. Whether The Claim Arose Elsewhere

The Complaint asserts facts arising in both the District of Columbia – with respect to the SEED Act – and in Bulgaria. It is also likely that, as BAEF suggests, "some behavior underlying the Complaint's allegations could conceivably have occurred in" Chicago. Motion to Transfer, at 8. Plaintiff does not, therefore, quarrel with BAEF's contention that "factor three is neutral." *Id*.

### 4. The Convenience Of The Parties

As this court observed in *FC Investment Group, supra*:

> When analyzing the convenience of parties and witnesses, a defendant must show that witnesses would be unwilling to testify in the District of Columbia..... Otherwise, it is assumed that the witnesses will voluntarily appear... and mere inconvenience to the witnesses alone is not enough to warrant transfer ... In addition, to support its request for transfer under section 1404(a), a moving party must demonstrate ... what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction.... While Defendants contend that the key witnesses who will offer testimony live in or near Illinois, they neither set forth the specific topic about which these witnesses will testify nor assert that these witnesses would be unwilling to travel to the District of Columbia . At 14.

BAEF has made no attempt to meet that burden. Moreover, the only BAEF representative proffered to date by BAEF resides in Charlottesville, Virginia.[12]

---

[12] Counsel for BAEF noted in an August 31, 2007 phone message on the subject of depositions that Ms. Schiller resides in Charlottesville, Virginia and travels to Chicago for work with BAEF.

14

### 5. The Convenience Of The Witnesses

As with party witnesses, BAEF makes no attempt to meet its burden with respect to non-party witnesses. The only non-party witness identified by BAEF is a Bulgarian lawyer who would undoubtedly be as willing to testify at trial in the District of Columbia as in the Northern District of Illinois.

### 6. The Ease Of Access To Sources Of Proof.

BAEF argues that "(t)o the extent that they are relevant, BAEF documents ... are in the Northern District of Illinois, but no sources of proof are in the District of Columbia." Motion to Transfer, at 9. But BAEF does not assert that the presence in Chicago of files will create any inconvenience at all if the case is litigated in the District of Columbia. In *FC Investment Group, supra,* this court wrote that "in the context of a motion for a transfer of forum, the location of documents, given modern technology, is less important in determining the convenience of the parties." At 14.

Further, BAEF ignores the documents pertinent to the SEED Act, as well as BAEF's participation in that program. As BAEF concedes, it files reports with USAID every six months on the very program which funded the transactions in issue in this case.

### B. BAEF Has Failed to Meet Its Burden of Proof With Regard to the Public Interest Considerations

### 1. The Transferee's Familiarity With The Governing Laws

Plaintiff does not dispute that "(n)either court is presumably familiar with Bulgarian law." Motion to Transfer, at 9. But the familiarity of the District of Columbia courts with issues of international consequence [13] and of federal legislative construction

---

[13] Congress certainly recognized the utility of directing cases against foreign states and their political subdivisions to the District of Columbia in 28 U.S.C.§ 1391(f)(4)(providing alternate venue in the District of Columbia for any such claim).

and application is unsurpassed.

### 2. The Relative Congestion Of The Calendars Of The Potential Transferee And Transferor Courts

According to the 2006 Judicial Business of the United States: Annual Report of the Director, available at http:/www.uscourts.gov/cgi-bin/cmsd-006.pl, there are 351 pending cases per judgeship in the Northern District of Illinois, and 274 pending cases per judgeship in the District of Columbia. As in *FC Investment Group, supra*, "as to the relative congestion of the two courts, a review of federal court management statistics indicates that, in 2004, civil cases filed in the Northern District of Illinois proceeded to disposition somewhat more quickly but that dockets in the District of Columbia were less crowded." At 14.

### 3. The Local Interest In Deciding Local Controversies At Home

The Northern District of Illinois, as the "home" of a Delaware corporation, has no greater interest in addressing the claims in this case, including claims connected to the operation of the SEED Act, than a District of Columbia court in whose district sits the headquarters of the agency responsible for the operation of the SEED program. This case does not constitute "a controversy local to Illinois." *FC Investment Group, supra* at 14.

### CONCLUSION

Because BAEF has failed to meet its burden its motion to transfer must be denied.

Respectfully submitted,

Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:   (240) 632-0906
*Email*: srolinski@rolinski.com

Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*:  (202) 466-3883
*Fax*:   (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stroitelstvo Bulgaria Ltd. | : |
| Plaintiff, | : |
| v. | : Case No. 07cv00634 RMC |
| The Bulgarian-American Enterprise Fund, *et al.* | : |
| Defendants. | : |

## ORDER

This matter having come before this Court on defendant Bulgarian American Enterprise Fund's Motion to Transfer the Action to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404(a), and opposition thereto, it is this _____ day of _____, 2007, for cause shown:

**ORDERED**, that the instant motion be and is hereby denied.

SO ORDERED.

_____
Rosemary M. Collyer, Judge
United States District Court for the
District of Columbia

Philip M. Musolino
*Musolino & Dessel*
1615 L Street, NW, Suite 440
Washington, DC 20036

Sylvia Rolinski
Danielle M. Espinet
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854

Karen N. Walker
Eunnice H. Eun
Samantha A. Gingold
KIRKLAND & ELLIS L.L.P.
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Brian D. Sieve
Stephanie A. Brennan
KIRKLAND & ELLIS L.L.P.
200 East Randolph Drive
Chicago, Illinois 60601