UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stroitelstvo Bulgaria Ltd. :
:
      Plaintiff, :
:
:
v. : Case No. 07cv00634 RMC
:
The Bulgarian-American Enterprise Fund, *et al.* :
:
      Defendants. :

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES 9(b) AND 12(b)(6) [1]

COMES NOW, plaintiff Stroitelstvo Bulgaria Ltd. (hereinafter "plaintiff"), by and through undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Civil Procedure, and LCvR 7, and this Court's order entered August 20, 2007, opposes Defendant Bulgarian American Enterprise Fund's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules 9(b) and 12(b)(6), and in opposition thereto respectfully refers this Honorable Court to the annexed memorandum of points and authorities.

WHEREFORE, plaintiff prays that the instant motion be denied.

Respectfully submitted,

*[signature]*

Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:   (240) 632-0906
*Email*: srolinski@rolinski.com

---

[1] Plaintiff filed this date a First Amended Complaint pursuant to Fed.R.Civ.P. 15(a). That filing renders BAEF's motion moot. This opposition is filed only out of an abundance

/s/

Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*:  (202) 466-3883
*Fax*:    (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

***Attorneys For Plaintiff***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stroitelstvo Bulgaria Ltd.          :
                                    :
    Plaintiff,                     :
                                    :
                                    :
v.                                  :     Case No. 07cv00634 RMC
                                    :
The Bulgarian-American Enterprise Fund, *et al.*    :
                                    :
    Defendants.                    :


## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES 9(b) AND 12(b)(6)

. **STATEMENT OF PROCEEDINGS**

Plaintiff Stroitelstvo Bulgaria Ltd. (hereinafter "Plaintiff") filed the instant complaint (the "Compl.") against defendant Bulgarian American Enterprise Fund ("BAEF") and defendant the Bulgarian American Credit Bank[2] ( the "Bank," collectively with BAEF the "Defendants") on April 4, 2004. The Complaint asserted: Violations of the Racketeer Influenced Corrupt Organizations Act ("Civil RICO," at Count One); Breach of Contract (Count Two); Intentional Interference with Contract (Count Three); Intentional Interference With Prospective Advantage (Count Four); Breach of Fiduciary Duty (Count Five); and Abuse of Process (Count Six). The Complaint also asserted Civil Conspiracy in Count Seven.

---

[2] Service on the Bank was effected on July 4, 2007 by delivery to the Ministry of Justice of Bulgaria pursuant to the Hague Convention On The Service Abroad Of Judicial And Extra-Judicial Documents In Civil And Commercial Matters. *See* Amended Praecipe Regarding Service, Docket Number 13.

1

BAEF filed three motions on August 8, 2007: its Motion to Transfer the Action to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404(a) ( the "BAEF Motion to Transfer"), Docket Number 12; a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules 12(b)(2) and 12(b)(3), or Alternatively Based on the Doctrine of *Forum Non Conveniens*, Docket Number 10 the ("BAEF Jurisdiction/Venue Motion"); and, this Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules 9(b) and 12(b)(6), Docket Number 11 ( the "BAEF Pleadings Motion"). [3]

ON September 17, 2007, plaintiff filed a First Amended Complaint.

## II. THE FACTS ASSERTED BY PLAINTIFF AND BY BAEF

### A. The Allegations of the Complaint

Plaintiff – a Bulgarian business – alleges that the defendants, with funds made available through an American initiative to support private sector development in Bulgaria and elsewhere in Eastern Europe, used wrongful and predatory lending and other practices to achieve improper commercial goals for themselves, including the stripping of Plaintiff's equity and assets. Compl., at ¶ 2. The Complaint specifically alleges that:

#### 1. The Defendants and Their Affiliated Companies

BAEF is a not-for-profit corporation established pursuant to the Support for East European Democracy Act, 22 U.S.C. §§ 5402, 5421 ( the "SEED Act"). Its ostensible purpose is and was the promotion of private sector development and entrepreneurship in Bulgaria through, among other things, grants, loans, and equity investments. Compl., at ¶

---

[3] The BAEF Transfer Motion, and the BAEF Jurisdiction/Venue Motion are addressed in separate filings. And *see* discussion in subsection II.A below on the sequencing by the trial court of non-merits motions.

2

6. BAEF commenced its operations in 1992, with fifty eight million dollars ($58,000,000.00) in funding from the American government. Compl., at ¶ 6.

As of the end of fiscal year 2004, BAEF was owner of a 68% interest in BM Leasing ("BML"). Compl., at ¶ 6. BAEF was also the parent company of Bulgarian American Property Management EOOD ("BAPM"), which conducts BAEF's property management operations. Compl., at ¶ 6.

The Bank commenced banking operations in May 1997. Compl., at ¶ 7. The Bank was a wholly-owned subsidiary of BAEF. The main shareholders of the Bank were BAEF and BAPM, which held 99.99% and 0.01% of the shares, respectively. BAEF described the Bank as its major operational subsidiary. Compl., at ¶ 7. The Bank operated primarily as an investing bank in the areas of small and medium size enterprises (SME) lending, construction lending and home mortgage lending. Compl., at ¶ 7.

### 2. The Lending Contract Between Plaintiff and the Bank

Plaintiff entered into a Loan Agreement with the Bank on or about March 24, 2005, (the "Contract," a copy of which is appended as defendant BAEF's Exhibit A ("DX A") to the instant Jurisdiction/Venue Motion). Compl., at ¶ 8. The Contract obligated the Bank to provide funds to Plaintiff on specified terms and conditions. Compl., at ¶ 9. On March 24, 2005, Plaintiff executed and delivered a Promissory Note (the "Note"), in the amount of two million six hundred fifty nine thousand seven hundred and four Euro (2,659,704 EUR) (the "Total Note Amount"), due and payable according to its terms in 28 months. Compl., at ¶ 10.

As set out in the Contract, the Total Note Amount was comprised of the following:

a) One million eight hundred sixty four thousand one hundred thirty six Euro (1,864,136 EUR) - for drawdown pursuant to application;

b) Five hundred thirty three thousand one hundred forty three Euro (533,143 EUR)- the interest for the total amount of the credit for the entire term of the Note ("Total Note Interest");

c) Seventy seven thousand five hundred eleven Euro (77,511 EUR) - a one time management fee calculated at 3% per year of the Total Note Amount over the term of the Note ("Management Fee"); and

d) One hundred eighty six four hundred fourteen Euro (186,414 EUR) - a special- purpose reserve ( the "Reserve Amount"). Compl., at ¶ 11.

### 3. Performance and Breach by the Bank

Pursuant to the terms of the Contract, Plaintiff applied for and the Bank disbursed three hundred sixty one thousand Euro (361,000 EUR) to Plaintiff as part of the draw down amount. Compl., at ¶ 12. Disbursement Number One provided for distribution of the Total Note Interest, the Management Fee, and the Reserve Amount. Compl., at ¶ 13.

On November 11, 2005, the bank wrongfully and without cause suspended credit and asserted an event of default and the right to recover 970,438 EUR, comprised of: a) the drawdown amount of 361,000 EUR; b) the Total Note Interest of 553,143 EUR; and c) the entire Management Fee of 77,511 EUR. The Bank refused to disburse the remaining funds required by the Contract. Compl., at ¶ 15.

The alleged event of default was based on the purported failure of Plaintiff to obtain prior consent of the Bank for certain preliminary contracts, and on Plaintiff's failure to transfer certain advanced payments from the buyers. Compl., at ¶ 16. The alleged breach was groundless and pre-textual. Compl., at ¶ 17. Bank knew that the alleged breach was groundless and pretextual. Compl., at ¶ 18.

The Bank, and thus BAEF, knew that the purpose of the Contract was the provision of funds sufficient to enable Plaintiff to design, construct and sell residential housing in Bulgaria. Compl., at ¶ 59. The Bank, and thus BAEF, knew that Plaintiff had entered into contracts with suppliers, vendors, tradesmen and others for the design and construction of residential housing in Bulgaria. Compl., at ¶ 60. The Bank, and thus BAEF, knew that Plaintiff had entered into contracts of sale for the purchase of residential housing in Bulgaria. Compl., at ¶ 61.

The Bank, and thus BAEF, knew that Plaintiff required the loan funds from the Contract in order to perform under the terms of those contracts, and to receive the benefits of such contracts. Compl., at ¶ 62.

The Bank deliberately, and in bad faith, and in order to strip Plaintiff's assets, including but not limited to its interests in the contracts described above, and in order to interfere with those contracts, failed and refused to provided the funds required by the Contract to Plaintiff,[4] and wrongfully suspended credit, and wrongfully froze and attached and interfered with Plaintiff's assets. Compl., at ¶ 63.

Instead of meeting its obligations under the Contract, on November 15, 2005, the Bank, through BAPM, proposed to purchase from Plaintiff "all available units" for 100,000 EUR plus assumption of the debt. Compl., at ¶ 19.

### 4. The Consequences of the Bank's Improper Suspension of Credit

On November 15, 2005, Plaintiff, in response to the Bank's wrongful action, undertook to secure alternative funding, including funds from preliminary contracts for sale of apartments. Compl., at ¶ 20.

---

[4] Plaintiff does not contend that BAEF was a party to, or had any obligations under, the Contract.

But on December 12, 2005, the Bank, proceeding *ex parte*, pursuant to an Application apparently filed on or about December 6, 2005, wrongly obtained a decree of execution in the amount of 970,438,41 EUR. Compl., at ¶ 21. The Bank utilized that improper ruling to attach and freeze the assets of Plaintiff. Compl., at ¶ 22. The Bank's purpose in initiating the litigation to freeze Plaintiff's assets was to strip Plaintiff of those assets at a forced sale price. Compl., at ¶ 82.

Under the duress created by the improper suspension of credit and the enforcement of the improper judgment, Plaintiff was forced to enter into an Agreement with the Bank (the "Agreement," appended by BAEF as DX B) on or about May 9, 2006. Compl., at ¶ 23. The Agreement required Plaintiff to take on credit from Investbank in the amount of 563,000 EUR and pay the alleged debt to the Bank. As a consequence of its wrongful conduct the Bank improperly extracted 170,000 EUR more than the actual debt. Compl., at ¶ 24. To save its business from the Bank's predatory conduct, Plaintiff borrowed from Investbank at an annual interest materially in excess of the standard bank rate. Compl., at ¶ 26.

### 5. The Bank Utilized the Same Equity Stripping Scheme With Other Borrowers

The wrongful conduct of the Bank as alleged in the Complaint conforms with the Bank's pattern and practice, and is part of the Bank's overall scheme to strip assets and equity from its borrowers. Compl., at ¶ 28. On at least four other occasions, involving four other small businesses, the Bank has utilized the same pattern of wrongful conduct in an attempt to strip the equity and the assets from those businesses. Compl., at ¶ 29.

Defendants BAEF, the Bank, and BAPM (and any individuals who aided and abetted or otherwise participated in their unlawful activities) are an "enterprise" within the meaning

6

of 18 U.S.C. § 1961(4), ( the "Enterprise") in that they are associated in fact with the common and shared purpose of extorting funds and stripping equity and property from Plaintiff and other small businesses, blackmailing Plaintiff and other small businesses, engaging in predatory and unlawful loan practices and bank fraud, and investing the unlawfully gained capital and advantage in other banking activities with the intent to permanently deprive Plaintiff and others of its monies and business. Compl., at ¶ 39. This racketeering activity was a regular way of conducting the Enterprise and their participation in the Enterprise. Compl., at ¶ 45.

### B. The Fact Averments Made By BAEF

BAEF concedes that the Bank commenced foreclosure proceedings on an alleged claim of 970,000 EUR, and that Plaintiff obtained a partial suspension of that foreclosure. Motion to Transfer, at 5. BAEF also states that the Bank "appealed that decision…," and that, "(i)n the meantime, the Bank and Stroitelstvo entered into a settlement agreement to resolve their disputes (and) agreed to waive further claims and appeals based on the Loan Agreement." *Id.* [5]

BAEF avers that it is a Delaware corporation, with its only U.S. office in Chicago, Illinois, but that it has "semi-annual reporting obligations to the U.S. Agency for

---

[5] BAEF's proffered expert on "Bulgarian law and the Bulgarian legal system" DX D at ¶¶ 1, 2, avers that after the settlement agreement a Bulgarian court nonetheless proceeded with the Bank's appeal. *Id.*, at ¶ 27. BAEF does not contend in any of its motions that the Complaint should be dismissed on the basis of the alleged settlement agreement, nor would the disposition of such an affirmative defense be appropriate on a motion filed under Fed.R.Civ.P. 12. *See, e.g., Perkins ex rel Estate of Perkins v. Ottershaw Investments Ltd.*, 2005 WL 3273747*3 (S.D.Fla. 2005)( release defense should be disposed of in a motion for summary judgment, rather than a motion to dismiss).

The Complaint avers that"Bulgarian Courts are not available to Plaintiffs for the redress of the claims herein." Compl., at ¶ 57. That issue is addressed in Section V below.

International Development ("USAID") [6] as a condition of the original grant agreement between USAID and BAEF." [7]

## II. THE PROCEDURES AND THE STANDARDS APPLICABLE TO BAEF'S MOTIONS

### A. The Sequencing of Non-Merits Motions

The Supreme Court has recently clarified the leeway accorded to a trial court in its sequencing of non-merits motions to deny consideration of a complaint. In *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.* 127 S.Ct. 1184, 1186-87, 167 L.Ed. 2d 15 (2007), the Supreme Court ruled that:

> Although a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause (subject-matter jurisdiction) and the parties (personal jurisdiction) ... there is no mandatory sequencing of nonmerits issues ... A court has leeway to choose among threshold grounds for denying audience to a case on the merits....
>
> *Forum non conveniens* is a nonmerits ground for dismissal.... A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant. *Forum non conveniens,* like other threshold issues, may involve a brush with factual and legal issues of the underlying dispute.... But the critical point, rendering a *forum non conveniens* determination a nonmerits issue that can be determined before taking up jurisdictional inquiries is this: Resolving a *forum non conveniens* motion does not entail any assumption by the court of substantive law-declaring power (internal citations, quotation marks omitted).

Thus, this court has the discretion to dispose of the BAEF Transfer Motion prior to disposing of either this motion, or the BAEF Jurisdiction/Venue Motion.

---

[6] USAID is headquartered in the District of Columbia.
[7] *See* declaration of BAEF Managing Director Nancy L Schiller, DX C.

8

> The Supreme Court has made clear that a federal court must resolve all "threshold" issues, such as subject matter jurisdiction and personal jurisdiction,[8] before reaching the merits of a case..... The high court has acknowledged, however, that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits. A venue challenge need not take precedence over a disentitlement inquiry, then, because both are threshold issues (internal citations, brackets, quotation marks omitted).

*U.S. v. $6,976,934.65 Plus Interest*, 486 F.Supp.2d 37, 38 (D.D.C.,2007).

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Fasolyak v. The Cradle Society, Inc.*, 2007 WL 2071644*3 (D.D.C.,2007). [9]

This court, thus, should address BAEF's challenge to personal jurisdiction before it addresses BAEF's Pleadings Motion. [10]

### B. The Burdens of Proof and Procedures Applicable to The Instant Motion

> In general, against a motion to dismiss, once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint...construing the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged(internal citations, quotation marks, omitted).

*In re Sealed Case* --- F.3d ----, 2007 WL 2067029*4 (C.A.D.C.,2007).

---

[8] In "appropriate circumstances," the trial court may also dispose of challenges to personal jurisdiction prior to disposing of challenges to subject matter jurisdiction, *Int'l Mfg. & Eng'g Servs. Co. v. Semiconductor Energy Lab. Co.*, 2007 WL 2059768*1, n.1 (D.D.C. 2007)

[9] As the District of Columbia Circuit noted after *Sinochem*, a *forum non conveniens* motion is not a jurisdictional motion. *Public Citizen v. U.S. Dist. Court for Dist. of Columbia*, 486 F.3d 1342, 1348 (D.C. Cir. 2007).

[10] To the extent that a motion to dismiss proceeds under Fed.R.Civ.P. 12(b)(6), grant of that motion normally operates as an adjudication on the merits.

9

## III. THE INSTANT MOTION MUST BE DENIED AS MOOT

Under Fed.R.Civ.P. 15(a), plaintiff was entitled to amend its complaint once as a matter of right. *See Confederate Memorial Ass'n, Inc. v. Hines* 995 F.2d 295, 299 *reh and reh en banc den* (D.C.Cir. 1993). A pleading, once amended, is superceded by the amended pleading. 6 Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d, §1476. "(A)n amended complaint "supercedes an original complaint and renders the original complaint without legal effect," *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir.2000); 3 Moore's Federal Practice, § 15.17[3] (Matthew Bender 3d ed.). *See also .Adams v. Quattlebaum* 219 F.R.D. 195, 196-197 (D.D.C. 2004).

The instant motion thus must be denied without prejudice as moot. *Adams, supra,* and *see Bancoult v. McNamara* 214 F.R.D. 5, 13 ("den[ying] without prejudice all pending motions pertaining to the original complaint"); *see* also *Turner v. Kight*, 192 F.Supp.2d 391, 397 (D.Md.2002) (denying as moot the motions to dismiss on the basis that the amended complaint supersedes the original complaint), and *DeSisto College, Inc. v. Line* 888 F.2d 755, 757-758 (11th Cir.1989); *ATK Thiokol, Inc. v. U.S.* 76 Fed.Cl. 654(Fed.Cl.,2007).

In the event that the court determines that the instant motion is not moot, plaintiff respectfully requests additional time to respond, particularly in light of the sequencing of non-merits motions discussed in the preceding section.

Respectfully submitted,

*SJR*

Sylvia J. Rolinski # 430573
Danielle M. Espinet # 478553
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854
*Voice*: (240) 632-0903
*Fax*:    (240) 632-0906
*Email*: srolinski@rolinski.com


Philip M. Musolino #294652
*Musolino & Dessel*
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
(202) 466-3883
*Voice*: (202) 466-3883
*Fax*:    (202) 775-7477
*Email*: pmusolino@musolinoanddessel.com

**Attorneys For Plaintiff**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stroitelstvo Bulgaria Ltd.        :
                                  :
        Plaintiff,                :
                                  :
                                  :
v.                                :    Case No. 07cv00634 RMC
                                  :
The Bulgarian-American Enterprise Fund, *et al.*   :
                                  :
        Defendants.               :

## ORDER

This matter having come before this Court on Defendant Bulgarian American Enterprise Fund's Motion To Dismiss Plaintiff's Complaint Pursuant To Federal Rules 9(b) And 12(b)(6), and opposition thereto, it is this ____ day of _____, 2007, for cause shown:

**ORDERED**, that the instant motion be and is hereby denied without prejudice as moot.

SO ORDERED.

_____
Rosemary M. Collyer, Judge
United States District Court for the
District of Columbia

Philip M. Musolino
*Musolino & Dessel*
1615 L Street, NW, Suite 440
Washington, DC 20036

Sylvia Rolinski
*Rolinski & Suarez, LLC*
14915 River Road
Potomac, Maryland 20854

Karen N. Walker
Eunnice H. Eun
Samantha A. Gingold
KIRKLAND & ELLIS L.L.P.
655 Fifteenth Street, N.W.
Washington, D.C. 20005

Brian D. Sieve
Stephanie A. Brennan
KIRKLAND & ELLIS L.L.P.
200 East Randolph Drive
Chicago, Illinois 60601