## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STROITELSTVO BULGARIA LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:07-CV-00634-RMC |
| v. | ) | |
| | ) | Hon. Rosemary M. Collyer |
| THE BULGARIAN-AMERICAN ENTERPRISE | ) | |
| FUND and THE BULGARIAN-AMERICAN | ) | |
| CREDIT BANK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANT BULGARIAN-AMERICAN ENTERPRISE FUND'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(a)

Plaintiff's response confirms that this litigation bears no meaningful ties to the District of Columbia. Every relevant allegation asserted by plaintiff points to events that involved Bulgarian parties in Bulgaria. The only material United States contact is the fact that defendant BAEF has its only United States office in Chicago. As such, if this case remains in a United States court, the appropriate venue is the Northern District of Illinois.

As this Court may recall, BAEF responded to plaintiff's original complaint by filing three motions: (1) a motion to dismiss on personal jurisdiction and venue grounds pursuant to Federal Rules 12(b)(2) and 12(b)(3), or alternatively based on the doctrine of *forum non conveniens*; (2) a motion to dismiss pursuant to Federal Rules 12(b)(6) and 9(b) for failure to state a claim and to plead fraud with particularity; and (3) the instant motion to transfer. Plaintiff filed a substantive response to the transfer motion, and also filed an Amended Complaint. Upon receipt of the Amended Complaint, this Court *sua sponte* struck BAEF's first two motions (the jurisdiction/venue motion and the failure to state a claim motion) as moot. The Court

subsequently entered an order permitting the parties to conduct limited jurisdictional discovery, and ordering BAEF to file its response to the Amended Complaint by January 4, 2008.

The parties have completed their jurisdictional discovery, and on January 4, 2008, BAEF intends again to file: (1) a motion to dismiss plaintiff's Amended Complaint on personal jurisdiction and venue grounds pursuant to Federal Rules 12(b)(2) and 12(b)(3), or alternatively based on the doctrine of *forum non conveniens*; and (2) a motion to dismiss plaintiff's Amended Complaint pursuant to Federal Rules 12(b)(6) for failure to state a claim. BAEF respectfully requests that this Court consider those substantive motions before ruling on this motion to transfer.[1] Should this Court, nevertheless, choose to address the transfer issue first, it is clear that a transfer to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a), is appropriate.

## ARGUMENT

As an initial matter, plaintiff fundamentally misstates the relevant legal standard for evaluating a transfer motion. Plaintiff asserts that in order to justify a transfer, BAEF must show "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience . . . ." (Opp'n at 12.) That is not the law. That language, originally stated in *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947), was used in upholding a dismissal of a case on the grounds of ***forum non conveniens***, not a 1404(a) motion to transfer.[2]

---

[1]  Plaintiff's citation to *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007), does not require this Court to address the transfer motion first. *Sinochem* stands only for the proposition that "[a] district court . . . may dispose of an action by *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 1192.

[2]  Even with regard to motions to dismiss on the grounds of *forum non conveniens*, "a plaintiff cannot merely argue that his forum choice deserves blind deference because it does not rise to the level of an abuse of process which is 'vexatious' or 'oppressive' to the defendant." *Pain v. United Techs. Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980).

To meet its burden of establishing that transfer is appropriate, BAEF "must first show that the plaintiff could have brought the action originally in the proposed transferee district," and then "demonstrate that 'considerations of convenience and the interest of justice weigh in favor of transfer.'" *See, e.g., Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 76 (D.D.C. 2004), *quoting Trout Unlimited v. U.S. Dept. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Here, there can be no real dispute that this action could have been brought in the Northern District of Illinois (indeed, BAEF contends that is the *only* district in which the action could have been brought). Thus, the central issue is whether "considerations of convenience and interest of justice weight in favor of transfer." They clearly do.

## I.    The Only Judicial District In Which This Action Could Be Brought Is The Northern District Of Illinois.

Plaintiff devotes only three sentences in a footnote to the issue of whether this action could have been brought in the Northern District of Illinois. In that footnote, plaintiff asserts that this action could have been brought in the Northern District of Illinois "only if BAEF's participation in the SEED Act, and that participation's relationship to the claims in this case, do not constitute 'a substantial part of the events or omissions giving rise to the claims.'" (Opp'n at 11 n.9, quoting 28 U.S.C. § 1391(b)(2).) That is wrong.

The venue provision plaintiff cites, 28 U.S.C. § 1391(b)(2), does not even apply here. That subsection provides that a civil action in which a federal question is at issue may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). But the allegations in plaintiff's Amended Complaint make clear that none of the relevant events giving rise to its claims took place in the District of Columbia. To the contrary, plaintiff's allegations are centered around a contract entered into in Bulgaria, Am. Compl. ¶¶ 9-13 and Ex. A. to Am. Compl., between two Bulgarian

3

companies with no ties to the United States, Am. Compl. ¶¶ 2, 5, 7, that was allegedly breached in Bulgaria, Am. Compl. ¶¶ 14-22, resulting in damages and subsequent litigation in Bulgaria, Am. Compl. ¶¶ 23-43.  The only "event" that plaintiff claims took place in this judicial district is BAEF's original receipt of funding over *fifteen years ago* by the United States Congress through the SEED Act.  This "event," however, does not bear *any* relationship to, much less a "substantial part" of, the underlying events giving rise to plaintiff's claims.  Nor does plaintiff attempt to argue otherwise.  Thus, 28 U.S.C. § 1391(b)(2) is irrelevant.

      The only applicable venue provision is 28 U.S.C. § 1391(b)(3), which states that a civil action may be brought in "a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."[3]  Under subsection (c), a defendant-corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  BAEF, the only party to this case that is a U.S. entity, is based in, and has its only U.S. office in, Chicago, Illinois.  (*See* Schiller Decl. at ¶ 4, attached as Ex. A; *see also* www.baefinvest.com/eng/officeus.html.)  BAEF is thus "found" in the Northern District of Illinois.  Therefore, the only U.S. judicial district in which this action may be brought is the Northern District of Illinois.

## II.    The Balance Of Private And Public Interest Factors Favor Transfer To The Northern District Of Illinois.

      In its opposition, plaintiff strains to identify facts that relate this case to the District of Columbia.  In so doing, plaintiff proves BAEF's point:  neither the facts of this case nor the circumstances of this litigation favor keeping this case in this judicial district over

---

[3]    As explained in BAEF's opening brief, 28 U.S.C. § 1391(b)(1) is also not applicable because all defendants do not reside in the "same State."  (Opening Br. at 7.)

transferring it to the Northern District of Illinois. A balancing of the requisite private and public factors shows that transfer of this action to the Northern District of Illinois would be both more convenient and in the interest of justice.

**A.    Considerations Of Convenience (Private Interest Factors) Favor Transfer.**

The private interest factors this Court should consider in evaluating a motion to transfer include: "(1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Wada v. U.S. Secret Serv.*, --- F. Supp. 2d ----, Civil Action No. 07-442 (CKK), 2007 WL 3341847, at * 6 (D.D.C. Nov. 13, 2007) (citations omitted). Plaintiff fails to rebut BAEF's showing that these factors weigh in favor of transfer.

**1.    No Deference Should Be Given To Plaintiff's Forum Choice.**

While deference is normally accorded to the plaintiff's choice of forum, little deference to plaintiff's choice of forum is warranted where the District of Columbia is not plaintiff's home forum and plaintiff has failed to show that it has any substantial connection to this forum. *See Gemological Inst. of Am. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 72 (D.D.C. 2001). Moreover, "such deference is 'greatly diminished when the activities have little, if any, connection with the chosen forum.'" *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991) (*quoting Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 569 F. Supp. 773, 775 (D.C. Cir. 1983). *See also Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 (D.D.C. 1996) ("While a plaintiff's choice of forum is certainly entitled to some deference, that is less true where, as here, 'there is an insubstantial factual nexus with the plaintiff's choice.'") (internal citations omitted). Indeed, when (as here) the plaintiff is not the resident of the forum (as plaintiff concedes, *see* Opp'n at 12), or when the claims lack substantial connections to that

5

forum, "courts afford 'substantially less deference to that choice.'"  *Barham v. UBS Fin. Servs.,* 496 F. Supp. 2d 174, 178 (D.D.C. 2007) (*quoting DeLoach v. Philip Morris Cos., Inc.*, 132 F. Supp. 2d 22, 24 (D.D.C. 2000)).

Plaintiff fails to state a single convincing reason why the District of Columbia, a judicial district having nothing to do with the parties or the underlying facts of this case, is a more appropriate venue than the Northern District of Illinois.  Plaintiff has itself stated that it is not a resident of its chosen forum.  (*See* Opp'n at 4 (describing plaintiff as "a Bulgarian business"), 12 (stating that plaintiff "is a non-resident of the forum"); Am. Compl. ¶ 2, 5).  And plaintiff's so-called ties to the District of Columbia are insubstantial at best.   The only connection that plaintiff can conjure between the claims in this action and the District of Columbia is plaintiff's assertion that BAEF was established pursuant to the SEED Act.  (Am. Compl.  ¶ 6.)[4]    Arguing that this single act, which took place in 1991, *see* http://www.baefinvest.com/eng/main.html, and is not relevant to the claims at issue in this case, is "substantial" enough to connect plaintiff to this forum is akin to arguing that every person or entity that files tax returns with the Internal Revenue Service would be subject to the jurisdiction of the District of Columbia courts.  But that is not the law.[5]

---

[4]   BAEF also states in its Amended Complaint that, "[p]ursuant to the SEED Act, BAEF reports every six months to the United States Agency for International Development in the District of Columbia." (Am. Compl. ¶ 6.) However, the limited discovery to date shows that no reports were made in the District of Columbia in the relevant time period.  In fact, these periodic meetings occurred in Sofia, Bulgaria.  (*See* Oct. 26, 2007 Letter from E. Eun to P. Musolino, attached as Ex. B).  At best, written copies of these reports were mailed to USAID's offices in D.C. and in Sofia, Bulgaria in advance of BAEF's meetings with USAID. (*See* Schiller Tr. at 29:20-22, 30:1-3, attached as Ex. C.)  Sporadic mailings to D.C. hardly amount to a "substantial connection" with the forum.

[5]   *See, e.g., United States v. Smithfield Foods, Inc.*, 332 F. Supp. 2d 55, 61 n.3 (D.D.C. 2004) (finding that the filing of tax returns and a corporate report in the District of Columbia does not constitute transacting business of a continuous and systematic nature to give rise to personal jurisdiction in the District of Columbia); *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002) (granting transfer because "mere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C., is not (Continued...)

"In fact, *the presumption may switch to defendants' favor* in the District of Columbia when neither party resides in the chosen forum and the cause of action arises elsewhere." *Turner & Newall, PLC v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1310 (D.D.C. 1987) (citation omitted) (emphasis added). Because neither plaintiff (a Bulgarian company), nor defendants (a company incorporated in Delaware and headquartered in Chicago, Illinois, and a Bulgarian company) reside in the District of Columbia, and the cause of action arose in Bulgaria, the presumption should switch to BAEF's favor. This factor thus points to the Northern District of Illinois as the proper forum to hear this controversy.

> **2.    Convenience Of The Parties, Witnesses, And To Sources Of Proof Do Not Weigh In Favor Of Maintaining This Case In D.C.**

Rather than identifying legitimate connections plaintiff's claims have to the District of Columbia, plaintiff provides a list of reasons that it preferred filing in the District of Columbia. Simply put, these reasons are unavailing and unpersuasive.

Plaintiff states that "[t]he District of Columbia was chosen by plaintiff because it is convenient to plaintiff," Opp'n at 13, but fails to state a single reason why the District of Columbia is a convenient forum for a Bulgarian business with no ties to the United States. The fact that "plaintiff's counsel are located here and practice here," *id.*, "carries little, if any, weight in an analysis under § 1404(a)."[6] *Armco*, 790 F. Supp. at 324. *See also DeLoach*, 132 F. Supp. 2d at 26 n.5 ("The fact that counsel for both parties have offices in the District of Columbia is

---

determinative" as to venue in the District of Columbia); *Armco*, 790 F. Supp. at 322 (finding that defendants' contacts with membership and participation in a trade association located in the District of Columbia was not sufficient to establish a substantial connection with the District of Columbia, and granting motion to transfer).

[6]    Should this Court transfer this case to the Northern District of Illinois, BAEF assumes that plaintiff's counsel can move to be admitted *pro hac vice* pursuant to that jurisdiction's local rules, *see* N.D. Ill. LR83.14, as counsel for BAEF did in this case. (*See* Dkt. Nos. 6, 7.)

virtually irrelevant for purposes of deciding the present motion.").  Furthermore, plaintiff's vague attempt to tie unnamed "documents pertinent to the SEED Act" and the reports that BAEF mails semi-annually to a governmental agency located in the District of Columbia does not change the analysis.

BAEF is headquartered and does business in Chicago (and Bulgaria).  To the extent that it is relevant, BAEF's Chicago office is where its records are kept and where its office administrator is located.  (Ex. C at 43:2-3, 33:10-14.)  Plaintiff cites nothing to refute these facts. Nor can plaintiff argue that any witnesses are located in the District of Columbia, because the witnesses who are likely to testify in this case are located in Bulgaria.  And it would be no less convenient for Bulgarian witnesses to fly to Chicago than it would be for them to fly to the District of Columbia.  Accordingly, if any U.S. court is the most convenient forum for parties, witnesses, and documents in this matter, it is the Northern District of Illinois.[7]

**B.     Public Interest Factors Are Either Neutral Or Weigh In Favor Of Transfer.**

The relevant public interest factors are:  "(1) the transferee's familiarity with governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding controversies at home."  *Holland*, 360 F. Supp. 2d at 76.  Plaintiff's discussion of these factors adds nothing to the analysis.

---

[7]  *FC Investment Group*, cited by plaintiff, is inapplicable here.  Unlike this case, plaintiff FC Investment Group had a D.C. office, which defendants "deliberately reached" to conduct the business negotiations underlying the claims at issue in that case.  *FC Inv. Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 13 (D.D.C. 2006).  The court characterized these contacts as having "foreseeable effects" in the District of Columbia and ultimately found that defendants should have reasonably anticipated having to litigate a matter arising directly from these contacts.  *Id.* at 9.  In this case, however, plaintiff does not have a D.C. office, and BAEF did not "deliberately reach" into D.C. to conduct any business related to plaintiff's allegations, much less have any contacts in D.C. that would cause it to reasonably anticipate having to litigate a matter here.

1.    **The District Of Columbia Is No Better Qualified To Adjudicate International Issues Than Other United States Judicial Districts.**

Plaintiff asserts that "the familiarity of the District of Columbia courts with issues of international consequence and of federal legislative construction and application is unsurpassed." (Opp'n at 15-16.) But to the extent that either federal or international law must be applied to the facts of this case, one federal court is no better equipped than another federal court to interpret and apply that law. *See, e.g., Thomas v. Potter*, No. Civ. A. 05-1923 JDB, 2006 WL 314561, at *2 (D.D.C. Feb. 9, 2006) (granting motion to transfer, stating that "'there is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia.'") (*quoting Starnes v. McGuire*, 512 F.2d 918, 925 n.7 (D.C. Cir. 1974); *Ratnaswamy v. Air Afrique*, No. Civ. A. 95 C 7670, 1996 WL 507267, at *13 (N.D. Ill. Sept. 4, 1996) (denying motion to transfer and stating that "[i]f international law must be applied, the New York court is no better equipped than this Court to interpret and apply that law.") In fact, the Northern District of Illinois handles matters involving international law, just as any other district court in the United States does. *See, e.g., White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369 (N.D. Ill. 2001) (applying English law to resolve a motion to compel production of documents). Indeed, the District of Columbia does not, and would not, hinder transfer of a case more properly suited for another venue just because federal or international law is implicated. *See, e.g., Saran v. Harvey*, No. Civ. A. 04-1847 9JDB0, 2005 WL 1106347 at *2 (D.D.C. May 9, 2005) (transferring case in which "the events giving rise to plaintiff's claims occurred in Turkey," and which alleged violation of international law and treaties, to the Eastern District of Virginia, where venue was proper for all claims). Plaintiff cannot reasonably argue, therefore, that the District of Columbia is more familiar with, or better equipped to interpret and apply, federal or Bulgarian law than the Northern District of Illinois.

2.    **Court Calendar Congestion And Local Interest Favor Transfer To The Northern District Of Illinois.**

While it is true that there appear to be fewer pending cases per judgeship in the District of Columbia than in the Northern District of Illinois, Opp'n at 16, the median time for disposition is shorter in Illinois. *See, e.g., Fleming v. Ford Motor Co.*, Case No. Civ. A. 05-1333RWR, 2006 WL 566109, at *3 (D.D.C. Mar. 7, 2006) (relying only on median time from filing to trial). In any regard, because this case is in its earliest stages, transfer of this case to the Northern District of Illinois would certainly not delay its adjudication. *See Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 35-36 (D.D.C. 2004); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

Furthermore, the Northern District of Illinois' local interest in deciding this matter weighs more heavily in favor of transfer than that of the District of Columbia. When a complaint (such as plaintiff's) is filed in a jurisdiction with only a tenuous relationship to the claims alleged, courts will transfer cases to a district in which the defendant is headquartered in favor of that court's local interest in the matter. *See, e.g., Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 572 (E.D. Va. 2005) (transferring case brought by a British plaintiff-company to the Eastern District of New York, where defendant was headquartered, stating that "[i]n a case brought by a foreign plaintiff against an out-of-state defendant, there is little local interest in having the matter decided in Virginia."); *Owner-Operator Indep. Drivers Ass'n, Inc. v. C. R. England, Inc.*, No. CV F 02-5664 AWI SMS, 2002 WL 32831640, at *12 (E.D. Cal. 2002) (transferring case filed in district where plaintiff did not reside to district where defendant was headquartered).

## CONCLUSION

BAEF has met its burden of showing that the Northern District of Illinois is a more convenient and appropriate venue. BAEF, therefore, respectfully requests that if this Court does not dismiss plaintiff's Amended Complaint pursuant to the motions to dismiss that will be filed on January 4, 2008, then it should transfer this action to the Northern District of Illinois.

Date:   December 10, 2007

Respectfully submitted,

_Karen N. Walker (D.C. Bar No. 412137)_
Eunnice H. Eun (D.C. Bar No. 500203)
Samantha Gingold (D.C. Bar No. 977734)

Brian D. Sieve, P.C. (*pro hac vice*)
Stephanie A. Brennan (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Tel. (312) 861-2000
Fax (312) 861-2200

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel. (202) 879-5000
Fax (202) 879-5200

*Attorneys for Defendant The Bulgarian-American Enterprise Fund*

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STROITELSTVO BULGARIA LTD., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:07-cv-00634 |
| | ) | |
| v. | ) | |
| | ) | Hon. Rosemary M. Collyer |
| THE BULGARIAN-AMERICAN ENTERPRISE | ) | |
| FUND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF NANCY L. SCHILLER

I, Nancy L. Schiller, do hereby certify and declare as follows:

### PERSONAL BACKGROUND

1.    My name is Nancy L. Schiller.  I submit this declaration in support of Defendant the Bulgarian American Enterprise Fund's ("BAEF") Motion to Dismiss Plaintiff Stroitelstvo Bulgaria's ("Stroitelstvo") Complaint Pursuant to Federal Rules 12(b)(2) and 12(b)(3) or Alternatively Based on the Doctrine of *Forum Non Conveniens* ("Motion to Dimsiss").  The facts set forth in this Declaration are based on my personal knowledge.

2.    I am Managing Director for BAEF in its Chicago, Illinois office and have held that position for the past 15 years.  In that capacity, my responsibilities include interaction with the Board of Directors, government relations, and human resources.

3.      In 1989, Congress passed the Support for East European Democracy Act ("SEED Act"), 22 U.S.C. ¶¶§§ 5402, 5421, to promote private sector development in Poland and Hungary. The SEED Act was later expanded to provide funding for the establishment of additional enterprise funds (such as BAEF) that would promote private sector development in Eastern Europe.

4.      BAEF is a private, not-for-profit U.S. corporation established in 1991 under the Delaware General Corporation Law.  BAEF is based in Chicago, Illinois.  BAEF has its only U.S. office in Chicago and regularly transacts its business in Chicago.  BAEF also maintains an office in Sofia, Bulgaria and regularly transacts its business in Bulgaria.  BAEF's registered agent is located in Delaware.

5.      BAEF has no ongoing or regular contacts with the District of Columbia.  BAEF is not a resident of the District of Columbia and maintains no office or registered agent there. BAEF is not organized under the laws of the District of Columbia.  Nor does BAEF regularly transact any business in the District.

6.      The BAEF has semi-annual reporting obligations to the U.S. Agency for International Development ("USAID") as a condition of the original grant agreement between USAID and BAEF.  Howeveer, BAEF is not (and has never been) under the supervision of Congress.  Moreover, BAEF has not received any funding from USAID within the past five years.

7.      The  Bulgarian-American Credit Bank ("the Bank") is a majority-owned subsidiary of BAEF that operates exclusively in Bulgaria.  The Bank operates as an investment bank in the areas of small and medium size enterprise lending, construction lending and home

mortgage lending. The bank also offers other commercial banking services. The Bank has no office in the United States, has no registered agent here, and does not regularly transact any business here.

8.      The Bank operates independently from BAEF. Among other things, BAEF is not involved in the Bank's loan transactions. BAEF was not involved in any way in the loan transaction between the Bank and Stroitelstvo. In fact, BAEF was unaware of that particular loan (and any of its details) prior to receiving notice of this lawsuit. BAEF maintains no files or records related to the Bank's specific loan transactions, including this one.

9.      After receiving notice of this lawsuit, BAEF requested and obtained from the Bank's in-house attorney a true and correct copy of the March 24, 2005 Loan Agreement referenced in the Complaint, which is attached to BAEF's Motion to Dismiss as Exhibit A. BAEF also requested and obtained from the Bank's in-house attorney a true and correct copy of the May 9, 2006 Settlement Agreement between the Bank and Stroitelstvo (also referenced in the Complaint), which is attached to BAEF's Motion to Dismiss as Exhibit B.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _8|6|07_                    _Nancy L. Schiller_
                                        Nancy L. Schiller

# EXHIBIT B

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Eunnice H. Eun
To Call Writer Directly:
202 879-5159
eeun@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200
Dir. Fax: 202 654-9484

October 26, 2007

**Via Electronic Mail and First Class Mail**                    **Confidential**

Philip M. Musolino
Musolino & Dessel
1615 L Street, N.W., Suite 440
Washington, D.C. 20036

Re:     *Stroitelstvo Bulgaria Ltd. v. The Bulgarian-American Enterprise Fund, et al.*,
        Civ. Action No. 1:07-CV-00634-RMC

Dear Phil:

Pursuant to the Joint Statement Regarding Jurisdictional Discovery filed on October 15, 2007, please find enclosed the hotel and flight records reflecting travel to the District of Columbia by BAEF's two U.S. officers from January 2005 to present. The dates and locations of BAEF's reports to USAID from January 2005 to present are as follows:

- March 28, 2007          Conducted by phone
- September 18, 2007       Sofia, Bulgaria
- June 20, 2006            Scheduled for Chicago; cancelled.
- September 20, 2006       Sofia, Bulgaria
- March 30, 2005           Package submitted; meeting did not take place as scheduled in New York.
- September 30, 2005       Sofia, Bulgaria

The enclosed documents and the information provided above are designated as Confidential. Please let me know if you have any questions.

Sincerely,

*Eunnice H. Eun/hmf*

Eunnice H. Eun

Enclosures
EHE/hmf

Chicago        Hong Kong        London        Los Angeles        Munich        New York        San Francisco

# EXHIBIT C

**Capital Reporting Company**

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


----------------------------:

STROITELSTVO BULGARIA, LTD  :
                            :
     Plaintiff,             :
vs.                         : Case No.:
                            : 1:07-cv-00634
THE BULGARIAN-AMERICAN      :
ENTERPRISE FUND, et al      :
                            :
     Defendant.             :
----------------------------:

Washington D.C.

Thursday, November 15, 2007


Telephone deposition of:

NANCY SCHILLER

called for oral examination by counsel for

Plaintiff, pursuant to notice, at the offices

of Musolino & Dessel, 1615 L Street, N.W.,

Suite 440, Washinton, D.C., before Jodi Scheffel,

a Notary Public in and for the District of

Columbia, beginning at 12:40 p.m., When were

present on behalf of the parties:

**Capital Reporting Company**

Page 29

1    financial statements, any major accomplishments

2    that took place during the prior six months, and

3    any political developments that might be of

4    interest or that might impact the ability to do

5    business in the country.

6        Q    If you look at the October 26, 2007

7    letter where it refers to the March 28, 2007

8    report, it says conducted by phone.  Do you see

9    that?

10        A    Yes.

11        Q    So I take it that on occasion these

12    reports are not written reports.  They're oral

13    reports either delivered by phone or face-to-face,

14    as opposed to a written report?

15        A    They are written reports that we then

16    discuss either by phone or in person.

17        Q    I see.  So there is a semiannual written

18    report that BAEF submits to USAID, right?

19        A    Yes.

20        Q    How do you transmit them to USAID?  Do

21    you mail them?

22        A    Mail them.

**Capital Reporting Company**

Page 30

1          Q     Do you mail them to the Sofia office of

2     USAID or the D.C. office or some other office?

3          A     Both.

4          Q     You mean, each semiannual report goes

5     both places?

6          A     Yes.

7          Q     Is there a particular person at USAID who

8     is now the contact person for these reports?

9          A     Yes.

10         Q     Who would that be?

11         A     His name is Steve Eastham, E-a-s-t-h-a-m.

12         Q     E-a-s-t-h --

13         A     -- a-m.

14         Q     -- h-a-m.  And he's located at USAID's

15    office here in Washington?

16         A     Yes.

17         Q     I take it then he got a copy of the

18    March 8, 2007 -- let me just say he got a copy of

19    the March 2007 report, right?

20         A     Yes.

21         Q     And who is currently at the USAID office

22    in Sofia to whom you would get in touch if you had

**Capital Reporting Company**

Page 33

1    communicate with USAID; for another business?

2    A    Yes.

3    Q    You're full time with the Fund, correct?

4    A    No.

5    Q    Oh, you're not.  Are you part time?

6    A    Yes.

7    Q    Can you tell me how many employees the

8    Fund has in Chicago who are full time?

9    A    Zero.

10    Q    Can you tell me how many employees the

11    Fund has in Chicago who are part time?

12    A    One.

13    Q    And that would be who?

14    A    Trudy Genitis, Office Administrator.

15    Q    How many full time employees does the

16    Fund have outside of Chicago in the United States?

17    A    Did you ask me full time?

18    Q    Yes.

19    A    Zero.

20    Q    Are you the only part-time employee

21    outside of Chicago for the Fund?

22    A    Yes.

**Capital Reporting Company**

Page 43

1     Q    About the Fund and the bank's operations?

2     A    No.  I did not say that.  I said the Fund

3  files the 501c3 and keeps its records in Chicago.

4  As a subsidiary, the bank is peripherally included

5  in the 501c3 -- I mean, in the IRS form.

6     Q    No.  I know that.  What I was asking you

7  is, given what you said about the absence of other

8  information about the bank, whether the only

9  documentary source of information, if any, about

10  the bank would be contained in those filings?

11     MS. EUN:  Objection; vague.

12     A    I imagine you could assume that.  I think

13  I've already answered.

14     Q    I guess, here's the question:  I'm trying

15  to make sure, other than the USAID filings and the

16  501c3 filings, as I understand your testimony, you

17  don't know of any regularly maintained database or

18  file in Chicago or elsewhere devoted to the bank's

19  operations?

20     A    No.

21     Q    In other words, that statement is

22  correct?