## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STROITELSTVO BULGARIA LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 1:07-CV-00634-RMC |
| v. | ) |
| | ) Hon. Rosemary M. Collyer |
| THE BULGARIAN-AMERICAN ENTERPRISE | ) |
| FUND, and THE BULGARIAN-AMERICAN | ) |
| CREDIT BANK, | ) **ORAL ARGUMENT REQUESTED** |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT BULGARIAN-AMERICAN ENTERPRISE FUND'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6)

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................2

I.     The Parties. ............................................................................................................2

II.    The Loan Agreement. ............................................................................................3

III.   Suspension Of Credit Under The Agreement. ......................................................4

IV.    Bulgarian Resolution Of The Dispute...................................................................5

V.     Alleged Wrongful Actions By The Bank................................................................5

VI.    The Alleged Relationship Between The Bank's Conduct And BAEF. ..................7

VII.   Stroitelstvo Files This Lawsuit. ............................................................................8

CHOICE OF LAW ...........................................................................................................9

ARGUMENT .....................................................................................................................10

I.     Stroitelstvo Has Not Alleged Sufficient Facts To Impute The Bank's Liability To
       BAEF. ...................................................................................................................11

II.    The RICO Claim Should Be Dismissed Pursuant To Rules 12(b)(6)..................12

       A.     Failure To State A Claim. ..........................................................................12

              1.     BAEF's Alleged Conduct Did Not Proximately Cause Plaintiff's
                     Injury....................................................................................................13

              2.     Plaintiff Fails To Allege An Enterprise. ..............................................15

              3.     Plaintiff Fails To Allege That Any Of BAEF's Conduct Affected
                     United States Commerce.......................................................................18

              4.     Plaintiff Fails To Allege The Required Predicate Acts. .....................20

                     a.     Extortion Under 18 U.S.C. § 1951................................................20

                     b.     Extortionate Credit Transactions Under 18 U.S.C. §§ 891-
                            894.................................................................................................21

                     c.     Racketeering, 18 U.S.C. § 1952....................................................22

                     d.     Extortion And Blackmail Under D.C. Law. ..................................22

              5.     Plaintiff Also Fails To Establish A Pattern Of Racketeering
                     Activity. ...............................................................................................23

|   | B. | Because The RICO Claim Must Be Dismissed, All Other Counts Should Be Dismissed For Lack Of Subject Matter Jurisdiction. | 25 |

III.  Each Of Plaintiff's Other Tort Claims Is Fatally Flawed. .................................................26

|   | A. | Plaintiff's Intentional Interference With Contract Claim Fails As A Matter Of Law And Should Be Dismissed. | 27 |
|   | B. | Plaintiff Fails To State A Claim For Intentional Interference With Prospective Advantage. | 29 |
|   | C. | There Is No Fiduciary Relationship Between Plaintiff And BAEF | 30 |
|   | D. | Violation Of Bulgarian Law. | 31 |
|   | E. | Plaintiff Fails To State A Claim For Civil Conspiracy. | 33 |
|   | F. | Vicarious Liability. | 34 |

CONCLUSION...................................................................................................................1

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Ago v. Begg, Inc.*,
    Civ. A. No. 85-2229, 1988 WL 75224 (D.D.C. Feb. 24, 1998) ...................................... 15

*Anderson v. Wiggins*,
    460 F. Supp. 1 (D.D.C. 2006) ......................................................................................... 26

\**Bates v. Nw. Human Servs., Inc.*,
    466 F. Supp. 2d 69 (D.D.C. 2006) ........................................................................... passim

\**Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ....................................................................................... 10, 11, 23

*Bonham v. Orden*,
    Civ. A. No. 91-2586 SSH, 1991 WL 229950 (D.D.C. Oct. 25, 1991) ............................. 24

*Brooks v. District of Columbia*,
    Civil Action No. 05-362(GK), 2006 WL 3361521 (D.D.C. Nov. 20, 2006).................... 34

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) ....................................................................................... 13

*Bulletin Broadfaxing Network, Inc. v. Times Mirror Co.*,
    Civ. A. No. 91-1614, 1992 WL 121477 (D.D.C. May 13, 1992) ............................... 34, 35

*Cambridge Holdings Group, Inc. v. Fed. Ins. Co.*,
    357 F. Supp. 2d 89 (D.D.C. 2004) ................................................................................. 28

*Carnegie Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ....................................................................................................... 26

*Conley v. Gibson*,
    355 U.S. 41 (1957) ......................................................................................................... 10

*Cox v. Adm'r U.S. Steel & Carnegie*,
    17 F.3d 1386 (11th Cir. 1994) ....................................................................................... 13

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991) ..................................................................................... 26

*Diamond Chem. Co. v. Atofina Chems., Inc.*,
    268 F. Supp. 2d 1 (D.D.C. 2003). ............................................................................ 11, 34

*Dodd v. Infinity Travel*,
    90 F. Supp. 2d 115 (D.D.C. 2000) ................................................................................. 16

*Doe I v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) ................................................................ 15, 16, 19, 20

*Dooley v. United Techs. Corp.*,
    803 F. Supp. 428 (D.D.C. 1992) ..................................................................... 24, 25

*Dooley v. United Techs. Corp.*,
    Civ. A. No. 91-2499, 1992 WL 167053 (D.D.C. June 17, 1992) ..................................... 33

*Dumbarton Condo. Ass'n v. 3120 R St. Assocs. Ltd. P'ship*,
    657 F. Supp. 226 (D.D.C. 1987) ....................................................................... 26

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) .................................................................................. 10, 32

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ........................................................................ 25, 26

*Ellipso v. Mann*,
    Civ. Action No. 05-1186 (RCL), 2006 WL 1126814 (D.D.C. Apr. 27, 2006) ................. 33

*Eze v. Yellow Cab Co. of Alexandria, Va., Inc.*,
    782 F.2d 1064 (D.C. Cir. 1986) ...................................................................... 26

*First Am. Corp. v. Al-Nahyan*,
    17 F. Supp. 2d 10 (D.D.C. 1998) ..................................................................... 14

*Genetic Sys. Corp. v. Abbott Labs.*,
    691 F. Supp. 407 (D.D.C. 1998) ...................................................................... 29, 30

*Gov't Relations Inc. v. Howe*,
    No. Civ. A. 05-1081 CKK, 2007 WL 201264 (D.D.C. Jan. 24, 2007) ........................... 27

*Graves v. United States*,
    961 F. Supp. 314 (D.D.C. 1997) ...................................................................... 33

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) .................................................................................... 25

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ........................................................................ 33

*Hall v. Clinton*,
    285 F.3d 74 (D.C. Cir. 2002) ......................................................................... 33

*Hamrick v. Gottlieb*,
    416 F. Supp. 2d 1 (D.D.C. 2005) ..................................................................... 23

*Hicks v. Ass'n of Am. Med. Colls.*,
    Civil Action No. 07-00123 (ESH), 2007 WL 1577841 (D.D.C. May 31, 2007).............. 10

*High v. McLean Fin. Corp.*,
    659 F. Supp. 1561 (D.D.C. 1987) ............................................................................ 31

*Holmes v. Secs. Investor Prot. Corp.*,
    503 U.S. 258 (1992)................................................................................................ 13

*Iafrate v. Compagnie Generale Transatlantique*,
    106 F. Supp. 619 (S.D.N.Y. 1952) ......................................................................... 31

*King & King, Chartered v. Harbart Intern, Inc.*,
    436 F. Supp. 2d 3 (D.D.C. 2006)............................................................................ 27

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994)................................................................................ 10

*Long Distance Serv. of Wash., Inc. v. MCI Telecommc'ns Corp.*,
    692 F. Supp. 1402 (D.D.C. 1988) .......................................................................... 26

*Lowe v. DEA*,
    Civil Action No. 06-1133 (CKK), 2007 WL 2104309 (D.D.C. July 22, 2007) ........... 2, 10

*Lutz v. U.S.*,
    Civil Action No. 06-1177 (RMC), 2007 WL 1954438 (D.D.C. July 5, 2007) ................ 10

*Manhattan Telecomm. Corp., Inc. v. DialAmerica Mktg., Inc.*,
    156 F. Supp. 2d 376 (S.D.N.Y. 2001)..................................................................... 12

*Martens v. U.S.*,
    Civil Action No. 05-1805 (RMC), 2007 WL 2007580 (D.D.C. July 6, 2007)................ 10

*McCullough v. Suter*,
    757 F.2d 142 (7th Cir. 1985) ................................................................................. 17

*McManus v. MCI Commc'ns. Corp.*,
    748 A.2d 949 (D.C. 2000) ..................................................................................... 29

*Moncrief v. Kennedy*,
    Civ. A. No. 86-1131 SSH, 1987 WL 26415 (D.D.C. Nov. 19, 1987) ............................ 29

*Newborn v. Yahoo!, Inc.*,
    391 F. Supp. 2d 181 (D.D.C. 2005)........................................................................ 24

*Nix v. Hoke*,
    62 F. Supp. 2d 110 (D.D.C. 1999)........................................................................... 13

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................................................ 10

*\*Prunte v. Universal Music Group,*
    484 F. Supp. 2d 32 (D.D.C. 2007) ................................................................... 16, 30

*Rattigan v. Gonzales,*
    Civil Action No. 04-2009 (ESH), 2007 WL 1577855 (D.D.C. May 31, 2007) ............... 10

*Richard v. Bell Atl. Corp.,*
    946 F. Supp. 54 (D.D.C. 1996) ............................................................................... 34

*Riddell v. Riddell Wash. Corp.,*
    866 F.2d 1480 (D.C. Cir. 1989) ............................................................................. 33

*Scheck v. Gen. Elec. Corp.,*
    Civ. A. No. 91-1594, 1992 WL 13219 (D.D.C. Jan. 7, 1992) .................................. 15

*Smith v. D.C.,*
    413 F.3d 86 (D.C. Cir. 2005) ................................................................................. 13

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.,*
    565 A.2d 285 (D.C. 1989) ....................................................................................... 28

*Stromberg v. Marriott Int'l, Inc.,*
    474 F. Supp. 2d 57 (D.D.C. 2007) ............................................................................ 9

*Toshoku, Ltd. v. Blackmar,*
    431 P.2d 599 (Wash. 1967) ..................................................................................... 31

*United States v. Am. Bldg. Maint. Indus.,*
    422 U.S. 271 (1975) ................................................................................................ 18

*United States v. Bestfoods,*
    524 U.S. 51 (1998) .................................................................................................. 11

*United States v. Ortho-McNeil Pharm., Inc.,*
    No. 03 C 8239, 2007 WL 2091185 (N.D. Ill. July 20, 2007) .................................. 11

*United States v. Robertson,*
    514 U.S. 669 (1995) ................................................................................................ 18

*Vuitch v. Furr,*
    482 A.2d 811 (D.C. 1984) ....................................................................................... 35

*W.L. Meng v. Schwartz,*
    116 F. Supp. 2d 92 (D.D.C. 2000) .......................................................................... 26

*W.L. Meng v. Schwartz,*
　　305 F. Supp. 2d 49 (D.C. Cir. 2004)..................................................................... 33

*Walton v. Arabian Am. Oil Co.,*
　　233 F.2d 541 (2d Cir. 1956)............................................................................. 31

*Wash. Hosp. Ctr. Corp. v. Waters,*
　　No. 91-1638 (GHR), 1992 WL 23746 (D.D.C. Jan. 21, 1992)........................ 28

*Weaver v. Bratt,*
　　421 F. Supp. 2d 25 (D.D.C. 2006) ................................................................... 15

*Western Assocs. Ltd. P'ship v. Mkt. Square Assocs.,*
　　235 F.3d 629 (D.C. Cir. 2001)..................................................................... 24, 25

*Weyrich v. The New Republic, Inc.,*
　　235 F.3d 617 (D.C. Cir. 2001)..................................................................... 10, 32

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,*
　　883 F.2d 132 (D.C. Cir. 1989) ..................................................................... 16, 17

**Statutes**

18 U.S.C. § 1331 ..................................................................................................... 1

18 U.S.C. § 1951 ............................................................................................... 20, 21

18 U.S.C. § 1952 ............................................................................................... 20, 22

18 U.S.C. § 1961 ........................................................................................... 8, 17, 24

18 U.S.C. § 1962 ............................................................................................. passim

18 U.S.C. § 891 ................................................................................................. 20, 21

18 U.S.C. § 892 ................................................................................................. 20, 21

18 U.S.C. § 893 ................................................................................................. 20, 21

18 U.S.C. § 894 ................................................................................................. 20, 21

22 U.S.C. § 5402 ..................................................................................................... 2

22 U.S.C. § 5421 ..................................................................................................... 2

D.C. Code § 22-3251 (2007)................................................................................. 23

D.C. Code § 22-3252 (2007)................................................................................. 23

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................................... passim

**Other Authorities**

1 W. Fletcher, Cyclopedia of Law of Private Corporations 33, at 568 (rev. ed. 1990)................ 11

This case arises from a dispute over a loan agreement between two Bulgarian companies — plaintiff Stroitelstvo Bulgaria, Ltd. ("Stroitelstvo" or "plaintiff") and Defendant Bulgarian-American Credit Bank (the "Bank") — that was governed by Bulgarian law, performed in Bulgaria, and was the subject of a Bulgarian lawsuit. Defendant Bulgarian-American Enterprise Fund ("BAEF") is the majority owner of the Bank, but BAEF had absolutely no knowledge of, or involvement with, the loan that is the subject of this dispute.[1]

In a separate motion, BAEF explained why plaintiff's Amended Complaint should be dismissed on jurisdictional and venue grounds, pursuant to Federal Rules 12(b)(2) and 12(b)(3), or alternatively based on the doctrine of *forum non conveniens* ("BAEF J/V/FNC Mot. to Dismiss").[2] This motion, which of course the Court need address only if it denies the jurisdictional and venue motion, explains why dismissal is also proper under Federal Rule 12(b)(6). As explained in more detail below, plaintiff's Amended Complaint suffers from a host of fatal pleading defects:

- *First*, plaintiff alleges no specific misconduct by BAEF at all in its Amended Complaint. Instead, plaintiff improperly attempts to impute liability to BAEF for acts allegedly committed by the Bank.

- *Second*, plaintiff's RICO count suffers from five separate pleading defects. As such, the claim must be dismissed under Federal Rule 12(b)(6). Because this Court's subject matter jurisdiction is based on the existence of a federal question (18 U.S.C. § 1331), if the RICO claim is dismissed, then the remaining pendant claims should be dismissed as well.

---

[1]   The Bank has not yet been properly served with plaintiff's Amended Complaint pursuant to the Hague Convention, and thus this motion is being filed only on behalf of BAEF.

[2]   At plaintiff's request, the parties have completed limited discovery related to the issues of jurisdiction and venue.

- *Third*, each of plaintiff's remaining claims against BAEF
  suffers from one or more pleading defects, and thus must be
  dismissed pursuant to Rule 12(b)(6).

This Court should see plaintiff's Amended Complaint for what it really is — a thinly veiled effort to end run its decision to settle a prior litigation in Bulgaria. Plaintiff litigated its dispute with the Bank in Bulgaria, and entered into a settlement agreement resolving its claims. Plaintiff's conclusory and vague allegations against BAEF here are nothing more than an improper attempt to create jurisdiction in this Court, apparently so that it can have a second bite at the apple. But at bottom, none of plaintiff's claims against BAEF are proper under the Federal Rules, and thus the claims against BAEF should be dismissed with prejudice.

## FACTUAL BACKGROUND[3]

### I.    The Parties.

Plaintiff Stroitelstvo is a Bulgarian for-profit company organized under the laws of Bulgaria. (Am. Compl. ¶ 5)

The Bank is located in Bulgaria and is registered as a Bulgarian joint stock company. (*Id.* ¶ 7) Plaintiff alleges that at all times pertinent to the averments in the Amended Complaint, the Bank was a wholly-owned subsidiary of BAEF. (*Id.*) Among other things, the Bank operates as an investing bank in the areas of small and medium-size enterprise lending, construction lending, and home mortgage lending. (*Id.*) Plaintiff alleges that the Bank was funded by BAEF, which in turn received funding through the Support for East European Democracy Act ("SEED Act"), 22 U.S.C. §§ 5402, 5421. (*Id.* ¶ 7)

---

[3]    Solely for purposes of this motion, BAEF accepts Stroitelstvo's well-pleaded allegations as true. *See, e.g.,* *Lowe v. DEA*, Civil Action No. 06-1133 (CKK), 2007 WL 2104309 (D.D.C. July 22, 2007).

BAEF is a private, not-for-profit U.S. corporation established in 1991 pursuant to the SEED Act, 22 U.S.C. §§ 5402, 5421.  (*Id.* ¶ 6)  BAEF's purpose is to participate in the development and expansion of the economy in Bulgaria by investing in the Bulgarian private sector.  (*Id.* ¶ 6)  Since its inception in 1991, BAEF has been based in Chicago, Illinois.  (*Id.*)  BAEF at all times pertinent to the Amended Complaint had an office in Sofia, Bulgaria.  (*Id.*)  In 1992, BAEF commenced its operations with $58,000,000 in funding from the American government.  (*Id.*)  Plaintiff also contends that BAEF was the parent company of Bulgarian American Property Management EOOD ("BAPM").  (*Id.*)

Plaintiff claims that, pursuant to the SEED Act, BAEF reports every six months to the United States Agency for International Development ("USAID") in the District of Columbia and failed to report to USAID that the Bank engaged in, and was continuing to engage in, the wrongful conduct described in the Amended Complaint.  (*Id.*)

## II.    The Loan Agreement.

On March 24, 2005, plaintiff and the Bank entered into a "Loan Agreement." (Am. Compl. ¶ 10; *Id.* at Ex. A ("Loan Agreement")[4])  Under the Loan Agreement, the Bank agreed to loan 2,659,704 EUR to plaintiff.  (Am. Compl. ¶ 11)  The Amended Complaint alleges that the Bank disbursed 361,000 EUR to plaintiff as part of the draw down amount, *id.* ¶ 16, and that the Bank made at least four other disbursements to plaintiff.  (*Id.* ¶¶ 17, 18)

Plaintiff alleges that it invested approximately 850,000 EUR of this loan in a residential construction project ("Project") in Sofia, Bulgaria.  (*Id.* ¶¶ 9, 13)  According to plaintiff, it informed the Bank of the names of purchasers of the residential units in the Project

---

4    The terms of the Loan Agreement have been incorporated by reference into the Amended Complaint. (*See* Am. Compl. ¶ 10)

and provided the Bank with contract information for these purchasers. (*Id.* ¶ 14) Plaintiff also claims that it informed the Bank of the names of the contractors, subcontractors, suppliers, tradesmen, and mechanics assigned to work on the Project ("Construction Team"). (*Id.* ¶ 15) Plaintiff claims that it entered into a written agreement with subcontractor Ekostroi OOD ("Eskostroi") for the construction of the Project on or about March 25, 2005. (*Id.*) Plaintiff further alleges that, Ekostroi, in turn, entered into written agreements for concrete and steel framework deliveries for the Project. (*Id.*)

The Loan Agreement anticipated that presales of residential units would occur prior to their completion. (*Id.* at Ex. A ¶ 1.17) Plaintiff was required to notify the Bank and obtain its approval for any such presales. (*Id.* ¶ 14.12) Plaintiff also had to transfer proceeds from presale agreements to the Bank as loan repayments until the loan was fully repaid. (*Id.* ¶¶ 9.05, 9.06, 10.01, 10.03) Any failure to obtain the Bank's approval for presale agreements was considered an "Event of Default," as was a failure to transfer presale proceeds to the Bank. (*Id.* ¶¶ 10.01, 16.01(x); *see also id.* ¶ 10.03(c) (stating that the Bank could refuse to make further disbursements of funds if plaintiff failed to transfer sales proceeds)) In the event of a default, the Bank had the right, among other things, to: (1) cancel its commitment to disburse any remaining amounts of the loan not yet disbursed; (2) accelerate the loan for immediate repayment; (3) foreclose on collateral; and (4) seek legal fees incurred to take legal action against plaintiff. (*Id.* ¶¶ 16.04, 16.06) The Loan Agreement is governed by Bulgarian law. (*Id.* ¶ 17.07)

## III.    Suspension Of Credit Under The Agreement.

On November 11, 2005, after having made various disbursements under the Loan Agreement, the Bank suspended further credit payments to plaintiff, asserting an "Event of Default" and the right to recover 970,438 EUR. (Am. Compl. ¶ 19) Plaintiff alleges that the "Event of Default" was based on plaintiff's failure to obtain the Bank's prior consent for certain

preliminary contracts, as well as plaintiff's failure to transfer certain advanced payments from buyers. (*Id.* ¶ 20)  In an effort to resolve the dispute, the Bank offered to have BAPM, its affiliated property management company, purchase the project from plaintiff and assume the loan. (*Id.* ¶ 23)  Plaintiff declined the offer. (*Id.* ¶ 30)  After efforts to resolve the default failed, the Bank asserted its right to recover the full amount of the loan. (*Id.* ¶¶ 23, 31)

## IV.    Bulgarian Resolution Of The Dispute.

On December 12, 2005, the Bank obtained a decree of execution from a Bulgarian court. (*Id.* ¶ 31)  Plaintiff alleges that the Bank utilized this decree of execution to attach and freeze the assets of plaintiff. (*Id.*)  According to plaintiff, it obtained an interim suspension of the execution, which the Bank appealed. (*Id.* ¶ 32)  Plaintiff claims that it did not initiate a separate action to challenge the freezing of its assets because of a filing fee and because it would have taken approximately two to three years to reach a final resolution. (*Id.*)

On May 9, 2006, plaintiff and the Bank entered into a settlement agreement to resolve their disputes. (*Id.* ¶ 34)  Under the settlement agreement, plaintiff agreed to pay the Bank 563,000 EUR. (*Id.* ¶ 35)  Plaintiff now alleges that it entered into the agreement under duress. (*Id.* ¶ 34)  But none of plaintiff's eight claims relates to the validity of the settlement agreement, despite its contention that it was "forced to enter into an Agreement with the Bank." (*Id.*)  After the parties reached a settlement, the Sofia City Court issued a decision on the Bank's appeal, reversing the interim suspension of the execution and affirming the propriety of the initial court's decree of execution in favor of the Bank. (*Id.* ¶ 37)

## V.    Alleged Wrongful Actions By The Bank.

Despite the fact that plaintiff declined BAPM's purchase offer, plaintiff alleges that BAPM should have disclosed that it was either associated or affiliated with the Bank when the Bank offered to have BAPM purchase the project from plaintiff and assume the loan. (*Id.*

¶ 23)  Plaintiff also alleges that BAPM's offer was substantially below the value of the assets that BAPM sought to purchase.  (*Id.* ¶ 24)

Plaintiff further alleges that on or about November 2005, the Bank, through its employee Sabin Simeonov and others, "falsely, and maliciously, and with intent to damage plaintiff, and disrupt plaintiff's ability to perform under the Project, and to disrupt plaintiff's construction of the Project, and to interfere with plaintiff's ability to obtain sales revenue from the Project, advised the Project Unit Purchasers . . . and the Construction Team, that plaintiff was in default under the Contract, and that the Bank intended to put plaintiff in bankruptcy, and that the investment of the Project Unit Purchasers was unsafe, and that the Construction Team would be faced with financial losses on the Project."  (*Id.* ¶¶ 25, 26)

Plaintiff also alleges that on or about November 15, 2005, the Bank directed a letter to Milena Boikova Blateva in Sofia, Bulgaria, demanding payment in the amount of 970,438.41 EUR.  (*Id.* ¶ 27)  According to plaintiff, this letter was sent with the intent to deceive and mislead because the Bank "falsely claimed that the sum was due to the Bank under the terms of the Promissory Note."  (*Id.*)

Plaintiff alleges the following "direct and consequential and foreseeable result[s] of the Bank's failure to meet its obligations under the Contract, and its statements to Project Unit Purchases and the Construction Team:"  (1) purchasers of the Project withdrew from their contracts or elected to assign their contracts to less creditworthy purchasers, *id.* ¶ 28; (2) members of the Construction Team withdrew from participation in the Project, *id.*; and (3) plaintiff's contract with Ekostroi was suspended and interfered with, resulting in alleged losses, costs, and charges in excess of 100,000 EUR , *id.* ¶ 29.

## VI.    The Alleged Relationship Between The Bank's Conduct And BAEF.

The Amended Complaint includes no specific allegations of misconduct by BAEF.  Instead, plaintiff alleges that:  (1) the Bank's conduct constitutes the conduct of BAEF, *id.* ¶ 44; (2) "the Bank acted as and held itself out as a department of BAEF," *id.* ¶ 45; (3) "BAEF identified the Bank as its major operational subsidiary," *id.* ¶ 46; (4) "[t]he Bank's actions and decisions were subject to the control and the direction of BAEF," *id.* ¶ 48; (5) "[t]he Bank's actions and decisions were subject to the supervision of BAEF," *id.* ¶ 49; (6) "[t]he Bank's actions and decisions were subject to the policies and the demands of BAEF," *id.* ¶ 50; and (7) "BAEF ratified and affirmed the conduct of the Bank as alleged in the Amended Complaint, and BAEF failed to repudiate the wrongful conduct of the Bank."[5] (*Id.* ¶ 51) These are the only factual allegations in the Amended Complaint averred against BAEF.  In fact, plaintiff concedes that BAEF did not review, supervise, or participate in any of the Bank's lending activities.  (*Id.* ¶ 47)

In an effort to impute the actions of the Bank to BAEF, plaintiff alleges that BAEF's purported failure "to supervise" and "review the actions of the Bank," "to monitor the use of federal monies for its intended purposes," and failure "to take any steps to ensure that the SEED Act funds were properly utilized by the Bank for the purposes set out in the SEED Act" amounts to "willful blindness and deliberate ignorance and conscious avoidance."  (*Id.* ¶ 52) Plaintiff also alleges that because of these failures and BAEF's failure to report the Bank's

---

[5]    Although, for purposes of this motion, BAEF accepts plaintiff's well-pleaded allegations as true, testimony taken pursuant to the limited discovery conducted by the parties shows that the Bank operated independently of BAEF and that BAEF does not, and did not, know of the Bank's specific dealings.  (*See* Ex. 2 to BAEF J/V/FNC Mot. to Dismiss at 37:9-15, 38:1-6, 39:15-22; Ex. 3 to BAEF J/V/FNC Mot. to Dismiss ¶ 8) Plaintiff concedes as much in its Amended Complaint.  (*See* Am. Compl. ¶ 7)

activities to USAID and "others," BAEF allowed the Bank to use its "wrongful scheme" against it, as well as unnamed "others." (*Id.* ¶ 53)

## VII.    Stroitelstvo Files This Lawsuit.

On April 4, 2007, plaintiff filed this action.  BAEF was served in Delaware on June 18, 2007, through BAEF's registered agent.  BAEF filed various motions to dismiss the original complaint, and plaintiff responded by filing an Amended Complaint.  Plaintiff then requested, and BAEF agreed, to take limited discovery on the issues of jurisdiction and venue. That discovery is now complete.

In its Amended Complaint, plaintiff purports to assert six claims against BAEF: (1) a RICO claim under 18 U.S.C. § 1961(c), *id.* ¶¶ 55-67; (2) intentional interference with various contracts purportedly entered into by plaintiff with third parties pertaining to the construction project in Bulgaria, *id.* ¶¶ 77-84; (3) intentional interference with prospective advantage arising from the Bulgarian construction project, *id.* ¶¶ 85-91; (4) breach of fiduciary duty, *id.* ¶¶ 92-97; (5) violation of Bulgarian law, *id.* ¶¶ 103-109; and (6) civil conspiracy and vicarious liability, *id.* ¶¶ 110-113.[6]  Plaintiff alleges that nonspecified "actions by *the Bank* . . . amount to extortion, blackmail, bank fraud and predatory lending practices . . . and constitute a pattern of racketeering activity" under civil RICO.[7]  (*Id.* ¶ 38)  Plaintiff seeks consequential damages resulting from the Bank's suspension of disbursements. (*Id.* ¶ 40)

---

[6]    Plaintiff has also asserted claims for breach of the loan agreement, Am. Compl. ¶¶ 68-76 and abuse of process, *id.* ¶¶ 98-102, but those claims apparently are alleged only against the Bank.  (*See, e.g., id.* ¶¶ 73-74 (alleging only that "[t]he Bank failed and refused to meet its obligations under the Contract . . . .") 101 ("The Bank's conduct was wrongful and its intent was wrongful.").  BAEF is thus moving for dismissal for the six other claims alleged in the Amended Complaint.

[7]    Unless otherwise indicated all *emphasis* is added, and internal citations and quotation marks are omitted.

The Loan Agreement entered into by plaintiff and the Bank forms the basis of plaintiff's RICO claim, as well as each and every one of plaintiff's common law tort claims. (*See id.* ¶¶ 66, 97, 102, 113 (damages include plaintiff's loss of benefit of the bargain); 68-76 (breach of contract claim); and 82-83, 89-90 (refusal to provide funds under the contract was intentional interference with plaintiff's third-party contracts and prospective advantage).

## CHOICE OF LAW

As discussed in BAEF's motion to dismiss on jurisdictional and venue grounds, or alternatively on the doctrine of *forum non conveniens*, the Loan Agreement is governed by Bulgarian law, and that contract specifies that disputes regarding the Agreement must be resolved by a Bulgarian court. (*See Id.* at Ex. A ¶¶ 17.07-17.08) Even apart from the Loan Agreement, however, Bulgarian law should apply because Bulgaria has the most substantial interest in the resolution of this dispute. *See, e.g., Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57, 61 (D.D.C. 2007) (stating that if a conflict exists, the court must then determine "which jurisdiction has a more substantial interest in the resolution of the issues."). As explained in BAEF's alternative motions, this analysis should lead the Court to dismiss this action for lack of jurisdiction or venue, or, in the alternative, on the grounds of *forum non conveniens*. Assuming, *arguendo*, that this Court finds that Bulgarian law does not control and that the District of Columbia is a proper forum, the Court would arguably apply either the law of Illinois or the District of Columbia. Because plaintiff's RICO claim is based on federal law, and because there is no conflict between the laws of Illinois and the District of Columbia for the common law claims asserted in the Amended Complaint, for the purposes of this motion BAEF relies on federal and District of Columbia law.

9

# ARGUMENT

In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim" that will "provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Dismissal is proper when the plaintiff has "failed to allege all the material elements of [its] cause of action." *Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001). "[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Importantly, the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), clarified *Conley*'s pleading standards for motions to dismiss. A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim for relief that is plausible on its face." Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or else "their complaint must be dismissed." *Twombly*, 127 S. Ct. at 1974. Only then does the plaintiff satisfy the requirement to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1964.[8]

---

[8] Although *Twombly*'s elevated pleading requirements were set forth in the context of an alleged antitrust conspiracy, this Court has applied *Twombly*'s pleading requirements to several non-antitrust related claims. *See e.g.*, *Rattigan v. Gonzales*, Civil Action No. 04-2009 (ESH), 2007 WL 1577855, at *6 (D.D.C. May 31, 2007) (applying *Twombly*'s pleading standards in the context of an employment discrimination claim); *Hicks v. Ass'n of Am. Med. Colls.*, Civil Action No. 07-00123 (ESH), 2007 WL 1577841, at *2 (D.D.C. May 31, 2007) (applying *Twombly*'s pleading standards to a claim of retaliatory employment termination); *Martens v. U.S.*, Civil Action No. 05-1805 (RMC), 2007 WL 2007580, at *1 (D.D.C. July 6, 2007); *Lutz v. U.S.*, Civil Action No. 06-1177 (RMC), 2007 WL 1954438, at *2 (D.D.C. July 5, 2007) (applying *Twombly*'s pleading standards in the context of claims alleging IRS tax violations); and *Lowe v. DEA*, Civil Action No. 06-1133 (CKK), 2007 WL 2104309, at *2 (D.D.C. July 22, 2007) (applying *Twombly*'s pleading standards in the context of a FOIA request).

I.    **Stroitelstvo Has Not Alleged Sufficient Facts To Impute The Bank's Liability To BAEF.**

The Amended Complaint does not state or describe any independent behavior by BAEF that has caused plaintiff any damages. Instead, as explained above, plaintiff makes only conclusory assertions that the "conduct of the Bank as alleged in the Amended Complaint constitutes the conduct of BAEF." (*See, e.g.*, Am. Compl. ¶ 44) Such allegations are an improper attempt to end-run the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). *See also* 1 W. Fletcher, Cyclopedia of Law of Private Corporations 33, at 568 (rev. ed. 1990) ("Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate."). In fact, a parent company may be held liable for the actions of its subsidiary only if a court pierces the corporate veil. *See Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 17-18 (D.D.C. 2003).

Instead of specifically identifying how the alleged wrongful actions of the Bank constitute the actions of BAEF, plaintiff merely asserts that BAEF did not review, supervise, or participate in any of the Bank's lending activities, Am. Compl. ¶ 47, which allegedly "permitted the wrongful scheme of the Bank to be implemented, and to continue, and to be commenced against plaintiff, and to continue against plaintiff and others," *id.* ¶ 53. But such broad, conclusory allegations are neither sufficient to pierce the corporate veil, nor adequate to satisfy the pleading standards under *Twombly. see* 127 S. Ct. at 1965 (holding that although plaintiff need not allege all of the facts involved in a claim, the claim must still be supported with enough facts, taken as true, that plausibly suggest that the plaintiff is entitled to relief). This defect alone requires dismissal of all of plaintiff's claims against BAEF. *See, e.g., United States v. Ortho-*

11

*McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *5 (N.D. Ill. July 20, 2007) (dismissing claims against a parent corporation where the plaintiff failed to set forth facts that would plausibly suggest liability of the parent corporation under a "piercing the corporate veil" theory).

## II.    The RICO Claim Should Be Dismissed Pursuant To Rules 12(b)(6).

Plaintiff has alleged that BAEF violated RICO Section 1962(c).  To state a claim under Section 1962(c) of the RICO statute, a plaintiff must allege that:  "(1) a person or persons (2) associated with an enterprise (3) conducted (4) the affairs of that enterprise (5) through a pattern (5) of racketeering activity."  *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 78 (D.D.C. 2006).  "In considering civil RICO claims, a court must be mindful of the devastating effect such claims may have on defendants . . . Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Manhattan Telecomm. Corp., Inc. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001).

Plaintiff has not alleged, and cannot allege, a proper RICO claim.  Plaintiff has failed to allege essential elements of the RICO claim, requiring dismissal under Rule 12(b)(6).  Because the RICO claim must be dismissed under Rule 12(b)(6), this Court lacks subject matter jurisdiction to address the remaining tort claims asserted by plaintiff.

### A.    Failure To State A Claim.

There are at least five major defects in plaintiff's RICO claim:  (1) plaintiff does not allege that BAEF's conduct proximately caused plaintiff's injury, and therefore plaintiff lacks standing; (2) plaintiff has not sufficiently alleged an "enterprise"; (3) none of BAEF's alleged conduct affected United States commerce; (4) plaintiff has not adequately alleged any

RICO predicate acts; and (5) plaintiff has not alleged a "pattern" of racketeering activity.  Any one of these five defects requires dismissal under Rule 12(b)(6).

### 1.     BAEF's Alleged Conduct Did Not Proximately Cause Plaintiff's Injury.

In order to have standing under RICO, a plaintiff must plead facts that demonstrate "'some direct relation between the injury asserted and the injurious conduct alleged' — in other words, proximate cause." *Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002) (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  *See also Holmes*, 503 U.S. at 268 (stating that to establish proximate cause, plaintiff must demonstrate a "direct relation between the injury asserted and the injurious conducted alleged.").  Proof of a "direct relation" between plaintiff's injury and defendant's alleged conduct requires a showing that the alleged conduct was "'a substantial factor in the sequence of responsible causation.'"  *Nix v. Hoke*, 62 F. Supp. 2d 110, 115 (D.D.C. 1999) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994)).  A plaintiff has failed to plead causation, and therefore lacks standing, unless it demonstrates that its injury was a direct and foreseeable result of a defendant's individual actions.  *Smith v. D.C.*, 413 F.3d 86, 103 (D.C. Cir. 2005) (stating that "[p]roximate cause . . . requires an element of foreseeability.").  The proximate cause requirement is thus meant to "limit a [defendant's] responsibility for the consequences of *that [defendant's] own acts*."  *Holmes*, 503 U.S. at 268.

Here, plaintiff's Amended Complaint does not plead facts to show that its alleged injuries are the direct and foreseeable result of BAEF's own individual acts.  Nothing in the Amended Complaint suggests that BAEF played any role in the formation, performance, or breach of the Loan Agreement that forms the basis of plaintiff's RICO claim.  There are no facts alleged that directly and foreseeably connect any of BAEF's individual actions to plaintiff's

alleged injuries.    In fact, plaintiff's Amended Complaint is utterly devoid of any factual allegations that show BAEF committed any unlawful acts, let alone acts that were the proximate cause of plaintiff's alleged injury.    The primary factual allegations plaintiff makes in its Amended Complaint with regard to BAEF are that:

- BAEF failed to report to the United States Agency for International Development ("USAID") or otherwise that the Bank purportedly engaged in, and was continuing to engage in, the conduct described in the Amended Complaint, Am. Compl. ¶ 6;

- "BAEF ratified and affirmed the conduct of the Bank as alleged in the Amended Complaint," *id.* ¶ 51;

- "BAEF failed to repudiate the wrongful conduct of the Bank," *id.*;

- BAEF failed "to monitor the use of federal monies for its intended purposes," *id.* ¶ 52;

- BAEF failed "to take any steps to ensure that the SEED Act funds were properly utilized by the Bank for the purposes set out in the SEED Act," and thus "acted with willful blindness, and deliberate ignorance and conscious avoidance . . . ." (*Id.* ¶¶ 52-53)

But none of these facts allege any legally improper conduct by BAEF.    Plaintiff fails to demonstrate how BAEF's purported failure to "report," "repudiate," "monitor," or "take steps," directly or foreseeably caused plaintiff's alleged injuries. *See First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 22 (D.D.C. 1998) (stating that under the proximate cause requirement, plaintiff must demonstrate "a direct relation between the defendant's conduct and the plaintiff's harm . . . ." or that the alleged conduct "[is] a substantial factor in the sequence of responsible causation," producing injury that is "foreseeable or anticipated as a natural consequence.").

While plaintiff repeatedly refers to the Bank's actions and how those actions purportedly resulted in injury to plaintiff, plaintiff does not make any effort to explain how BAEF's conduct played a "substantial factor in the sequence of responsible causation." *First Am. Corp.*, 17 F. Supp. 2d at 22.  To the contrary, plaintiff admits that:

- the Bank operates independently from BAEF, Am. Compl. ¶ 7;

- BAEF does not maintain any files or records related to the Bank's specific loan transactions, *id.*;

- BAEF is not involved in the Bank's loan transactions, *id.*; and, that therefore,

- BAEF did not review, supervise, or participate in any of the Bank's lending activities, *id.* ¶ 47.

Plaintiff has therefore failed to demonstrate proximate causation.  Its RICO claim must be dismissed.  *See, e.g.*, *Weaver v. Bratt*, 421 F. Supp. 2d 25, 36-37 (D.D.C. 2006) (dismissing plaintiff's RICO claims for failure to demonstrate proximate causation).

### 2.    Plaintiff Fails To Allege An Enterprise.

A plaintiff cannot state a claim under RICO Section 1962(c) unless it properly alleges the existence of an "enterprise" through which the person, or defendant, operates.  *See, e.g.*, *Bates*, 466 F. Supp. 2d at 78.  "The existence of an enterprise must be shown through facts that allege (1) a common purpose among the participants, (2) organization, and (3) continuity." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 119 (D.D.C. 2005).  *See also Scheck v. Gen. Elec. Corp.*, Civ. A. No. 91-1594, 1992 WL 13219, at *3 (D.D.C. Jan. 7, 1992) ("Plaintiffs in a RICO claim must plead specific facts, not merely conclusory allegations, which establish the enterprise.")  To plead the existence of an "organization," which is "perhaps the most important prong" of the enterprise analysis, *Ago v. Begg, Inc.*, Civ. A. No. 85-2229, 1988 WL 75224, at *3 (D.D.C. Feb. 24, 1998), "[i]t is not enough for a group of individuals to commit acts enumerated by § 1961(1); plaintiff must assert that those individuals were organized together in some way, and that there was a structure to the association."  *Doe I*, 400 F. Supp. 2d at 119.  Plaintiff has failed to do so here.

While plaintiff asserts that "BAEF, the Bank, and BAPM, as well as Ameta Holding JSC . . . are an 'enterprise,'" Am. Compl. ¶ 58, it makes no effort to explain how these entities "associated or operated together, or were otherwise organized into an enterprise with a shared decision-making infrastructure." *Doe I*, 400 F. Supp. 2d at 120.  Only once in the Amended Complaint does plaintiff allege that BAEF "utilized" Ameta Holding JSC (although it does not explain how).  (*See* Am. Compl. ¶ 43)  And the only assertions plaintiff makes with regard to BAEF's association with BAPM are that BAEF is its parent company, *see id.* ¶ 6, and that BAEF and BAPM are "the main shareholders of the Bank." (*Id.* ¶ 7)  But **nowhere** in the Amended Complaint does plaintiff attempt to explain how these four entities, as an "association-in-fact," operated together as an organization, or to identify the "organizational and decisionmaking structure of the alleged enterprise" as a whole. *See Dodd v. Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000)  This failure alone is fatal to plaintiff's RICO claim. *See id.* (holding that plaintiffs' failure to plead facts alleging the "organization" element of enterprise as "fatal to their claim," and dismissing plaintiffs' amended complaint for failure to state a claim).

Even if plaintiff has sufficiently alleged an enterprise (which it has not), plaintiff has failed to identify an enterprise distinct from the person, or defendant. *See Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007) (making clear that an enterprise "is simply not the same person referred to under a different name — that is to say, there must be some distinctness between the RICO defendant and the RICO enterprise."). To be clear, "[a] corporation may be either a 'person' or an 'enterprise' under RICO *but the same corporation or association cannot be both the person and the enterprise*." *Id. See also Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1989) ("Logic alone dictates that one entity may not serve as the enterprise and the person associated with it

because, as Judge Posner of the Seventh Circuit has stated, 'you cannot associate with yourself.'" (quoting *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985)).  A clear distinction between the person and the enterprise must be maintained because "section 1962(c) was intended to punish the person who conducts the affairs of the otherwise legitimate business [*i.e.,* the enterprise] in an illegal manner.  Such a distinction focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity." *Yellow Bus Lines*, 883 F.2d at 140.

Here, plaintiff alleges that BAEF and the Bank are each a "person" as well as members of an "enterprise" under 18 U.S.C. § 1961.  (Am. Compl. ¶¶ 57-58 (alleging that "[e]ach of the Defendants is a 'person' within the meaning of 18 U.S.C. § 1961(3)," and that "Defendants BAEF [and] the Bank . . . are an 'enterprise' within the meaning of 18 U.S.C. § 1961(4) . . . .")) While it is permissible, in the case of legally separate entities, to name one "as a RICO person and the other as a RICO enterprise," *Bates v. Nw. Human Servs.*, 466 F. Supp. 2d 69, 82 (D.D.C. 2006), it is impermissible to name the same entity as both the person and the enterprise. *Bates*, 466 F. Supp. 2d at 88 (stating that one of plaintiffs' RICO claims must fail because, "as a factual matter . . . it is not possible for all three defendants to have been RICO enterprises to each other when undertaking the complained-of predicate acts . . . .").

Plaintiff's addition of BAEF's subsidiaries (the Bank and BAPM) does not redeem its Amended Complaint. *See, e.g., Yellow Bus Lines*, 883 F.2d at 141 (stating that "[w]here, as here, the organization is named as defendant, and the organization associates with its member to form the enterprise "association-in-fact," the requisite distinctness does not obtain."). Similarly, plaintiff's addition of Ameta Holding JSC, and "any individuals or entities who aided and abetted or otherwise participated in their unlawful activities, including those

17

companies used by the Bank and/or BAEF and/or BAPM to wrongly acquire control over Bulgarian companies," Am. Compl. ¶ 58, is not sufficient to plead an enterprise under RICO. In fact, the addition of these entities, without more, simply serves to cloud further the analysis. *See Bates*, 466 F. Supp. 2d at 85 (asserting that it was "especially" difficult to understand each defendant's individual role as a RICO person or RICO enterprise where plaintiffs alleged several alternative enterprises, some of which added the District of Columbia (not named as a defendant) as a member of the alleged enterprise). Plaintiff's failure to plead an enterprise distinct from the persons from whom damages are sought thus constitutes an independent basis for dismissing its RICO claim. *See, e.g., id.* at 87 (dismissing plaintiff's RICO claim for failure to state a claim, explaining that "plaintiffs' three Section 1962(c) claims, when viewed together and without the benefit of a clearly pled complaint, essentially collapse into a single allegation that the parent corporation . . . and its two subsidiaries . . . are each simultaneously a RICO person acting through the other entities in their roles as RICO enterprises and a RICO enterprise through which the other entities act as RICO persons.").

### 3. Plaintiff Fails To Allege That Any Of BAEF's Conduct Affected United States Commerce.

Under the RICO statute, the alleged "enterprise" must be engaged in, or involved in activities that affect, "interstate or foreign commerce." 18 U.S.C. § 1962(c) (2007). "Interstate commerce" is defined as either "*intra*state commercial activities that nonetheless have substantial *inter*state effects," *United States v. Robertson*, 514 U.S. 669, 671 (1995) (emphasis in original), or "'direct[] engage[ment] in the production, distribution, or acquisition of goods or services in interstate commerce.'" *Id.* at 672 (quoting *United States v. Am. Bldg. Maint. Indus.*, 422 U.S. 271, 283 (1975)). In order to apply the RICO statute to foreign conduct, "[t]he activity

at issue must, at minimum, produce or be intended to produce effects in this country." *Doe I*, 400 F. Supp. 2d at 115-16.

Plaintiff has failed to plead a single fact asserting that BAEF is engaged in, or involved in activities that affect, either interstate or foreign commerce. Plaintiff does not allege that BAEF was engaged in any activities that affected interstate commerce. Nor does plaintiff allege any commercial conduct by BAEF that produced effects in the United States, or that was even intended to produce effects in the United States. In fact, plaintiff concedes that BAEF was established to promote "private sector development and entrepreneurship *in Bulgaria* . . . ," Am. Compl. ¶ 6, and that "BAEF applied for, and received . . . monies . . . from the government of the United States under the SEED Act *for the express purpose of fostering commerce in Bulgaria* . . . ." (*Id.* ¶ 58)

Plaintiff makes a few, feeble efforts to tie BAEF's commercial activities in Bulgaria to the United States by stating that it transferred the funds received under the SEED Act to the Bank "for the express purpose of fostering commerce in Bulgaria, and for the further benefit of the United States as contemplated by the SEED Act," *id.*, and that "Defendants . . . accepted directly and indirectly in the United States the monies and the increased equity generated as a result of that racketeering activity . . . ." (*Id.* ¶ 61) But plaintiff fails to describe how BAEF's transfer of funds to the Bank "benefited" the United States or how that transfer produced, or intended to produce effects in this country. Furthermore, plaintiff fails to state how BAEF's alleged "acceptance . . . in the United States" of money generated in Bulgaria affected interstate or foreign commerce. These statements, without more, do not establish that BAEF's commercial activities affect interstate or foreign commerce within the meaning of the statute.

This Court has recognized that when "the primary and significant effects of the . . . defendants' actions [were] felt abroad, not in the United States; [and that,] indeed, any effect on American commerce [was] negligible, unforeseeable, and unintended," a plaintiff's RICO claim must be dismissed. *Doe I*, 400 F. Supp. 2d at 116. Given plaintiff's concession that BAEF's activities primarily promote commerce in Bulgaria, and the absence of any specific allegations connecting any of BAEF's commercial activities to the United States, plaintiff's claim must be dismissed for failure to demonstrate that BAEF is engaged in interstate or foreign commerce under the RICO statute.

### 4.     Plaintiff Fails To Allege The Required Predicate Acts.

In order to state a RICO claim under Section 1962(c), a plaintiff must allege facts to demonstrate a "pattern of racketeering activity." 18 U.S.C. § 1962(c) (2007). Plaintiff asserts five different predicate racketeering acts against BAEF: (1) extortion, in violation of 18 U.S.C. § 1951; (2) extortionate credit transactions, in violation of 18 U.S.C. §§ 891-894; (3) racketeering, in violation of 18 U.S.C. § 1952; (4 and 5) extortion and blackmail "within the meaning of the applicable state law." (Am. Compl. ¶ 63a.-d.) Plaintiff makes no effort to state any facts to support a claim under any of these alleged predicate offenses.

#### a.     Extortion Under 18 U.S.C. § 1951.

Plaintiff fails to plead an allegation of extortion, which requires plaintiff to demonstrate that BAEF "obstruct[ed] . . . commerce . . . by robbery or extortion . . . or commits or threatens physical violence to any person or property in furtherance of a plan . . . to do anything in violation of [Section 1951] . . . ." 18 U.S.C. § 1951(a) (2007). Besides plaintiff's bald assertions that BAEF "extort[ed] funds," plaintiff makes no *factual* allegations that BAEF personally obstructed "commerce" by "robbery or extortion." Nor can plaintiff do so. Section 1951 defines commerce as "commerce within the District of Columbia, or any Territory or

20

Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3) (2007). Because the only allegations that plaintiff makes with regard to BAEF's commercial activities connect BAEF to Bulgaria, *see* Am. Compl. ¶ 6; *see also supra* Section II.A.3., plaintiff does not state a claim under this statute.

### b.    Extortionate Credit Transactions Under 18 U.S.C. §§ 891-894.

In order to state a claim for extortionate credit transactions under 18 U.S.C. §§ 891-894, plaintiff must show that BAEF either made an "extortionate extension of credit or conspired to do so," financed an extortionate extension of credit, or collected an extension of credit by "extortionate means." *See* 18 U.S.C. §§ 892-894 (2007). An "extortionate extension of credit" is defined as "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person." *Id.* § 891(6). "Extortionate means" is defined as "any means which involves [sic] the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." *Id.* § 891(7). Plaintiff again fails to plead any facts to establish that BAEF either: (1) agreed to lend money to plaintiff with the understanding of the parties that BAEF would use "violence or other criminal means" to harm plaintiff if plaintiff failed to make repayment or delayed to make repayment; (2) financed such an agreement; or (3) collected an extension of credit using "violence or other criminal means."

### c.     Racketeering, 18 U.S.C. § 1952.

To state a claim for racketeering, plaintiff must show that BAEF "travel[ed] in . . . or use[d] the mail or any facility in interstate or foreign commerce, with the intent to (1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, . . . or facilitate . . . any unlawful activity . . . ." 18 U.S.C. § 1952.

As an initial matter (and as established above, *see supra* Section II.A.3.), plaintiff concedes that BAEF's activities promote commerce in Bulgaria, and fails to state affirmatively any wrongful conduct by BAEF in or affecting United States commerce. But even if plaintiff could establish that BAEF traveled in interstate commerce, it fails to state what purported "unlawful activity" BAEF intended while doing so.[9] Plaintiff's conclusory allegation that BAEF engaged in racketeering is couched so vaguely that it gives BAEF "an entirely insufficient sense of the scope or details of the plaintiff['s] RICO allegations." *See Bates v. Nw. Human Servs.*, 466 F. Supp. 2d 69, 87-88 (D.D.C. 2006) (dismissing plaintiffs' RICO claims pursuant to Rule 12(b)(6)). Plaintiff thus fails to state a claim for racketeering.

### d.     Extortion And Blackmail Under D.C. Law.

The final predicate acts alleged by Stroitelstvo are acts of extortion and blackmail "within the meaning of the applicable state law." (Am. Compl. ¶ 63d.) Under D.C. law, a person commits extortion if "[t]hat person obtains or attempts to obtain the property of another with the other's consent . . . induced by wrongful use of actual or threatened force or violence or

---

[9]   Section 1952 defines "unlawful activity" as "(1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title . . . ." 18 U.S.C. § 1952(b)(i)(1)-(3).

by wrongful threat of economic injury; or . . . under color or pretense of official right." D.C. Code § 22-3251 (2007). In D.C., a person commits blackmail "if, with intent to obtain property of another or to cause another to do or refrain from doing any act, that person threatens:  (1) To accuse any person of a crime; (2) To expose a secret or publicize an asserted fact . . . tending to subject any person to hatred, contempt, or ridicule; or (3) To impair the reputation of any person . . . ." D.C. Code § 22-3252 (2007). Yet again, plaintiff fails to allege any facts to show that BAEF personally carried out any elements of these crimes.[10]  And plaintiff's assertions that BAEF, collectively with the other members of the enterprise, "extort[ed] funds," and "blackmail[ed]" plaintiff, do not meet even the basic pleading requirement under Rule 8 of the Federal Rules of Civil Procedure.

"[A] plaintiff's obligation to provide the 'grounds' for 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Here Stroitelstvo does not trouble itself to do even that much. Plaintiff's outright failure to plead any element of any predicate act must result in a dismissal of its RICO claims. *See, e.g.*, *Hamrick v. Gottlieb*, 416 F. Supp. 2d 1, 5 (D.D.C. 2005) (dismissing RICO claim for failure to plead both the RICO statute and the alleged predicate acts).

### 5.    Plaintiff Also Fails To Establish A Pattern Of Racketeering Activity.

Even assuming that plaintiff sufficiently pleaded the predicate acts of its RICO claim, plaintiff must still establish that BAEF engaged in a "pattern of racketeering activity." The RICO statute defines a "pattern" as "at least two acts of racketeering activity," as defined in

---

[10]    Plaintiff has amended its complaint to state that it suffered damages in the form of "fear of economic loss." (Am. Compl. ¶ 66)  But plaintiff fails to state any facts showing that BAEF itself "wrongful[ly] *threat[ened]* economic injury," in order to obtain property from plaintiff with plaintiff's consent. *See* D.C. Code § 22-3251 (2007).

18 U.S.C. § 1961(5), that take place within a ten year period. *See* 18 U.S.C. § 1962(c) (2007). Proof of the pattern requirement is of particular import to the RICO statute because it "helps to prevent ordinary business disputes from becoming viable RICO claims." *Western Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001).

While plaintiff alleges that the Bank conducted a "scheme to strip assets and equity from its borrowers," and that the Bank "utilized the same pattern of wrongful conduct" on "at least four other occasions, involving four other small businesses, Am. Compl. ¶¶ 41-42, plaintiff fails to state how BAEF participated in a pattern of racketeering activity.[11]  The only allegation plaintiff directs at BAEF is its claim that "[t]he Bank and/or BAEF utilized Ameta Holding JSC, in conjunction with predatory and wrongful lending practices directed at a small agricultural company in or around 2003 to 2005 to wrongly acquire control of the assets of that agricultural company." (*Id.* ¶ 43).  But one act does not make a pattern. *See Dooley v. United Techs. Corp.*, 803 F. Supp. 428, 440 (D.D.C. 1992) (emphasizing that, "[a]t a minimum, [plaintiff] must allege that the individual . . . defendants each committed two RICO predicate acts.").  Plaintiff's failure to allege a pattern of racketeering activity by BAEF "inexorably leads to the conclusion that [plaintiff] failed to state a legally cognizable claim under RICO." *Western Assocs.*, 235 F.3d at 634.

---

[11]  While plaintiff attempts to impute all of the allegations against the Bank to BAEF by stating that "[t]he conduct of the Bank as alleged in the Amended Complaint constitutes the conduct of BAEF," Am. Compl. ¶ 44, it does not state any factual allegations to support that assertion.  Furthermore, plaintiff makes contradictory claims elsewhere in the Amended Complaint, stating that, for example "BAEF asserts that the Bank operates independently from BAEF," and that "BAEF asserts that it is not involved in the Bank's loan transactions." (*Id.* ¶ 7)  The Court should dismiss plaintiff's Amended Complaint for this reason as well. *See, e.g., Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 187-88 (D.D.C. 2005) (dismissing plaintiff's complaint for failure to state a claim, stating that the complaint was "riddled with vague, confusing, and contradictory statements making deciphering the basis for the plaintiff's . . . claim a hopeless endeavor . . . .") (citing *Bonham v. Orden*, Civ. A. No. 91-2586 SSH, 1991 WL 229950, at *1 (D.D.C. Oct. 25, 1991) (finding that "[t]he contradictory allegations in plaintiff's complaint render it patently frivolous.").

But even if plaintiff had alleged at least two acts of racketeering activity against BAEF, it must still show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). *See also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995). Plaintiff may not satisfy this requirement by relying on generalized allegations of wrongful conduct by "the Defendants." Instead, plaintiff "must allege that *each defendant* participated in the conduct of an enterprise through a pattern of racketeering activity." *Dooley*, 803 F. Supp. at 440.

On a Rule 12(b)(6) motion to dismiss in the D.C. Circuit, the Supreme Court's "relatedness" and "continuity" factors are determined by consideration of the following factors: "(1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity." *Western Assocs.*, 235 F.3d at 634 (first stated in *Edmondson & Gallagher*, 48 F.3d at 1265). Honing in on these six factors, this Court can easily determine that plaintiff falls far short of meeting the relatedness and continuity requirements. Besides making the unsupported and generalized assertion that "Defendants" committed "two or more incidents of racketeering activity . . within 10 years of each other," and that these multiple incidents "had continuity, and were related," *id.* ¶ 62, plaintiff utterly fails to support these conclusory statements with facts to illustrate relatedness and continuity as is required to state a claim under RICO. For this reason, plaintiff's RICO claim must be dismissed.

**B.    Because The RICO Claim Must Be Dismissed, All Other Counts Should Be Dismissed For Lack Of Subject Matter Jurisdiction.**

This Court's consideration of plaintiff's Amended Complaint hangs on one thin thread: plaintiff's inadequately pled RICO claim. Should the Court dismiss this claim, BAEF

requests that it decline to exercise supplemental jurisdiction over the remaining common law claims and dismiss such claims for lack of subject matter jurisdiction.

When a federal claim is dismissed at an early stage, "the Court has no reason not to dismiss the state claims as well." *Long Distance Serv. of Wash., Inc. v. MCI Telecommc'ns Corp.*, 692 F. Supp. 1402, 1406 (D.D.C. 1988) (citing *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").[12]

As the Court of Appeals has held, "absent the jurisdictional peg of RICO, there [is] nothing to hold [the supplemental common law claims] within the federal court." *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1232-33 (D.C. Cir. 1991). Thus, this Court should dismiss plaintiff's remaining common law claims for lack of subject matter jurisdiction.[13]

## III. Each Of Plaintiff's Other Tort Claims Is Fatally Flawed.

For the reasons explained above, if the Court dismisses the RICO claim, it need not address the sufficiency of plaintiff's remaining counts. However, out of an abundance of

---

[12]  *See also Edmondson & Gallagher*, 48 F.3d 1260 (remanding case to District Court, after review for abuse of discretion, for deciding pendent common law claims after properly dismissing RICO claim); *Dumbarton Condo. Ass'n v. 3120 R St. Assocs. Ltd. P'ship*, 657 F. Supp. 226, 232 (D.D.C. 1987) ("Dismissing the RICO count necessarily entails dismissing the remaining pendent state claims for want of subject matter jurisdiction."). *See also Anderson v. Wiggins*, 460 F. Supp. 1 (D.D.C. 2006) (dismissing RICO claim pursuant to Rule 12(b)(6), and dismissing state claims after declining to exercise pendent jurisdiction over such claims); *W.L. Meng v. Schwartz*, 116 F. Supp. 2d 92 (D.D.C. 2000) (same).

[13]  Plaintiff mistakenly asserts that subject matter jurisdiction also exists on the basis of diversity, but "[a] diversity suit . . . may not be maintained in federal court by an alien against a citizen of a state and a citizen of some other foreign country." *Eze v. Yellow Cab Co. of Alexandria, Va., Inc.*, 782 F.2d 1064, 1065 (D.C. Cir. 1986). As plaintiff concedes, Stroitelstvo Bulgaria is "organized under the laws of the Republic of Bulgaria," Am. Compl. ¶ 5, while BAEF "has at all times been based in Chicago, Illinois," *id.* ¶ 6. And, as plaintiff recognizes, the Bank is also a citizen of Bulgaria. (*Id.* ¶ 7) Diversity jurisdiction, therefore, does not exist.

caution, BAEF explains below why each of plaintiff's remaining claims must be dismissed pursuant to Rule 12(b)(6).

### A.    Plaintiff's Intentional Interference With Contract Claim Fails As A Matter Of Law And Should Be Dismissed.

To state a claim for intentional interference with contract, a plaintiff must allege facts that establish:  (1) the existence of a contract between the plaintiff and a third party; (2) knowledge of the contract by the defendant; (3) intentional procurement of its breach by the defendant; and (4) damages resulting from the breach.  *See, e.g., King & King, Chartered v. Harbart Intern, Inc.*, 436 F. Supp. 2d 3, 16 (D.D.C. 2006) (dismissing intentional interference with contract claim because plaintiff was unable to allege that any contract was breached).  In pleading intentional interference with contract, plaintiff must plead "details regarding the nature of any 'contract' . . . such as whether the Parties had any written or oral agreement and the terms of said agreement . . . ."  *Gov't Relations Inc. v. Howe*, No. Civ. A. 05-1081 CKK, 2007 WL 201264, at *9 (D.D.C. Jan. 24, 2007) (dismissing a claim of tortious interference with a contract because the plaintiff failed to identify what third-party contract was allegedly interfered).  Plaintiff's claim is deficient in several respects.

Plaintiff alleges that "Defendants" interfered with its contracts with "Project Unit Purchasers and the Construction Team."  (Am. Compl. ¶ 84)  However, plaintiff fails to allege facts to establish that BAEF specifically knew about these contracts.  Even though plaintiff recognizes that "the Bank operates independently from BAEF," and that BAEF "is not involved in the Bank's loan transactions," *id.* ¶ 7, plaintiff attempts to impute knowledge of these third-party contracts to BAEF by making the conclusory (and baseless) statements that "Defendants" knew that "[p]laintiff had entered into contracts with suppliers, vendors, tradesmen and others for the design and construction of residential housing in Bulgaria," that "[p]laintiff had entered in

contracts of sale for the purchase of residential housing in Bulgaria," and that BAEF furthermore "knew the contract terms." (*Id.* ¶¶ 79-80)  Such bare allegations are insufficient to plead this element of the claim.

Moreover, plaintiff has failed to allege that BAEF intentionally procured the breach of those third-party contracts.[14]  The Amended Complaint seems to allege that Defendants' "fail[ure] and refus[al] to provide[] the funds required by the Contract to Plaintiff . . ." constitutes the intentional act done to procure plaintiff's breach of third-party contracts. (*See id.* ¶ 82)  But, of course, BAEF is not a party to the Loan Agreement.  It would be impossible, therefore, for BAEF to refuse to provide funds pursuant to an agreement to which it was not a party.  Indeed, the Amended Complaint fails to allege a single intentional act committed by BAEF that caused a breach of any contract with a third party.[15]

Furthermore, plaintiff's claim for intentional interference with contract is related to an underlying breach of contract action rather than an action sounding in tort.  Therefore, it must be dismissed because it merely restates the breach of contract claim asserted in Count Two of its Amended Complaint.  *See Wash. Hosp. Ctr. Corp. v. Waters*, No. 91-1638 (GHR), 1992 WL 23746, at * 4 (D.D.C. Jan. 21, 1992).

---

[14]  In determining whether there was intentional procurement of a breach, a court may consider the following seven factors: "(1) the nature of the actor's conduct; (2) the actor's motive; (3) the interest of the other with which the actor's conduct interferes; (4) the interests sought to be achieved by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to interference; and (7) the relations of the parties."  *Cambridge Holdings Group, Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 97 (D.D.C. 2004) (citing *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989) (dismissing an intentional interference with contract claim where the plaintiff failed to allege facts describing the nature of the alleged conduct).

[15]  Plaintiff, in error, asserts that BAEF's (and the Bank's) alleged intentional interference with its third-party contracts "violated the provisions and the policies of the SEED Act and the understanding and directions issued pursuant to the SEED Act." (Am. Compl. ¶ 83)  But plaintiff fails to cite any particular statutory provision of the SEED Act to support this allegation.  Nor can plaintiff do so because the SEED Act bears no relevance to this claim.

**B.     Plaintiff Fails To State A Claim For Intentional Interference With Prospective Advantage.**

Plaintiff also fails to state a claim against BAEF for intentional interference with prospective advantage.  To establish a claim for this tort, plaintiff must plead the following:  "(1) the existence of a valid . . . expectancy; (2) knowledge of the . . . expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach [or] termination of the . . . expectancy; and (4) resultant damages."  *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 422-23 (D.D.C. 1998).  Under D.C. law, a "prospective advantage" is defined as "business expectancies, not grounded on present contractual relationships but which are commercially reasonable to anticipate, [and] are considered to be property."  *McManus v. MCI Commc'ns. Corp.*, 748 A.2d 949, 957 (D.C. 2000).  Put differently, plaintiff must allege that defendant interfered with a future advantage.  *See Moncrief v. Kennedy*, Civ. A. No. 86-1131 SSH, 1987 WL 26415, at *1 (D.D.C. Nov. 19, 1987) ("For the most part the 'expectancies' thus protected have been those of future contractual relations . . . .").

Plaintiff describes its "prospective advantage" as "a business plan and a business model" for construction.  (Am. Compl. ¶ 87)  But plaintiff cannot plead facts to show the requisite knowledge element.  While on the one hand, plaintiff states that BAEF "is not involved in the Bank's loan transactions, *id.* ¶ 7, and that BAEF "neither reviewed, nor supervised, nor participated, in any of the Bank's lending activities," *id.* ¶ 47, on the other hand plaintiff asserts that "Defendants" knew plaintiff "required the loan funds from the Contract in order to implement the Prospective Advantage," and that Defendants "deliberately . . . in order to strip Plaintiff's assets . . . failed and refused to provided [sic] the funds required by the Contract to Plaintiff . . . ."  (*Id.* ¶¶ 88-89)  BAEF clearly cannot have knowledge of a future advantage of a party to a contract that plaintiff concedes that BAEF did not have knowledge of.

Nor can plaintiff establish an intent by BAEF to interfere with plaintiff's business plan and business model.  Plaintiff states that "Defendants deliberately" refused to provide funds to plaintiff in order to deprive it of a prospective advantage.  However, "a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability." *Genetic Sys.*, 691 F. Supp. at 423.  In fact, "[m]otive or purpose . . . is of central concern in a tortious interference case . . . and a strong showing of intent is required to establish liability."  *Id.* (dismissing tortious interference with prospective advantage claim, finding that plaintiff's allegations with regard to the intent element were too vague to withstand defendants' motions.).  Plaintiff's conclusory statement that "Defendants" acted "deliberately" is thus plainly insufficient.[16]

**C.    There Is No Fiduciary Relationship Between Plaintiff And BAEF.**

The Amended Complaint attempts to plead a fiduciary relationship by alleging that "Plaintiff had a special relationship with Bank."  (Am. Compl. ¶ 94)  Even though the existence of a "special relationship" alone would not give rise to a fiduciary relationship, the Amended Complaint clearly does not sufficiently allege that BAEF had or has a "special relationship" with plaintiff.  "For a fiduciary duty to exist between parties, there must be a special relationship of trust or confidence." *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 43 (D.D.C. 2007).  Plaintiff does not allege that a relationship of "trust and confidence" exists between BAEF and plaintiff.

---

[16]    Plaintiff, yet again, and without citing a single statutory provision of the SEED Act, claims that BAEF's (and the Bank's) alleged intentional interference with plaintiff's prospective advantage "violated the provisions and the policies of the SEED Act, and the understandings and directions issued pursuant to the SEED Act." (Am. Compl. ¶ 90)  But the alleged wrongful conduct of BAEF neither violates any provision, policy, understanding, or direction of the SEED Act, nor bears any relevance to this claim.

A special confidential relationship that may give rise to a fiduciary duty "transcends an ordinary business transaction and requires each party to act with the interests of the other in mind." *High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1568 (D.D.C. 1987). A special relationship of trust may be implied where an agreement required plaintiff to disclose information that defendant was to keep confidential. *Id.* Here, plaintiff alleges — without citing any particular statutory provision — that a fiduciary duty between it and Defendants arose through the SEED Act. (Am. Compl. ¶ 93)  But the SEED Act gave rise to *no relationship* between BAEF and plaintiff, let alone a fiduciary relationship. Plaintiff, therefore, does not and cannot allege a breach of fiduciary duty by BAEF.

**D.    Violation Of Bulgarian Law.**

Plaintiff utterly fails to satisfy the pleading requirements for its Bulgarian law claim.[17]  Foreign law is a matter of fact that plaintiff must plead and prove. *See Walton v. Arabian Am. Oil Co.*, 233 F.2d 541, 544 (2d Cir. 1956) (finding that it would be an abuse of discretion to take judicial notice of foreign law unless the party relying on it "has in some way assisted the court in judicially learning it."); *see also Toshoku, Ltd. v. Blackmar*, 431 P.2d 599, 603 (Wash. 1967) (holding that a slander claim governed by Japanese law was properly dismissed where applicable foreign law was neither pleaded nor proved).  It is not sufficient for a plaintiff merely to allege a right to bring a claim pursuant to the provisions of the laws of a foreign country. *See Iafrate v. Compagnie Generale Transatlantique*, 106 F. Supp. 619, 622 (S.D.N.Y. 1952) (asserting that a party must set forth the substance of the foreign law alleged and may not rely on conclusory allegations as to the effect of foreign law).

---

[17]  The fact that plaintiff has amended its complaint to bring a claim under Bulgarian law further supports BAEF's contention that a Bulgarian court is not only an adequate forum to adjudicate plaintiff's claims, but also the proper forum for this suit.  This argument is further explicated in BAEF's concurrently filed motion to dismiss on jurisdictional and venue grounds, or alternatively based on the doctrine of *forum non conveniens*.

Here, plaintiff has failed to point to any specific provision of Bulgarian law that gives rise to a cause of action. Rather, plaintiff (in a conclusory fashion) alleges that the Bank violated Article 20a of the Bulgarian Obligations and Contracts Act. (*See* Am. Compl. ¶ 104) But plaintiff fails to identify — let alone plead — the elements of this provision. Nor can plaintiff do so. Article 20a of the Obligations and Contracts Act provides that "[c]ontracts shall have the force of law for the parties which have concluded them." (*See* attached Obligations and Contracts Act, Art. 20a) This provision merely states that Bulgarian law recognizes and enforces contractual obligations between parties. (*See* Ex. 3 to BAEF J/V/FNC Mot. to Dismiss ¶ 22a) Because this provision does not give rise to a claim for a violation of Bulgarian law, plaintiff cannot (and did not) plead the requisite elements for a cause of action. *See Weyrich v. The New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001) (asserting that dismissal of a suit is proper where plaintiff fails to allege the material elements of its cause of action).

Moreover, neither BAEF nor this Court can determine whether Bulgarian law recognizes a cause of action based on the facts pleaded in the Amended Complaint. The Amended Complaint does not identify any factual allegations to support this claim against BAEF. In fact, plaintiff's allegations are directed solely at the Bank. (*See* Am. Compl. ¶¶ 104-107 (alleging that "*[t]he Bank* breached the terms of the Obligations and Contracts Act . . . .") Nothing in the Amended Complaint ties BAEF's conduct to this claim. BAEF, therefore, has no notice of what plaintiff's claim is or the grounds upon which it rests. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (stating that a complaint should be dismissed if it fails to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests). Accordingly, plaintiff's violation of Bulgarian law claim against BAEF must be dismissed.

**E.    Plaintiff Fails To State A Claim For Civil Conspiracy.**

To state a claim for civil conspiracy, plaintiff must allege facts to show that BAEF participated in: "(1) 'an agreement to take part in an unlawful action or a lawful action in an unlawful manner'; and, (2) 'an overt tortious act in furtherance of the agreement that causes injury.'" *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002) (quoting *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)).

Plaintiff makes a bare assertion that BAEF "agreed" with the Bank to undertake the "wrongful conduct" described in the complaint, which was "overt and unlawful." (Am. Compl. ¶¶ 111-112)  Such conclusory and vague allegations, without more, are insufficient to state a claim for civil conspiracy. See *Dooley v. United Techs. Corp.*, Civ. A. No. 91-2499, 1992 WL 167053, at *14 (D.D.C. June 17, 1992) (dismissing plaintiff's civil conspiracy count, stating that plaintiff's identification of "all the actions alleged in the Complaint as a basis for civil conspiracy liability . . . do not give the defendants sufficient notice of the actions for which [plaintiff] seeks to hold them vicariously liable under a civil conspiracy theory); *Ellipso v. Mann*, Civ. Action No. 05-1186 (RCL), 2006 WL 1126814, at *3 (D.D.C. Apr. 27, 2006); *Graves v. United States*, 961 F. Supp. 314, 320-21 (D.D.C. 1997)  (dismissing conspiracy claim for lack of allegations of an agreement or overt acts taken in furtherance of the alleged conspiracy).

Furthermore, if the Court finds that the other counts alleged in plaintiff's Amended Complaint should be dismissed, the conspiracy claim necessarily must be dismissed, for "[c]ivil conspiracy, of course, is not actionable in and of itself but serves instead 'as a device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to it, where the requisite agreement exists among them.'" *Hall*, 285 F.3d at 82 (quoting *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989)).  *See also W.L. Meng v. Schwartz*, 305 F. Supp. 2d 49, 60 (D.C. Cir. 2004) (holding that "because there is no independent

cause of action for civil conspiracy under D.C. law, dismissal of the plaintiffs' breach of fiduciary duty and negligence claims also disposes of any underlying tort to which the civil conspiracy claim could have attached, necessitating its dismissal.").

**F.    Vicarious Liability.**

Plaintiff pleads, in the alternative, that the Court hold BAEF vicariously liable for the Bank's conduct. (*See* Am. Compl. ¶ 111)  In support thereof, plaintiff maintains that "BAEF knew of, or should have known of, and recklessly disregarded the wrongful conduct of the Bank, and failed to supervise, review or report on the wrongful conduct of the Bank, and facilitated the wrongful conduct of the Bank by such failures." (*Id.*)  But, as explained above, *see supra* section I, in order to hold a parent company liable for the actions of its subsidiary, the court must undergo a "piercing of the corporate veil analysis." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 17-18 (D.D.C. 2003).[18]

Although courts have applied four different tests to determine whether a parent corporation is liable for the acts of its subsidiary,[19] this jurisdiction employs the "mere instrumentality" test to determine whether a parent company should be held liable for its subsidiary. *Bulletin Broadfaxing Network, Inc. v. Times Mirror Co.*, Civ. A. No. 91-1614, 1992

---

[18]    Although it is not clear from plaintiff's Amended Complaint, if plaintiff means to plead a common law claim of vicarious liability, it has clearly failed to state a claim.  For "[i]t is clearly-established law that *respondeat superior* is not a separate cause of action.  Rather, it is a vehicle for holding an employer vicariously liable for torts of the employee." *Brooks v. District of Columbia*, Civil Action No. 05-362(GK), 2006 WL 3361521, at *6 (D.D.C. Nov. 20, 2006).

[19]    "These tests are:  (1) the 'agency' test under which the plaintiffs must establish that the parent exercised a significant degree of control over the subsidiary's decisionmaking; (2) the 'alter ego' test which is founded in equity and permits the court to pierce the corporate veil when the court must prevent fraud, illegality or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability from a crime; (3) the 'instrumentality' test under which the plaintiff must establish that the parent exercises extensive control over the acts of the subsidiary giving rise to the claim of wrongdoing; and (4) the 'integrated enterprise' test under which the court considers (a) interrelation of operations, (b) centralized control of labor relations, (c) common management, and (d) common ownership or financial control." *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 61 (D.D.C. 1996).

WL 121477, at *5 (D.D.C. May 13, 1992). Under this test, plaintiff must establish: "(1) unity of ownership and interest, and (2) use of the corporate form to perpetrated fraud or wrong." *Id.* (quoting *Vuitch v. Furr*, 482 A.2d 811 (D.C. 1984)). Factors relevant to the determination of whether a subsidiary is a mere instrument of its parent include:

> (1) whether the parent and subsidiary have common stock ownership; (2) whether there is a commonality of officers and directors; (3) whether there is a commonality of business departments; (4) whether the parent finances the subsidiary; (5) whether the parent causes the subsidiary's incorporation; (6) whether the subsidiary is inadequately capitalized; (7) whether the parent and subsidiary file consolidated financial statements and tax returns; (8) whether there is a joint accounting and payroll system; (9) whether the subsidiary is being operated as a mere division of the parent; (10) whether the subsidiary depends on the parent for substantially all of its business; (11) whether the subsidiary's obligations are assume to be those of the parent; (12) whether property of the subsidiary is used by the parent as its own; and (1[3]) whether the subsidiary is operated exclusively in the interest of the parent.

*Bulletin Broadfaxing*, 1992 WL 121477, at *5. Plaintiff fails to pass this test.

Plaintiff does not even attempt to establish any of the above factors. Instead, plaintiff makes the bald assertions (inapplicable to this analysis) that "BAEF knew of, or should have known of, and reckless disregarded the wrongful conduct of the Bank, and failed to supervise, review or report on the wrongful conduct of the Bank, and facilitated the wrongful conduct of the Bank by such failures." (Am. Compl. ¶ 111) Plaintiff's utter failure to plead the elements of this claim thus require dismissal of its vicarious liability claim.

## CONCLUSION

For the foregoing reasons, BAEF respectfully requests that plaintiff's Amended Complaint be dismissed for failure to state a claim pursuant to Federal Rule 12(b)(6). Because plaintiff has already amended once in an effort to cure the deficiencies identified by BAEF, this Court should dismiss the Amended Complaint with prejudice.[20]

Dated:  January 4, 2008

Respectfully submitted,

Brian D. Sieve, P.C. (*pro hac vice*)
Stephanie A. Brennan (*pro hac vice*)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Tel.  (312) 861-2000
Fax  (312) 861-2200

Karen N. Walker (D.C. Bar No. 412137)
Eunnice H. Eun (D.C. Bar No. 500203)
Samantha A. Gingold (D.C. Bar No. 977734)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Tel.  (202) 879-5000
Fax  (202) 879-5200

*Attorneys for The Bulgarian-American Enterprise Fund*

---

[20]  Moreover, further amendment by plaintiff would be futile, especially considering the fact that the parties, at plaintiff's request, have conducted some limited discovery.

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I caused a true and complete copy of Defendant BAEF's Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule 12(b)(6) to be served on the following counsel of record by ECF.

_Karen N. Walker_
Karen N. Walker

Recipients:

Philip M. Musolino
MUSOLINO & DESSEL
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
Tel:  (202) 466-3883

Sylvia J. Rolinski
Danielle M. Espinet
ROLINSKI & SUAREZ, LLC
14915 River Road
Potomac, Maryland 20854
Phone:  (240) 632-0903

# Bulgarian Obligations and Contracts Act
# Article 20a

Rights which have been acquired in good faith by third parties from the transferee under a simulated agreement shall be preserved unless such rights are rights on immovable property acquired after registration of the action for establishing the simulation.

This provision shall also apply to the creditors of the transferee under a simulated agreement who have placed an attachment on the object which it concerns.

18. Contracts for the transfer of ownership or the creation of other real rights on immovable property must be executed with notarial deeds.

19. A preliminary contract preceding the conclusion of a final contract for which a notarial deed or notarial certification is required shall be concluded in writing.

A preliminary contract shall contain provisions concerning the material terms of the final contract.

Either party to a preliminary contract may bring an action for conclusion of the final contract. In this case the contract shall be deemed concluded as of the moment of entry into force of the ruling of the court.

20. In interpreting contracts, the real common will of the parties shall be sought. Individual provisions shall be interpreted in their interconnection and each one of them shall be understood in the context of the overall contract by taking into account the purpose of the contract, usage and good faith.

20bis. (New article, SG No. 12/1993) Contracts shall have the force of a law for the parties which have concluded them.

Contracts may be amended, terminated, avoided or revoked only by mutual consent of the parties or on grounds provided for in the law.

### b) Effects of Contracts

21. Contracts shall have effects between the parties, and with respect to third parties they shall have effects only in the cases envisaged by law.

Third parties impeding in bad faith the performance of contracts shall owe compensation.

22. Arrangements having a third party as beneficiary may be reached. A third party beneficiary arrangement may not be revoked after the third party has stated to the promisor or to the promisee that it wishes to make use of the said arrangement. The promisee may reserve the right to revoke such an arrangement or to replace the third party.

The promisor may plead against the third party his defenses which arise from the contract, but not defenses arising from other relationships with the promisee.

If the contract from which the third party derives his right is repealed pursuant to an action by the promisee's creditors, the third party is obliged to give back only what the promisee gave under the contract.

23. A person who has promised an obligation or an act of a third party is obliged to compensate the other party if the third party refuses to honour the obligation or to perform the promised act.