# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STROITELSTVO BULGARIA LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.:  1:07-CV-00634-RMC |
| v. | ) |
| | ) Hon. Rosemary M. Collyer |
| THE BULGARIAN-AMERICAN ENTERPRISE | ) |
| FUND, and THE BULGARIAN-AMERICAN | ) |
| CREDIT BANK, | ) **ORAL ARGUMENT REQUESTED** |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANT BULGARIAN-AMERICAN ENTERPRISE FUND'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6)**

# **TABLE OF CONTENTS**

**Page**

THE APPLICABLE STANDARD FOR EVALUATING PLAINTIFF'S PURPORTED
NEW "FACTS" ...................................................................................................3

ARGUMENT ...........................................................................................................4

I.    Plaintiff Has Not Alleged Facts Sufficient To Hold BAEF Vicariously Liable For The
Bank's Alleged Actions, Nor Has It Properly Alleged A Civil Conspiracy.......................4

II.   Plaintiff Has Utterly Failed To State A RICO Claim. ..................................................7

      A.     Plaintiff Has Not Alleged The Proximate Cause Necessary To Demonstrate
Standing To Bring A RICO Claim Against BAEF..................................................7

      B.     Plaintiff Fails To Allege An Enterprise In Its Amended Complaint, And Its
Arguments To The Contrary Do Not Persuade Otherwise. ...................................10

      C.     None Of The Alleged Activities By The Enterprise Affect Interstate Or Foreign
Commerce. .....................................................................................................12

      D.     Plaintiff Fails To Allege The Racketeering Acts Predicate To Its RICO Claim. ..13

             1.    Extortion Under 18 U.S.C. § 1951, Extortionate Credit Transactions
Under 18 U.S.C. §§ 891-894, And Extortion And Blackmail Under D.C.
Law. ...................................................................................................13

             2.    Racketeering Under 18 U.S.C. § 1952.....................................................14

      E.     Plaintiff Fails To Establish A Pattern Of Racketeering Activity...........................15

      F.     Plaintiff's Failure To Establish Federal Question Jurisdiction Under RICO Should
Result In Dismissal Of Its Remaining Claims For Lack Of Jurisdiction...............16

III.  Each Of Plaintiff's Other Tort Claims Fails As A Matter of Law And Should Be
Dismissed.........................................................................................................18

      A.     Plaintiff Has Failed To Allege Properly A Claim For Intentional Interference
With Contract...................................................................................................18

      B.     Plaintiff Fails To State A Claim For Intentional Interference With Prospective
Advantage. .....................................................................................................19

      C.     Plaintiff Does Not And Cannot Allege A Breach of Fiduciary Duty By BAEF. ..19

      D.     Plaintiff Fails To State A Claim For Violation Of Bulgarian Law........................21

CONCLUSION......................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451, 126 S.Ct. 1991 (2006) .......................................................................... 9

*Bates v. Nw. Human Servs.,*
    466 F. Supp. 2d 69 (D.D.C. 2006) ...................................................................... 11, 12, 13

*Behrens v. Pelletier,*
    516 U.S. 299, 309 (1996) ........................................................................................... 3

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ............................................................................................. 12

*Bender v. Jordan,*
    --- F. Supp. 2d ---, 2007 WL 4268766 (D.D.C. 2007) ........................................... 17

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................... 8, 9

*Bulletin Broadfaxing Network, Inc. v. Times Mirror Co.,*
    Civ. A. No. 91-1614, 1992 WL 121477 (D.D.C. May 13, 1992) ......................... 5

*Bush v. Butler,*
    521 F. Supp. 2d 63 (D.D.C. 2007) ........................................................................ 7

*Cedric Kushner Promotions, Ltd. v. King,*
    533 U.S. 158 (2001) ................................................................................................. 11

*City of Kansas City v. Hous. & Econ. Dev. Fin. Corp.,*
    Civ. A. No. 05-0368, 2007 WL 714882 (W.D. Mo. Mar. 7, 2007) ........................... 19, 20

*Confederate Mem'l Ass'n, Inc. v. Hines,*
    995 F.2d 295 (D.C. Cir. 1993) .............................................................................. 2, 21

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.,*
    941 F.2d 1220 (D.C. Cir. 1991) ............................................................................. 18

*Davis v. Mut. Life Ins. Co.,*
    6 F.3d 367 (6th Cir. 1993) ..................................................................................... 21

*Dodd v. Infinity Travel,*
    90 F. Supp. 2d 115 (D.D.C. 2000) ........................................................................ 12, 14

*Doe I v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) ................................................................. 10

*Dooley v. United Techs. Corp.*,
    803 F. Supp. 428 (D.D.C. 1992) ................................................................. 15

*Dooley v. United Techs. Corp.*,
    Civ. A. No. 91-2499, 1992 WL 167053 (D.D.C. June 17, 1992) ...................................... 7

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ................................................................. 3

*Edmonson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ................................................................. 16

*Franchise Tax Bd. of the State of Ca. v. Constr. Laborers Vacation Trust for S. Ca.*,
    463 U.S. 1 (1983) ................................................................. 17

*Genetic Sys. Corp. v. Abbott Labs.*,
    691 F. Supp. 407 (D.D.C. 1998) ................................................................. 19

*Graves v. United States*,
    961 F. Supp. 314 (D.D.C. 1997) ................................................................. 7

*Hall v. Clinton*,
    285 F.3d 74 (D.C. Cir. 2002) ................................................................. 6

*Harbury v. Hayden*,
    444 F. Supp. 2d 19 (D.D.C. 2006) ................................................................. 21

*Henthorn v. Dep't of Navy*,
    29 F.3d 682 (D.C. Cir. 1994) ................................................................. 3

*Holmes v. Secs. Investor Prot. Corp.*,
    503 U.S. 258 (1992) ................................................................. 9

*Hughley v. Weinstock, Friedman & Friedman, PA*,
    Civil Action No. 06-88 (RWR), 2006 WL 2244574 (D.D.C. Aug. 4, 2006) .................. 17

*In re Greater Se. Cmty. Hosp. Corp. I*,
    353 B.R. 324 (Bankr. D.D.C. 2006) ................................................................. 5

*Isquith v. Middle S. Util. Inc.*,
    847 F.2d 186 (5th Cir. 1988) ................................................................. 4

*Kral, Inc. v. Sw. Life. Ins. Co.*,
    999 F.2d 101 (5th Cir. 1993) ................................................................. 20, 21

*Meng v. Schwartz*,
116 F. Supp. 2d 92 (D.D.C. 2000) ............................................................... 8, 9

*Papasan v. Allain*,
478 U.S. 265 (1986) ............................................................................... 12

*Prunte v. Universal Music Group*,
484 F. Supp. 2d 32 (D.D.C. 2007) ........................................................... 10, 11

*S.E.C. v. McDermott*,
Civ. A. No. 99-12256, 2004 WL 385197 (S.D.N.Y. Mar. 1, 2004) ..................... 4

*Saleh v. Titan Corp.*,
436 F. Supp. 2d 55 (D.D.C. 2006) ................................................................ 6, 9

*Scheck v. Gen. Elec. Corp.*,
Civ. A. No. 91-1594, 1992 WL 13219 (D.D.C. Jan. 7, 1992) .......................... 10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
742 F.2d 786 (3d Cir. 1984) ...................................................................... 12

*Thomas v. District of Columbia*,
887 F. Supp. 1 (D.D.C. 1995) ...................................................................... 4

*United States v. DeFries*,
129 F.3d 1293 (D.C. Cir. 1997) ................................................................... 13

*United States v. Philip Morris USA, Inc.*,
449 F. Supp. 2d 1, Civ. A. No. 99-2496, 2006 WL 2380650 (D.D.C. 2006) ................. 14

*Vuitch v. Furr*,
482 A.2d 811 (D.C. 1984) ............................................................................ 5

*W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
235 F.3d 629 (D.C. Cir. 2001) ................................................................... 16

*Wash. Hosp. Ctr. Corp. v. Waters*,
Civ. A. No. 91-1628 (GHR), 1992 WL 23746 (D.D.C. Jan. 21, 1992) ........................... 19

*Watson v. Norris*,
Civ. A. No. 89-0625 (CRR), 1991 WL 7165 (D.D.C. Jan. 11, 1991) ............................ 13

*Weaver v. Bratt*,
421 F. Supp. 2d 25 (D.D.C. 2006) ................................................................... 9

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*,
883 F.2d 132 (D.C. Cir. 1989) ...................................................................... 11

**Statutes**

18 U.S.C. § 1951 (2007) ........................................................................................................ 13, 14

18 U.S.C. § 1952 (2007) ........................................................................................................ 14, 15

18 U.S.C. § 1956 (2007) ............................................................................................................. 15

18 U.S.C. § 1962(c) (2007) .................................................................................................... 11, 13

18 U.S.C. § 641 (2007) ............................................................................................................... 15

22 U.S.C. § 5421(p) (2007) ...................................................................................................... 8, 17

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2, 3, 22

Plaintiff Stroitelstvo's opposition to BAEF's Rule 12(b)(6) Motion to Dismiss confirms that its Amended Complaint is fatally flawed. In its opening brief, BAEF explained that the Amended Complaint suffers from three principal defects:

- *First*, plaintiff is improperly attempting to impute the liability of BAEF's subsidiary (the Bank) to BAEF.

- *Second*, plaintiff's RICO claim is legally deficient because plaintiff has not pled proximate cause, an enterprise, an affect on interstate commerce, the required predicate acts, or a pattern of racketeering activity. Because this Court's subject matter jurisdiction is based on the existence of a federal question, once the RICO claim is dismissed, the supplemental state law claims should also be dismissed.

- *Third*, each of plaintiff's state law claims suffers from one or more pleading defects, which independently requires dismissal of each of those claims.

Rather than addressing these straightforward points head on, plaintiff responds with a dizzying array of arguments, most of which are wrong as a matter of law.

*First*, plaintiff concedes that it is attempting to hold BAEF vicariously liable for the conduct of the Bank. Plaintiff suggests that BAEF can be held liable for the conduct of the Bank under *nine different theories of liability*. But the only relevant standard for assessing BAEF's vicarious liability under D.C. law is the "mere instrumentality" test. Applying that standard here, it is clear that plaintiff has not alleged facts sufficient to impute the Bank's liability to its parent.

*Second*, plaintiff's assertion that it has properly pled a RICO claim is baseless. At its core, this case is nothing more than a breach of contract action. Plaintiff's attempt to turn its dispute with the Bank over their Loan Agreement into an international "RICO conspiracy" is absurd on its face, and no amount of "artful pleading" by plaintiff can change that fact. Even a cursory review of plaintiff's allegations confirms that it has not pled, and cannot plead, a RICO

1

claim. The law is well-established that where, as here, the federal claim is dismissed early in the case, the Court should dismiss the supplemental state law claims as well. And there are no special circumstances that justify this Court retaining supplemental jurisdiction once the RICO claim is dismissed.

*Third*, plaintiff fails to address the substantive flaws in each of its non-RICO claims. Plaintiff's brief on these issues comprises just five pages, and typically includes a summary of the elements of each claim, followed by a conclusory assertion that it has pled those elements. But such conclusory assertions cannot mask the fact that each of plaintiff's remaining claims against BAEF fails to satisfy the pleading requirements and should be dismissed under Rule 12(b)(6).

It is time for this case to end. Plaintiff has already amended its Complaint in an effort to cure the deficiencies identified by BAEF in its first Rule 12(b)(6) motion. But plaintiff's Amended Complaint is just as flawed as the original. Plaintiff has "had multiple bites at the apple already," and "the law does not require the doing of vain things." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) (upholding the lower court's dismissal of plaintiff's RICO claims with prejudice and denial of leave to amend RICO claim, stating that "[t]he purported RICO claim was, in effect, a restatement of their previous state court attempt," and that plaintiffs "have yet to demonstrate that they can offer an amendment effective of a valid claim for relief.").[1] Accordingly, BAEF respectfully requests that this Court grant with prejudice its Motion to Dismiss. Before turning to the merits, however, BAEF first addresses plaintiff's improper attempt to rely on facts outside of the Amended Complaint in its response to BAEF's Rule 12(b)(6) motion.

---

[1]    Unless otherwise indicated, all ***emphasis*** is added, and all internal quotation marks and citations omitted.

## THE APPLICABLE STANDARD FOR EVALUATING
## PLAINTIFF'S PURPORTED NEW "FACTS"

It is, of course, well established that a Rule 12(b)(6) motion should be based on the allegations in the complaint itself, and thus factual allegations outside the pleadings should not be considered. *See, e.g., E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (explaining that the court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (stating that factual allegations in briefs or memoranda of law not previously pled in plaintiff's complaint may not be considered when deciding a Rule 12(b)(6) motion to dismiss). *Cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (asserting that when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

In an implicit admission that its Amended Complaint is fatally flawed, plaintiff attempts to inject a host of new factual matters into its opposition brief. (*See, e.g.*, Opp'n Parts II.B, IV.A, and IV.B.5) For example, plaintiff cites deposition testimony taken for the sole purpose of obtaining limited discovery on the jurisdictional and venue issues. (*See* J. Statement Regarding Jurisdictional Disc., D.E. #24) Plaintiff even relies on new factual allegations that cannot be found either in the Amended Complaint or in the discovery taken by the parties. Because none of these new "facts" should be considered on a motion to dismiss, this Court should ignore them when evaluating the legal sufficiency of plaintiff's Amended Complaint.

With that said, BAEF recognizes that where, as here, factual allegations outside the pleadings are presented improperly by a party during resolution of a Rule 12(b)(6) motion, the court has the discretion to convert the motion to one for summary judgment. Fed. R. Civ. P. 12(b) (stating that if "matters outside the pleading are presented to and not excluded by the court,

the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). BAEF does not believe that converting its motion to dismiss into a summary judgment motion is appropriate, in part because it has not submitted any evidence in support of its motion, and in part because "the proffered material and the conversion from a motion to dismiss to one for summary judgment will not facilitate the disposition of the action." *Thomas v. District of Columbia*, 887 F. Supp. 1, 5 n.1 (D.D.C. 1995) (excluding matters outside the pleadings because extra-pleading materials did not help the court assess whether there was a genuine dispute of material fact). *See also Isquith v. Middle S. Util. Inc.*, 847 F.2d 186, 194 (5th Cir. 1988) ("When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion, the court is likely to accept it, ***when it is scanty, incomplete, or inconclusive, the court probably will reject it***."). Moreover, plaintiff has not suggested that it wants to convert the motion to dismiss into a summary judgment motion.[2] Accordingly, the proper approach here is to exclude the newly proffered "facts." Regardless of how the Court chooses to resolve this procedural issue, however, plaintiff's Amended Complaint fails as a matter of law.

## ARGUMENT

I.    **Plaintiff Has Not Alleged Facts Sufficient To Hold BAEF Vicariously Liable For The Bank's Alleged Actions, Nor Has It Properly Alleged A Civil Conspiracy.**

As explained in BAEF's opening brief (Mot. to Dismiss at 34-35), this jurisdiction employs the "mere instrumentality" test to determine whether a parent company

---

[2]    Courts often take the litigants' preferences into consideration when deciding whether to exclude the additional material or convert the motion into a summary judgment motion. *See S.E.C. v. McDermott*, Civ. A. No. 99-12256, 2004 WL 385197, at *2 (S.D.N.Y. Mar. 1, 2004) (declining to convert a motion to dismiss for failure to state a claim to a summary judgment motion where both parties urged the court to treat it as a motion to dismiss).

should be held liable for the acts of its subsidiary. *Bulletin Broadfaxing Network, Inc. v. Times Mirror Co.*, Civ. A. No. 91-1614, 1992 WL 121477, at *5 (D.D.C. May 13, 1992). As such, this Court need not consider the eight other standards set forth by plaintiff on the vicarious liability issue.

Under the "mere instrumentality" test, there are over a dozen factors relevant to the determination of whether a subsidiary is a mere instrument of its parent. The various factors are intended to be tools to help the court determine whether there exists "(1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong." *Id.* (quoting *Vuitch v. Furr*, 482 A.2d 811 (D.C. 1984)).

Plaintiff never addresses these critical issues.[3] As such, it has not shown that the Bank is a "mere instrument" of BAEF, and that the corporate veil should be pierced. *In re Greater Se. Cmty. Hosp. Corp. I*, 353 B.R. 324, 346 (Bankr. D.D.C. 2006) (holding that plaintiff "has once again omitted the factual allegations necessary to warrant a piercing of the corporate veil," and noting that plaintiff "tried to avoid . . . pleading deficiencies in his First Amended Complaint by arguing that [the parent company] "dominated" its subsidiaries and that the court should pierce the corporate veil of these subsidiaries," but "[t]he court rejected that argument because the 'facts' supporting the argument were presented in [plaintiff]'s opposition to [defendants'] motion to dismiss the First Amended Complaint rather than in the complaint itself.").

Instead of addressing the relevant legal factors, plaintiff makes the conclusory assertion that "BAEF knew of, or should have known of, and recklessly disregarded the wrongful conduct of the Bank, and failed to supervise, review or report on the wrongful conduct of the

---

[3]    Plaintiff addresses only three of these factors, and even then does so without support or any reference to its Amended Complaint. (Opp'n at 25)

Bank, and facilitated the wrongful conduct of the Bank by such failures." (Am. Compl. ¶ 111)
These types of allegations "even if proven, would [not] pierce the corporate veil so as to make
[BAEF] liable for the torts of [the Bank]." *Saleh v. Titan Corp.*, 436 F. Supp. 2d 55, 59 (D.D.C.
2006) ("Asserting that they have now 'alleged facts establishing liability for each of the . . .
entities [*i.e.*, parent and subsidiary],' the plaintiffs have thrown together a number of claims that
sound in negligence (knew or should have known, allowed employees to design . . . failure to
prevent or stop, etc.) or agency ([parent] "controlled" [subsidiary] . . . ), none of which, even if
proven, would 'pierce the corporate veil' so as to make the corporate parents of [subsidiary]
liable for the torts of [the subsidiary].").[4]

Equally flawed is plaintiff's attempt to apply the "principles of . . . civil
conspiracy" to each of its claims. (*See, e.g.*, Opp'n at 41)  Plaintiff acknowledges that civil
conspiracy is not a separate action, but a means of establishing vicarious liability for underlying
tort claims.[5] (*See* Opp'n at 44)  And while plaintiff claims that it "sets out in detail the actions
and the inactions of BAEF . . . ," an examination of its Amended Complaint demonstrates this to
be false.  Specifically, the Amended Complaint alleges that "BAEF and the Bank agreed to
undertake *the wrongful conduct described herein* [*i.e.*, in the Amended Complaint] . . . ." (Am.
Compl. ¶ 111)  But courts have held that precisely these same allegations are legally insufficient:

---

[4]   It is also worth noting that plaintiff's legal arguments on this score are internally inconsistent.  When attempting
to impute liability to BAEF for the Bank's alleged misconduct, plaintiff's Amended Complaint and opposition
characterize BAEF and the Bank as one and the same entity, asserting that "the Bank held itself out and acted as
a department of BAEF" and that "BAEF and the Bank constitute a single business enterprise." (*See* Opp'n at
24; Am. Compl. ¶ 45)  But for purposes of alleging a RICO claim, plaintiff attempts to cast BAEF and the Bank
as separate and distinct entities.

[5]   Therefore, if the Court finds that the other counts alleged in the Amended Complaint should be dismissed, the
conspiracy claim necessarily also must be dismissed.  *See, e.g., Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir.
2002) (stating that civil conspiracy is not actionable in and of itself but serves as a device through which
vicarious liability for the underlying wrong may be imposed).

> Dooley's civil conspiracy count fails to identify any specific tort which the civil conspirators allegedly committed. Rather, *Dooley identifies all the actions in the Complaint as a basis for civil conspiracy liability*. These allegations do not give the defendants sufficient notice of the actions for which Dooley seeks to hold them liable.

*Dooley v. United Techs. Corp.*, Civ. A. No. 91-2499, 1992 WL 167053, at *14 (D.D.C. June 17, 1992).

The only allegations in the Amended Complaint supporting plaintiff's civil conspiracy claim are the bare assertions that BAEF "agreed" with the Bank to undertake the "wrongful conduct" described in the Amended Complaint, which was "overt and unlawful." (Am. Compl. ¶¶ 111-112) But to survive a motion to dismiss a civil conspiracy claim, plaintiff must allege facts — beyond conclusory assertions — that there was an agreement or meeting of the minds between the defendants. *See Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing civil conspiracy claim where plaintiff's "speculative and conclusory" allegation of a conspiracy did not constitute a meeting of the minds). Plaintiff's vague allegations are thus insufficient to state a claim for civil conspiracy. *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) (dismissing civil conspiracy claim where plaintiff's conclusory allegation that defendants had an agreement was deficient and holding that "[t]o state sufficient facts to support an agreement, plaintiff should allege the existence of any events, conversations, or documents indicating there was an agreement between the defendants.").

## II.    Plaintiff Has Utterly Failed To State A RICO Claim.

### A.    Plaintiff Has Not Alleged The Proximate Cause Necessary To Demonstrate Standing To Bring A RICO Claim Against BAEF.

While plaintiff baldly states that BAEF was a "critical participa[nt] in the scheme to strip Bulgarian companies of their assets and equity," Opp'n at 28, it does not point to a single alleged act of racketeering by BAEF that was a "substantial factor in the sequence of responsible

causation" that resulted in an injury to plaintiff that was "reasonably foreseeable or anticipated as a natural consequence of those acts." *See Meng v. Schwartz*, 116 F. Supp. 2d 92, 96 n.4 (D.D.C. 2000). Instead, plaintiff tries to tie BAEF's receipt of funding in 1992 pursuant to the SEED Act to the purported RICO claim. (Opp'n at 28)

More specifically, plaintiff poses the following causal chain: (1) BAEF received funding pursuant to the SEED Act, Opp'n at 28; (2) BAEF was required to "accurately report" pursuant to the SEED Act, *id.* at 29; (3) BAEF "failed to disclose in its reports information about the Bank's loans,"[6] *id.*, and; (4) that such failure allowed "the Bank's equity stripping schemes" to continue. (*Id.*) Even assuming, *arguendo*, that BAEF's receipt of SEED Act funding in 1992 and its purported failure to report information about the Bank's loans constitute racketeering activity (which it does not), plaintiff does not explain how these acts allowed the Bank's alleged "equity stripping schemes" to continue, much less how plaintiff was the "intended target[] of the [purported] RICO violation."[7] *Meng*, 116 F. Supp. 2d at 96. In short, "[l]inking the alleged racketeering activity with [plaintiff's] claimed injury requires . . . a huge leap in logic." *Browning v. Clinton*, 292 F.3d 235, 250 (D.C. Cir. 2002) (upholding the lower court's dismissal of plaintiff's RICO claim for failure to demonstrate proximate causation).

Plaintiff also argues that BAEF's purported failure to supervise the Bank was a "substantial factor in the sequence of responsible causation." (*See* Opp'n at 29-30) But plaintiff

---

[6]    While BAEF is required to "publish an annual report," such report is only required to describe "the ***Enterprise Fund's*** operations, activities, financial condition, and accomplishments . . . for the preceding fiscal year." 22 U.S.C. § 5421(p). Thus, although BAEF, as a parent company, does include information about each of its subsidiaries, including the Bank, in its annual reports, a simple reading of the statute demonstrates that BAEF was never under any obligation to report information about each and every loan made by its subsidiaries.

[7]    Moreover, even if BAEF had reported information about the Bank's loans, including that made to plaintiff, that report would have been made almost a year after the loan was originally made. *See* 22 U.S.C. § 5421(p) (requiring that the annual report be published "not later than January 31" for the "preceding fiscal year."). This further cuts against the illogical argument that BAEF's inclusion of plaintiff's loan transaction in its annual report would have somehow "led to the end of the Bank's equity stripping schemes." (Opp'n at 29)

fails to cite any cases to support the proposition that BAEF can be found to have proximately caused plaintiff's injury by virtue of the fact that its subsidiary acted in such a way so as to proximately cause plaintiff's injury.   This comes as no surprise since the proximate cause requirement is meant to "limit a [defendant's] responsibility for the consequences of *that [defendant's] own acts*." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

At bottom, plaintiff's "causal chain" of allegations is just a series of weak links that fail to make the requisite foreseeable connection between BAEF acts and plaintiff's injury. *See, e.g.*, *Saleh v. Titan Corp.*, 436 F. Supp. 2d 55, 58 (D.D.C. 2006) (holding that plaintiff's "resulting (and quite fantastic) plot line describes a theory of injury causation that is too attenuated for RICO.") Plaintiff's RICO claim must therefore be dismissed. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991, 1998 (2006) (holding that plaintiff's RICO claim did not satisfy the proximate causation requirement, stating that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries. In the instant case, the answer is no."); *Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002) (upholding dismissal of RICO claim, stating that plaintiff "pleads no facts suggesting some direct relation between the injury asserted and the injurious conduct alleged -- in other words, proximate causation."). For all these reasons, plaintiff does not have standing under RICO and its claim must be dismissed.[8]

---

[8] Plaintiff's argument that it is a "general tort premise that proximate cause of an injury is a question for the jury," Opp'n at 30, is simply wrong. The cases plaintiff cites in support of this assertion all address the determination of reasonable foreseeability under common law. But "one should not be lulled into thinking that the proximate cause test under RICO should be analogous to the "reasonable foreseeability" test common to tort law. The Supreme Court, as well as other courts, has made it clear that it is not." *Meng*, 116 F. Supp. 2d at 96 n.4. Moreover, this Court has repeatedly adjudicated the threshold issue of standing under RICO at the motion to dismiss stage. *See, e.g.*, *id.*; *Weaver v. Bratt*, 421 F. Supp. 2d 25 (D.D.C. 2006); *Saleh*, 436 F. Supp. 2d at 55.

**B.**    **Plaintiff Fails To Allege An Enterprise In Its Amended Complaint, And Its Arguments To The Contrary Do Not Persuade Otherwise.**

As plaintiff acknowledges, Opp'n at 30, to plead a RICO enterprise it must allege facts that show "1) that the members have a common or shared purpose, 2) the enterprise exhibits continuity of structure and personnel, and 3) that the enterprise has an ascertainable structure distinct from [the] pattern of racketeering activity." *Scheck v. Gen. Elec. Corp.*, Civ. A. No. 91-1594, 1992 WL 13219, at * 3 (D.D.C. Jan. 7, 1992). Here, plaintiff asserts that the purported "enterprise" is an "association in fact comprised of BAEF, the Bank, BAPM, as well as Ameta Holding JSC and others." (Opp'n at 31 n.13) But plaintiff does not even attempt to explain how those entities "associated or operated together." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 120 (D.D.C. 2005). Indeed, there is not a single allegation in the Amended Complaint that explains how BAEF, the Bank, BAPM, and Ameta Holdings JSC "operated together" as an enterprise to carry out a pattern of racketeering activity. Plaintiff has, therefore, failed to plead the existence of an "organization," and thus an enterprise, under RICO. *See Scheck*, 1992 WL 13219 at * 3 (dismissing plaintiff's RICO claim, observing that "Plaintiff's sole description of the 'enterprise' is in ¶ 89 of his complaint, which is simply a naked assertion that, 'Defendants . . . through their relationships with one another are an enterprise,'" and holding that such a "vaguely pleaded, bald allegation [was] insufficient . . . to establish a RICO enterprise.").

The RICO claim is also flawed because plaintiff does not allege any facts that show an enterprise distinct from BAEF. As BAEF has explained, "[a] corporation may be either a 'person' or an 'enterprise' under RICO but the same corporation or association cannot be both the person and the enterprise." *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007). (*See also* Mot. to Dismiss at 16)

10

BAEF does not dispute that, in the case of legally separate identities, one may be named "as a RICO person and the other as a RICO enterprise." *Bates v. Nw. Human Servs.*, 466 F. Supp. 2d 69, 82 (D.D.C. 2006). (*See also* Mot. to Dismiss at 17)  But plaintiff's argument that BAEF and the Bank may both serve as a "person" and the "enterprise" simply because they are "legally different entities" misses the point. (Opp'n at 32-33)  Section 1962(c) envisions not just two legally different entities, but two distinct entities that play two different roles:  one the role of the person, or the "culpable party," and the other the role of the enterprise, or the "passive instrument or victim" through which the person conducts the racketeering activity. *See Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1989).[9]  That necessary distinction is why "the same corporation or association cannot be both the person and the enterprise." *Prunte*, 484 F. Supp. 2d at 42.

Here, plaintiff repeatedly argues that BAEF and the Bank are essentially one and the same entity. (*See, e.g.*, Opp'n at 22 ("BAEF dominates in every meaningful way the policies and practices of the Bank."); Opp'n at 24 (asserting that "BAEF and the Bank constitute a single business enterprise."))  But as plaintiff itself concedes, when "the *same* corporation is . . . playing both the role of a person and an enterprise in a plaintiff's RICO claim, the distinctiveness requirement of Section 1962(c) is . . . [not] presumptively satisfied." (Opp'n at 33 (*quoting Bates*, 446 F. Supp. 2d at 83.  Plaintiff cannot have it both ways:  BAEF and the Bank cannot be considered indistinguishable for the purposes of establishing vicarious liability, but entirely

---

[9]    *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), does not diminish or disturb the D.C. Circuit's *Yellow Bus Lines* holding, as plaintiff seems to suggest. (Opp'n at 32)  *Cedric Kushner* simply stands for the proposition that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself . . . ." *Cedric Kushner*, 533 U.S. at 163.

distinct for the purposes of alleging a RICO enterprise.[10] Plaintiff's RICO claim must therefore be dismissed for failure to satisfy the distinctiveness requirement. *See Bates*, 446 F. Supp. 2d at 87; *see also Dodd v. Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C. 2000) (stating that plaintiff's "failure to plead facts identifying the common purpose and organizational and decisionmaking structure of the alleged enterprise is fatal to their claim.").

### C.    None Of The Alleged Activities By The Enterprise Affect Interstate Or Foreign Commerce.

Plaintiff asserts that its conclusory allegation that "the enterprise engaged in, or its activities affected, interstate and/or foreign commerce" "alone" satisfies its pleading obligations. (Opp'n at 34) Plaintiff is wrong. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (stating that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").[11]

Plaintiff fails to show how the activities of the alleged enterprise, *i.e.*, BAEF, the Bank, BAPM, and Ameta Holdings JSC organized and acting together, affected interstate or foreign commerce. Instead, plaintiff simply lists several unsupported assertions about BAEF's

---

[10]   Plaintiff does not even attempt to explain how the addition of BAPM and Ameta Holding JSC to the enterprise "serves to further distinguish the person and the enterprise as required by the statute." (Opp'n at 33) In any regard, and as stated in BAEF's 12(b)(6) Motion to Dismiss, the addition of these entities, without more, does not redeem plaintiff's pleading deficiencies. (*See* Mot. to Dismiss at 17-18)

[11]   Plaintiff's reliance on *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790 (3d Cir. 1984), is unavailing. *Seville*, a Third Circuit case decided before both *Twombly* and *Papasan*, merely states that "[u]nder the modern federal rules, it is enough that a complaint put the defendant on notice of the claims against him." *Seville* certainly does not stand for the proposition that a conclusory assertion of the enterprise's effect on interstate or foreign commerce suffices to survive a motion to dismiss. And, in any regard, *Twombly* and *Papasan* have since clarified what the "fair notice" requirement of Federal Rule of Civil Procedure 8(a) entails.

activities, such as:  BAEF is a "Chicago-based corporation chartered in Delaware," and that BAEF "repeatedly engaged in commercial transactions with the other members of the enterprise," including "the transfer of approximately $58,000,000.00 in federal funds to Washington to Chicago to Bulgaria . . . ." (Opp'n at 35)  Those allegations are insufficient on their face.  *See, e.g., Watson v. Norris*, Civ. A. No. 89-0625 (CRR), 1991 WL 7165, at *3 (D.D.C. Jan. 11, 1991) (dismissing plaintiff's RICO claim for failure to plead an effect on interstate commerce, stating that "in this case the Court does not see — and the plaintiff does not allege — how any enterprise in which the defendants could have been involved was engaged in, or affected interstate commerce.").[12]

**D.     Plaintiff Fails To Allege The Racketeering Acts Predicate To Its RICO Claim.**

**1.     Extortion Under 18 U.S.C. § 1951, Extortionate Credit Transactions Under 18 U.S.C. §§ 891-894, And Extortion And Blackmail Under D.C. Law.**

In response to BAEF's argument that plaintiff fails to plead the requisite predicate acts, plaintiff asserts that it is not obligated to plead that BAEF *personally* committed acts of extortion, extortionate credit transactions, and extortion and blackmail under D.C. law.  (*See* Opp'n at 36 (extortion); Opp'n at 37 (extortionate credit transactions); Opp'n at 38 (extortion and blackmail under D.C. law))  Plaintiff fundamentally misunderstands the law.

Under RICO Section 1962(c), plaintiff must allege that a person (BAEF), associated with and conducted the affairs of an enterprise through a pattern of racketeering activity (the predicate acts alleged against BAEF).  *See Bates*, 466 F. Supp. 2d at 78.  In other

---

[12]   Plaintiff misstates the holding of *United States v. DeFries*, 129 F.3d 1293, 1311 (D.C. Cir. 1997).  *DeFries* does not hold that "[w]hether or not a Plaintiff has satisfied the affecting commerce element of RICO is a question for the trier of fact."  (Opp'n at 34)  In dicta, the Circuit Court, in response to the government's citing of "outdated or inapposite" cases in its "efforts to rehabilitate the [jury] instruction," merely observed that "mixed questions of law and fact must be left for the jury." *DeFries*, 129 F.3d at 1311 n.11.

words, plaintiff must allege that BAEF, personally, committed the predicate acts alleged in a pattern and through an enterprise.  *Cf. Dodd*, 90 F. Supp. 2d at 117 (D.D.C. 2000) (stating that "[a] viable RICO [claim] based on allegations of wire and mail fraud must allege that each defendant participated in at least two acts of wire or mail fraud.").  Plaintiff does not dispute that it has failed to allege any factual allegations that BAEF personally committed extortion under 18 U.S.C. § 1951, that BAEF personally engaged in an extortionate credit transaction, or that BAEF personally committed extortion and blackmail under D.C. law.  Moreover, plaintiff makes no effort to explain how BAEF obstructed "commerce" by "robbery or extortion."  (*See* Mot. to Dismiss at 20-21; *supra* Part II.C.)  Plaintiff has therefore failed to alleged the requisite predicate acts.[13]

### 2.    Racketeering Under 18 U.S.C. § 1952.

Plaintiff's sole (and unsupported) statement in defense of its inadequately pled racketeering claim is that "BAEF's commercial activities cover multiples [sic] states in the United States, and the District of Columbia."  (Opp'n at 38)  This statement is entirely insufficient to show that BAEF "travel[ed] in . . . or use[d] the mail or any facility in interstate or foreign commerce . . . with the intent to . . . distribute the proceeds of . . . commit any crime of

---

[13]  Plaintiff's observation that "§ 1951(a) explicitly applies to conspirators," Opp'n at 36, does not cure its pleading deficiency.  Plaintiff also fails to plead any factual allegations that show that BAEF personally agreed to commit two predicate acts or to participate in the enterprise knowing that its co-conspirator would commit two predicate acts.  *See, e.g.*, *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1, Civ. A. No. 99-2496, 2006 WL 2380650, at *903 (D.D.C. 2006) ("In order to be guilty of a RICO conspiracy, a defendant must either agree to [individually] commit two predicate acts or agree to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise.").  Outside of the conclusory assertion found in its Civil Conspiracy claim that "BAEF and the Bank agreed to undertake the wrongful conduct described herein," Am. Compl. ¶ 111, plaintiff fails sufficiently to allege for the purposes of RICO that BAEF "agreed" to commit or participate in any conspiracy.  Notably, plaintiff does not plead conspiracy as one if its RICO predicate acts.  (*See* Am. Compl. ¶ 63)

violence to further . . . or . . . otherwise promote, manage, . . . or facilitate . . . any unlawful activity." 18 U.S.C. § 1952.[14]

**E.      Plaintiff Fails To Establish A Pattern Of Racketeering Activity.**

Plaintiff spends considerable time summarizing the legal standards for pleading a "pattern," Opp'n 38-39, but then fails to explain how the facts as alleged in the Amended Complaint satisfy those standards. As BAEF has explained, plaintiff's RICO claim is deficient because plaintiff does not plead two acts of racketeering, *see supra* Part II.D., or that BAEF personally committed two acts of racketeering. (*See supra* Part II.D.1) Plaintiff does not even attempt to defend its failure to allege more than one act of racketeering activity, and, consequently, its failure to allege a pattern as required under the RICO statute. (*See* Mot. to Dismiss at 24) *See also Dooley v. United Techs. Corp.*, 803 F. Supp. 428, 440 (D.D.C. 1992) (asserting that, "[a]t a minimum, [plaintiff] must allege that the individual . . . defendants each committed two RICO predicate acts.").

Similarly, plaintiff fails to direct its "relatedness" and "continuity" analysis specifically to BAEF's actions, as required by this Court. *See id.* (stating that plaintiff "must allege that each defendant participated in the conduct of an enterprise through a pattern of racketeering activity.") Instead, plaintiff reiterates the broad, generalized claims that it makes against both Defendants. (Opp'n at 39) This is clearly insufficient to show that the two predicate acts by BAEF (if properly alleged) were "related" and "continuous."[15]

---

[14]   It is unclear why plaintiff references 18 U.S.C. § 1956 (money laundering) and 18 U.S.C. § 641 (embezzlement of public money, property, or records) in its argument on this claim. While it is true that "unlawful activity" under 18 U.S.C. § 1952(b)(i) includes "any act which is indictable . . . under section 1956 or 1957 of this title . . ." and that 18 U.S.C. § 1956(c)(7)(D) incorporates 18 U.S.C. § 641, plaintiff's Amended Complaint does not plead either money laundering or embezzlement as predicate acts committed by BAEF. (*See* Am. Compl. ¶ 63) These references should thus be disregarded by this Court.

[15]   Plaintiff's bald assertion (without reference to the Amended Complaint or otherwise) that "BAEF has accumulated enormous profits and has continued to acquire equity stakes, including stakes in co-conspirators"

As a fallback argument, plaintiff asserts that "[t]he six factors prescribed in *Edmonson* should be applied in a manner that is fluid, flexible, and commonsensical, rather than rigid or formulaic." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001). Perhaps so, but that does not save plaintiff's RICO claim. The only allegation in the Amended Complaint that pertains to purported "victims" other than plaintiff is Paragraph 42, in which plaintiff asserts that the Bank (not BAEF) engaged in allegedly similar misconduct with four unnamed "small businesses." That single, conclusory sentence simply does not allege a pattern, no matter how hard plaintiff tries to recast its claim.

F.    **Plaintiff's Failure To Establish Federal Question Jurisdiction Under RICO Should Result In Dismissal Of Its Remaining Claims For Lack Of Jurisdiction.**

Plaintiff finally admits that there is no diversity jurisdiction here. (Opp'n at 17 n.6) That means the only basis for this Court's subject matter jurisdiction is the existence of a federal question. Here, the only claim based on federal law is the RICO claim, so if the RICO claim is dismissed, federal question jurisdiction falls away.

Apparently concerned that its RICO claim will not survive, plaintiff suggests (for the first time) that this Court has federal question jurisdiction even if the RICO claim is dismissed. According to plaintiff, federal question jurisdiction exists because its right to relief "necessarily depends on resolution of a substantial question of federal law" — the SEED Act. (Opp'n 18-19) Nonsense.

---

(Opp'n at 39) adds nothing to the analysis. This allegation does not demonstrate a "threat of future criminal activity." (*Id.*) There is no basis to assert that BAEF's activity poses a future threat when plaintiff has alleged nothing more than "a hypothetical possibility of further predicate acts." *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) ("plaintiff[] point[s] to nothing suggesting any reason to expect that these defendants, together or separately, will again engage in RICO-violating conduct. The only possible rationale that could support such a prediction — once a RICO violator, always a RICO violator — would deprive the pattern requirement of all meaning by establishing open-ended continuity whenever two or more predicate acts were shown.").

This Court does not have original jurisdiction over plaintiff's state law claims because there is no "substantial, disputed question of federal law [that] is a necessary element of one of the well-pleaded state claims . . . ." *Franchise Tax Bd. of the State of Ca. v. Constr. Laborers Vacation Trust for S. Ca.*, 463 U.S. 1, 13 (1983). As an initial matter, neither the SEED Act nor the "construction of and the obligations imposed on BAEF by the SEED Act" is a "necessary element" of *any* of plaintiff's state law claims. *See id.* As such, this Court does not need to resolve any issues related to the SEED Act in order to determine plaintiff's right to relief under the state law claims. Moreover, plaintiff cannot argue that BAEF's obligations under the SEED Act are "unsettled or novel" (and thus undisputed), *Hughley v. Weinstock, Friedman & Friedman, PA*, Civil Action No. 06-88 (RWR), 2006 WL 2244574, at *3 (D.D.C. Aug. 4, 2006), because plaintiff itself cites BAEF's obligations under the SEED Act in its opposition brief. (Opp'n at 29) And, as stated above, the SEED Act clearly lays out the annual obligations its recipients must meet under the statute. *See* 22 U.S.C. § 5421(p) (2007). Furthermore, BAEF's obligations under the SEED Act are not "central to the determination of the state law claim[s] . . . ." *Hughley*, 2006 WL 2244574, at *3. Therefore, there is no "substantial" question of law at issue here. *See id.* Plaintiff's arguments otherwise are simply a hollow attempt to keep its action in D.C., instead of Bulgaria, the forum in which it originally agreed to resolve any disputes arising from the Loan Agreement.[16]

As a fallback, plaintiff urges this Court to exercise its discretion to retain jurisdiction over the supplemental claims if the RICO claim is dismissed. But there are no

---

[16] Plaintiff's citation of *Bender v. Jordan*, --- F. Supp. 2d ---, 2007 WL 4268766 (D.D.C. 2007) does not support its claim. In *Bender*, at issue was defendants' failure to repay a bank for legal expenses. *Id.* at *1-2. Defendants had asked the bank to advance money to them pursuant to a federal regulation. *Id.* at *2. This Court thus held that "there [wa]s no way to resolve whether the Defendants must repay the Bank without reference to the Regulation. Thus, the claims of the Bank . . . must be determined by reference to federal law." In this case, however, the Court can decide all of plaintiff's state law claims without reference to the SEED Act.

compelling reasons at this early stage of the case for the Court to retain jurisdiction over purely state law claims. Plaintiff fails to explain how "federal programs and expenditures" are "central" to the remaining pendant claims. And simply stating that "[t]here is ample reason to retain" supplemental jurisdiction, without any application of the factors it lists to the instant case, does not make it so. (*See* Opp'n at 20) There is ample precedent supporting the dismissal of common law claims once the "jurisdictional peg of RICO" is pulled. *See, e.g., Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1232-33 (D.C. Cir. 1991).

### III.    Each Of Plaintiff's Other Tort Claims Fails As A Matter of Law And Should Be Dismissed.

For the reasons explained above, this Court can and should dismiss this action without addressing the merits of the supplemental claims. However, out of an abundance of caution, BAEF briefly explains below why each of the non-RICO claims is also flawed.

#### A.    Plaintiff Has Failed To Allege Properly A Claim For Intentional Interference With Contract.

Plaintiff's claim for intentional interference with contract against BAEF fails as a matter of law because the Amended Complaint does not identify particular interfering conduct by BAEF. Plaintiff readily admits this, Opp'n at 41, asserting instead that "principles of vicarious liability and civil conspiracy are applicable to intentional torts such as intentional interference with contract." But these arguments are unavailing for the reasons stated above.[17] (*See* Part I)

---

[17]    In particular, plaintiff cannot state a claim for conspiracy to intentionally interfere with contract because plaintiff has not alleged facts to show that BAEF "agreed" with the Bank to interfere with plaintiff's contracts or that BAEF entered into an agreement with the Bank to tortiously interfere with plaintiff's contracts. Indeed, the Amended Complaint lacks any facts to support even an inference of an agreement between BAEF and the Bank to tortiously interfere with plaintiff's contracts. Tellingly, plaintiff's opposition exposes this flaw, asserting that "*the Bank* devised a scheme," and nowhere suggesting that BAEF played any role in such a scheme. (Opp'n at 41)

BAEF also explained in its opening brief that Count III is deficient because it merely restates the breach of contract claim in Count II. (Mot. to Dismiss at 28) Plaintiff never substantively addresses this argument in its brief (*see* Opp'n at 41 n.22), which provides a further ground for dismissal. *See Wash. Hosp. Ctr. Corp. v. Waters*, Civ. A. No. 91-1628 (GHR), 1992 WL 23746, at *4 (D.D.C. Jan. 21, 1992).

**B.    Plaintiff Fails To State A Claim For Intentional Interference With Prospective Advantage.**

Plaintiff does not rebut any of BAEF's arguments on why plaintiff failed to state a claim for intentional interference with prospective advantage. Rather, plaintiff merely asserts that its arguments in support of the intentional interference with contract claim also apply to this claim. Therefore, for the same reasons that plaintiff's intentional interference with contract claim fails, the intentional interference with prospective advantage claim also fails. Moreover, plaintiff ignores the fact that its allegations of a mere generalized intent are not sufficient to establish liability for intentional interference with prospective advantage. *See Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1998) (dismissing plaintiff's tortious interference with prospective advantage claim, stating that "[m]otive or purpose . . . is of central concern in a tortious interference case . . . and a strong showing of intent is required to establish liability.").

**C.    Plaintiff Does Not And Cannot Allege A Breach of Fiduciary Duty By BAEF.**

"A fiduciary is a person having a duty to act primarily for the benefit of another in matters connected with his undertaking." *City of Kansas City v. Hous. & Econ. Dev. Fin. Corp.*, Civ. A. No. 05-0368, 2007 WL 714882, at *11 (W.D. Mo. Mar. 7, 2007). BAEF — a not-for-profit U.S. corporation — has never had an obligation to act primarily for the benefit of plaintiff — a Bulgarian for-profit corporation — in matters connected to the Loan Agreement plaintiff entered into with the Bank. Nor does plaintiff allege as such. Instead, plaintiff relies on *Kansas*

*City* to argue that "BAEF's receipt of federal funds for a particular purpose created a fiduciary duty." (Opp'n at 42)  Plaintiff is wrong, and it misrepresents the holding in that case.

In *Kansas City*, Plaintiff Kansas City designated the defendant as one of its subrecipients of federal HUD funds on the city's behalf. *Kansas City*, 2007 WL 714882, at *1. As a subrecipient of these funds, the defendant was obligated to administer and properly use all of plaintiff's allocated HUD program funds.  *Id.*  "The City placed significant trust in the [defendant] to administer the HUD funds appropriately to benefit eligible low income residents." *Id.*  Plaintiff sued the defendant for breach of fiduciary duty after the defendant failed to use HUD funds for the benefit of federally funded housing programs.  The court found that a fiduciary relationship existed between plaintiff and the defendant for three reasons:  (1) plaintiff, for more than twenty years, entrusted money to the defendant for carrying out certain aspects of its housing program; (2) plaintiff properly expected that the defendant would use these funds solely for the purpose of carrying out the goals of its housing program, and; (3) plaintiff placed significant trust and confidence in the defendant to manage its housing program. *Id.* at *12.  In contrast, plaintiff has never had a relationship with BAEF, and it certainly never entrusted any money to BAEF.  Quite the contrary, there is no dispute that BAEF had never even heard of plaintiff before this suit was filed.[18]

Plaintiff further confuses its claim for breach of fiduciary duty by indirectly suggesting that BAEF may be vicariously liable for the Bank's misconduct.  (*See* Opp'n at 42 n.23)  In a footnote, plaintiff asserts that "[m]ost courts permit claims of vicarious liability for an agent's breach of fiduciary duty."  (*Id.* (quoting *Kral, Inc. v. Sw. Life. Ins. Co.*, 999 F.2d 101 (5th

---

[18]   Contrary to plaintiff's suggestion, Opp'n at 42 n.23, BAEF is not asserting any arguments on behalf of the Bank, a separate party that has not yet been properly served with plaintiff's Amended Complaint pursuant to the Hague Convention.

Cir. 1993).)) But the Fifth Circuit in *Kral* merely held that plaintiffs had failed to present facts sufficient to satisfy the elements of vicarious liability for breach of fiduciary duty. *Kral*, 999 F.2d at 103. Here, plaintiff neither pleads a separate claim for vicarious liability for breach of fiduciary duty, nor can it allege facts to establish BAEF's liability under such a claim.[19]

### D.    Plaintiff Fails To State A Claim For Violation Of Bulgarian Law.

Plaintiff's claim based on Bulgarian law is, to say the least, confusing, and plaintiff's brief certainly does nothing to elucidate its claim. Regardless of how broad plaintiff claims Bulgarian tort law to be, Opp'n at 43, BAEF is still in the dark as to what plaintiff's violation of Bulgarian law claim is or the bases for this alleged violation. As this Court has previously stated in the context of deciding a motion to dismiss for lack of subject matter jurisdiction, "it is the task of the plaintiff to specify what statutes and laws are the precise bases for his or her claims against a defendant, not the other way around." *Harbury v. Hayden*, 444 F. Supp. 2d 19, 40 (D.D.C. 2006). The only specific Bulgarian statute identified by plaintiff is Article 49 of the Bulgarian Obligations and Contracts Act, but plaintiff never bothers to explain what the elements of such a claim are under Bulgarian law, or whether it has pled those elements. Thus, plaintiff's vague and diffuse allegations fail to state a cause of action against BAEF.

Plaintiff's suggestion that it can cure this deficiency by amending its Amended Complaint (yet again) should be rejected. Plaintiff has already had the opportunity to correct the numerous defects in its original complaint after its review of BAEF's first Motion to Dismiss Pursuant to Federal Rules 9(b) and 12(b)(6). *See Confederate Mem'l Ass'n*, 995 F.2d at 300.

---

[19] Plaintiff also relies on *Davis v. Mut. Life Ins. Co.*, 6 F.3d 367 (6th Cir. 1993), but this cases merely states that the jury found each company vicariously liable for breach of fiduciary duty without stating any other principles of law relating to this claim.

## CONCLUSION

As BAEF has previously explained, this case has no business being in a United States court. The dispute is between two Bulgarian companies over a Bulgarian loan agreement for construction of a residential project in Bulgaria. This Court should reject plaintiff's attempt to drag BAEF into the dispute by transforming its Bulgarian contract action into an international RICO conspiracy. Plaintiff has not alleged — and cannot allege — a single claim against BAEF. BAEF therefore respectfully requests that this Court grant its motion and dismiss plaintiff's Amended Complaint with prejudice, pursuant to Federal Rule 12(b)(6).

Dated: February 11, 2008                    Respectfully submitted,

Brian D. Sieve, P.C. (*pro hac vice*)      Karen N. Walker (D.C. Bar No. 412137)
Stephanie A. Brennan (*pro hac vice*)      Eunnice H. Eun (D.C. Bar No. 500203)
KIRKLAND & ELLIS LLP                       Samantha A. Gingold (D.C. Bar No. 977734)
200 East Randolph Drive                    KIRKLAND & ELLIS LLP
Chicago, Illinois  60601                   655 Fifteenth Street, N.W.
Tel.  (312) 861-2000                       Washington, D.C.  20005
Fax  (312) 861-2200                        Tel.  (202) 879-5000
                                           Fax  (202) 879-5200

                                           ***Attorneys for The Bulgarian-American
                                           Enterprise Fund***

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2008, I caused a true and complete copy of

Defendant BAEF's Reply Brief in Support of its Motion to Dismiss Plaintiff's Amended

Complaint Pursuant to Federal Rule 12(b)(6) to be served on the following counsel of record by

ECF.

_____
Karen N. Walker


Recipients:

Philip M. Musolino
MUSOLINO & DESSEL
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
Tel:  (202) 466-3883

Sylvia J. Rolinski
Danielle M. Espinet
ROLINSKI & SUAREZ, LLC
14915 River Road
Potomac, Maryland 20854
Phone:  (240) 632-0903